IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke, | **)** **)** **)** **)** | Case No. 1:06-cv-01142 (RWR) |
| On behalf of themselves and all others similarly situated, | **)** **)** **)** **)** | CLASS ACTION |
| Plaintiffs, | **)** **)** **)** | |
| v. | **)** **)** | |
| Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc., | **)** **)** **)** | |
| Defendant. | **)** **)** | |

## SECOND REVISED SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................... 1

II.  NATURE AND RESOLUTION OF THE CASE .................................... 1

III.  GENERAL TERMS OF THE SETTLEMENT AGREEMENT ............ 5

    A.  Definitions ....................................................................... 5

    B.  Duration of the Settlement ............................................... 9

    C.  Cooperation ..................................................................... 9

    D.  Persons Covered by this Settlement Agreement ......................... 9

IV.  COURT APPROVAL/NOTICE AND FAIRNESS HEARING ........... 10

    A.  Jurisdiction and Venue ................................................... 10

    B.  Preliminary Approval ..................................................... 10

    C.  Notice and Settlement Hearing ...................................... 11

V.  RELEASE/BAR OF CLAIMS ...................................................... 15

    A.  Class Member Release .................................................... 15

    B.  Named Plaintiff Release ................................................. 15

VI.  NO ADMISSION, NO DETERMINATION ......................................... 17

VII.  PROGRAMMATIC RELIEF ........................................................ 18

    A.  Communications ............................................................ 18

    B.  Branch Management/Mobility ........................................ 19

    C.  Account Distribution ...................................................... 20

    D.  Development Opportunities ............................................ 26

    E.  Complaint Process and Training ................................... 27

    F.  Appointments. ................................................................ 28

    G.  General Non-Discrimination Provisions ....................... 31

VIII.  MONETARY RELIEF .............................................................. 32

    A.  Settlement Fund. ........................................................... 32

    B.  Administration by Trustee. ........................................... 33

    C.  Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Class Members. ................................... 34

    D.  Allocation Formula. ...................................................... 35

    E.  Non-Admissibility of Fact of Award (or Non-Award). .......... 38

    F.  Tax Treatment ............................................................... 38

G.    Morgan Stanley Has No Further Obligation, Liability or Responsibility. .......................................................... 41

IX.    MONITORING ....................................................................... 42

A.    Data Collection ........................................................... 42

B.    Monitoring System ....................................................... 42

C.    Reports ...................................................................... 42

D.    Meetings ..................................................................... 43

X.    ENFORCEMENT ................................................................. 43

A.    No Third Parties .......................................................... 43

B.    Dispute Resolution ....................................................... 43

XI.    CONFIDENTIALITY .......................................................... 43

A.    Documents and Information Produced by Morgan Stanley and Class Counsel ............................................................. 43

B.    Return or Disposal of Confidential Documents and Information ................................................................ 44

XII.    ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL .... 45

XIII.    GOVERNING LAW ............................................................. 45

XIV.    OTHER CONDITIONS OF SETTLEMENT ................................. 46

A.    Exhibits. ..................................................................... 46

B.    Notices to Counsel ....................................................... 46

C.    Failure to Insist on Strict Compliance ............................. 47

D.    Settlement Agreement Binding ....................................... 47

E.    No Drafting Presumption .............................................. 47

F.    Dispute As To Meaning of Agreement Terms ..................... 47

G.    Interpretation of Terms ................................................ 47

H.    Paragraph and Section Headings .................................... 47

I.    Counterparts .............................................................. 48

J.    Agreement Binding ...................................................... 48

I.    **INTRODUCTION**

Subject to approval by the United States District Court for the District of Columbia (the "Court"), this Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and members of the Class defined herein, and Defendant Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc. ("Morgan Stanley," "Defendant," "Firm" or "Company")[1] have settled and resolved all claims that have been raised in the Amended Complaint filed by the Named Plaintiffs in April 2007. This Action and Settlement applies to women Financial Advisors and Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley ("MS-GWMG") and its predecessor(s).

II.    **NATURE AND RESOLUTION OF THE CASE**

A.    Beginning in early 2005, Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke ("Named Plaintiffs") retained Class Counsel to investigate claims of sex discrimination at MS-GWMG. These Named Plaintiffs each filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things, that MS-GWMG discriminated against them and a class of similarly situated persons throughout the United States on the basis of their sex in several aspects of their employment.

---

1    Since the Complaint was filed in June 2006, Morgan Stanley DW Inc. merged into Morgan Stanley & Co. Incorporated. The Named Plaintiffs and Class Members all work or worked as Financial Advisors or Registered Financial Advisor Trainees in what is now referred to as the Global Wealth Management Group.

**B.**     On June 22, 2006, the Named Plaintiffs filed a Complaint in the Court on behalf of themselves as individuals and on behalf of a nationwide class of women employees against Morgan Stanley pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq., ("Title VII"), and under parallel state and local laws prohibiting sex discrimination.   In April 2007, the Named Plaintiffs filed an Amended Complaint naming Morgan Stanley & Co. Incorporated, the successor to Morgan Stanley DW Inc., as Defendant.   In this Action, titled Augst-Johnson, et al. v. Morgan Stanley & Co. Incorporated, Civil Action No. 1:06-cv-01142 (RWR), the Named Plaintiffs, among other things, allege, on behalf of themselves and members of the Class defined herein, that they are women who are or were employed with MS-GWMG as Financial Advisors or Registered Financial Advisor Trainees, that they have been and are afforded fewer business opportunities than comparable male Financial Advisors and comparable male Registered Financial Advisor Trainees, and that they experienced sex discrimination in numerous aspects of their employment.   They have further alleged, on behalf of themselves and members of the Class defined herein, that aspects of their employment in which they have experienced sex discrimination include, but are not limited to, career advancement, distribution of accounts, work assignments, compensation, and/or other terms and conditions of employment and/or termination.   In addition to these class claims, the Named Plaintiffs assert various individual, non-class claims, including, for some, age discrimination, as set forth in the Amended Complaint.

**C.**     On November 13, 2006, Morgan Stanley filed its answer and its affirmative defenses to the Complaint, denying that it engaged in a pattern or practice of sex discrimination against the Named Plaintiffs or any similarly situated current and former

women Financial Advisors or Registered Financial Advisor Trainees.  Morgan Stanley denies the allegations in the administrative charges, the Complaint and the Amended Complaint, and in connection therewith denies any liability under Title VII of the Civil Rights Act of 1964, as amended, or any other federal, state or local laws, and specifically denies that Morgan Stanley unlawfully discriminated against Plaintiffs or Class Members on the basis of sex, or that Plaintiffs or Class Members are otherwise entitled to the relief requested.

D.    In an effort to determine whether the parties could settle this dispute prior to the commencement of litigation, the parties' counsel, who are experienced class action attorneys, participated in detailed and exhaustive discussions and negotiations over the course of two years. The parties engaged the services of Hunter Hughes, Esq., a highly experienced professional mediator, skilled in mediation of complex class actions, including employment discrimination litigation. Mr. Hughes became familiar with the case and conducted over ten mediation sessions between the parties. These formal mediation sessions and follow-up settlement discussions between the parties concluded with the execution of this Settlement Agreement. During the negotiations, counsel bargained vigorously on behalf of their clients.  All negotiations were conducted at arms' length and in good faith.

E.    In order to facilitate settlement discussions, the parties executed tolling agreements covering the time period from December 27, 2004 to June 22, 2006, at which point the Complaint in this Action was filed.

F.    For settlement purposes, Class Counsel sought, and Morgan Stanley produced to Class Counsel, voluminous data and other information concerning MS-

3

GWMG's workforce and work practices relevant to the claims asserted and damages sought by Plaintiffs and the Class. Class Counsel interviewed over 200 Class Members during the course of their investigation and retained an expert to conduct statistical analyses of the data. The expert worked with Class Counsel to review the data, ensure it was complete, request supplemental data, and analyze the data. The expert also conducted studies similar to those that would have conducted in preparation for the trial of this matter. Class Counsel also retained a second expert to assist in analyzing industry practices and to provide input on crafting injunctive relief. Counsel for the parties have also conducted their own substantial investigations of the matter, including the facts underlying the claims and issues raised in the charges, the Complaint and the Amended Complaint. The investigations included, among other things, interviewing Class Member witnesses and reviewing a substantial number of relevant company records. As a result of the exchange of information, the investigation, and other activity both prior to and after filing the Complaint, counsel for the parties are familiar with the strengths and weaknesses of their respective positions, and have had a full opportunity to assess the litigation risks presented in this case.

G.      All parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including motions to dismiss, motions for class certification, formal discovery, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. The parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions of this Settlement Agreement. Class Counsel believe

that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate, and Morgan Stanley wishes to bring the litigation to a conclusion on the terms set forth in this Settlement Agreement.

      **H.**     Without any admission or concession by Morgan Stanley of any liability or wrongdoing with respect to the allegations in any administrative charge or in the Complaint and the Amended Complaint, all released claims shall be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of negotiation and agreement by the parties.

## III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

      **A.**     <u>Definitions</u>.  In addition to terms identified and defined elsewhere in this Settlement Agreement, and as used in this Settlement Agreement, the terms below shall have the following meanings:

      **1.**     "Action" means the lawsuit described above and the allegations contained in the Amended Complaint filed in April 2007.

      **2.**     "Amended Complaint" means the Amended Complaint filed in this Action in April 2007.

      **3.**     "Claims Administrator" means Settlement Services, Inc. ("SSI") which has been jointly designated by counsel for the parties to administer the Settlement Fund pursuant to Section VIII below and orders of the Court.

      **4.**     "Claim Form" means the form agreed to by the parties and attached to the Notice.  The Claim Form must be submitted by eligible Class Members to SSI as part of the claims process.

**5.** "Claimant" means a Class Member who has submitted a timely Claim Form.

**6.** "Class Counsel" means the law firms of Mehri & Skalet, PLLC, Sprenger & Lang, PLLC, and Moody & Warner, PC.

**7.** "Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class" below.

**8.** "Class Member Release" means the Release and Indemnification Agreement in the form agreed to by counsel for the parties, and attached hereto as Exhibit A, with respect to those Class Members who are not Named Plaintiffs, as referenced in Section V.A.

**9.** "Complaint" means the Complaint filed in this Action on June 22, 2006.

**10.** "Court" means the United States District Court for the District of Columbia.

**11.** "Defendant" or "Morgan Stanley" or "Firm" or "Company" means Morgan Stanley & Co. Incorporated and its predecessors in interest.

**12.** "Defendant's Counsel" means the law firm of Morgan, Lewis & Bockius LLP.

**13.** "Depository Bank" means Branch Banking and Trust (BB&T) or another bank jointly selected by counsel for the parties to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Claims Administrator.

**14.** "Diversity Monitor" means the individual appointed to carry out the duties specified in Section VII.F.1. of this Agreement.

15.    "Effective Date" means the date on which all of the following have occurred: (1) the Court has finally approved this Settlement Agreement and has signed and entered an order so indicating; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for certiorari or appellate review) has been finally resolved.

16.    "Final Approval" means the date on which the United States District Court grants final approval of the Settlement.

17.    "Financial Advisor" means a person employed in the MS-GWMG as a financial advisor.

18.    "Lead Class Counsel" means Cyrus Mehri of Mehri & Skalet, PLLC and Steven M. Sprenger of Sprenger & Lang, PLLC.

19.    "MS-GWMG" means the Global Wealth Management Group of Morgan Stanley & Co. Incorporated and its predecessor, Morgan Stanley DW Inc.

20.    "Named Plaintiff Release" means the General Release and Indemnification Agreement in the form, attached hereto as Exhibit B, agreed to by counsel for the parties with respect to the Named Plaintiffs as referenced in Section V.B.

21.    "Notice" means the Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing, which is to be mailed directly to Class Members, pending Court approval, substantially in the form attached hereto as Exhibit C.

22.    "Notice of Award" means the letter sent to each eligible Claimant specifying the amount of that Claimant's award, as determined by the Special Master.

23.    "Plaintiffs" or "Named Plaintiffs" means the eight Plaintiffs named in the caption of the Amended Complaint.

24.    "Preliminary Approval" means the Order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

25.    "Registered Financial Advisor Trainee" means a person employed in the MS-GWMG as a registered financial advisor trainee who has not yet become a Financial Advisor.

26.    "Settlement," "Agreement," and "Settlement Agreement" each mean the settlement as reflected in this Settlement Agreement.

27.    "Settlement Class" or "Class" means the class that the parties jointly seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all women employed as Financial Advisors or Registered Financial Advisor Trainees in the MS-GWMG or its predecessor at any time from August 5, 2003 through June 30, 2007.

28.    "Settlement Fund" or "Fund" means the settlement monies transferred by Morgan Stanley to the Depository Bank, pursuant to this Settlement Agreement, including all interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

29.    "Settlement Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

**30.**    "Special Master" means the individual jointly selected by counsel for the parties, and approved by the Court, who is charged with carrying out the Special Master duties set forth in Section VIII. of this Agreement.

**B.    Duration of the Settlement**.    The programmatic relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the parties and their agents and successors for a five-year period following the Effective Date.

**C.    Cooperation.**    The parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement. The parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief or the substantive programmatic relief provided for herein, or any other substantive change.

**D.    Persons Covered by this Settlement Agreement**

**1.    Definition of "Settlement Class," "Class" or "Class Members."**
Solely for purposes of Settlement and judicial approval of this Settlement Agreement, the parties stipulate to the certification of the following Settlement Class:

> All women who were employed as Financial Advisors or Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor(s) at any time from August 5, 2003 through June 30, 2007.

**2.    Certification.**    The Class will be certified pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

IV.    **COURT APPROVAL/NOTICE AND FAIRNESS HEARING**

    A.    **Jurisdiction and Venue**

        **1.**    The parties agree that the Court has jurisdiction over the parties and the subject matter of this Action and that venue is proper.    The Court shall retain jurisdiction of this Action for five years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein.

    B.    **Preliminary Approval**

        **1.**    Prior to execution of this Settlement Agreement, the parties have agreed upon a form for written Notice of this Settlement Agreement to Class Members, subject to Court approval.

        **2.**    Within twenty (20) days after the execution of this Settlement Agreement, the parties shall petition the Court for the following two orders:

    (1) preliminarily certifying the Settlement Class; preliminarily approving this Settlement Agreement; approving the Notice to be sent to Class Members describing the terms of the Settlement and informing them of their rights to submit objections and to opt out; and

    (2) pending Final Approval, preliminarily enjoining each member of the Settlement Class, including any member who makes an irrevocable election to exclude herself from the monetary relief provisions of the Settlement Class, from commencing, prosecuting or maintaining in any court other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of this Court in connection with the Settlement Agreement.    Effective as of September 10,

2007, further enjoining any member of the Settlement Class who has not made an irrevocable election to exclude herself from the monetary relief provisions of the Settlement Class from commencing, prosecuting or maintaining, either directly, representatively or in any other capacity, any claim that is subsumed within the Settlement Agreement; and

(3) entering Administrative Order No. 1 relating to this Settlement Agreement attached hereto as Exhibit D.

### C.    Notice and Settlement Hearing

**1.** On or before July 16, 2007, MS-GWMG will identify all Class Members and will provide to the Claims Administrator the name, social security number, and last known address of each Class Member. The Claims Administrator shall utilize Class Members' social security numbers only for the purpose of locating and identifying Class Members and shall keep those social security numbers confidential.

**2.** Within twenty (20) days after Preliminary Approval of the Settlement Agreement, the Claims Administrator will mail the Notice to each Class Member in the form agreed upon by the parties or such other form as approved by the Court. The parties intend to provide actual notice to each Class Member, to the extent practicable. The Claims Administrator shall mail a Claim Form to each Class Member at the same time the Notice is sent.

**3.** The Claims Administrator shall provide to Lead Class Counsel a list of those Class Members who have not been located and the Claims Administrator may engage third party vendors in order to locate Class Members. The Claims Administrator will maintain a log of its activities undertaken pursuant to this section.

      **4.**    Class Member objections to this Settlement Agreement must be submitted in writing, and must include a detailed description of the basis of the objection. Objections must be filed with the Court, with copies served on Lead Class Counsel and counsel for Morgan Stanley, within forty-five (45) days after the Notice is mailed to Class Members. No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing within forty-five (45) days after the Notice was mailed to Class Members.

      **5.**    Any Class Member who wishes to opt out of the Settlement Class must mail to Lead Class Counsel and counsel for Morgan Stanley a written, signed statement that she is opting out, as set forth below. Lead Class Counsel shall file with the Court all opt-out statements that are timely received. The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt out are not entitled to any monetary award under this Settlement Agreement. With respect to each such individual, the statute of limitations for her to assert any claims for individual relief will resume running on the postmark date when she mails her signed, written statement that she is opting out of the Settlement Class. The Notice mentioned above shall include the following language: "Any Class Member who wishes to opt out of the monetary portion of the Settlement must mail a written, signed statement that she is opting out of the Settlement Class to [Lead Class Counsel and counsel for Morgan Stanley at the addresses as listed in the Notice]. To be effective, this opt-out statement must be received by [Lead Class Counsel and counsel for Morgan Stanley] on or before September 10, 2007 . . ." To be effective, the opt-out letter and statement must include the language specified in the Notice confirming that the individual is aware that by opting out she will forego the

opportunity to receive monetary benefits from this Settlement.  Class Members who file opt-outs may rescind their opt-outs. To be effective, such rescissions must be in writing and must be received by either Lead Class Counsel, counsel for Morgan Stanley, or the Claims Administrator on or before September 24, 2007, or such other date  established by the Court.

      **6.**     Upon Preliminary Approval, a briefing schedule and Settlement Hearing date will be set at the Court's convenience.  The parties' Motion for Final Approval and for Certification of the Settlement Class will be due no earlier than thirty (30) days following the close of the objection and opt-out period, and the Settlement Hearing will be held no earlier than forty-five (45) days following the close of the objection and opt-out period.

      **7.**     The time periods referenced in this Section IV.C. are guidelines; actual dates will be inserted in the Preliminary Approval Order by the Court.

      **8.**     In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, and claims and defenses on the merits. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof shall be admissible in any court regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement).  Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

9.      If the number of Class Members who have duly requested exclusion from the Settlement Class in the manner provided in the Court's Preliminary Approval Order equals or exceeds the numbers set forth in Appendix 1 filed with the Court under seal concurrently with this Settlement Agreement, Morgan Stanley shall have the right, for thirty (30) days after the deadline for Class Members to opt out, to either withdraw from and fully terminate this Settlement Agreement by providing written notice to Class Counsel and the Court, *or* not to withdraw from this Settlement Agreement and take the opt out credit described below.  Failure to provide written notice to withdraw within the aforesaid thirty (30) day period constitutes a waiver and termination of Morgan Stanley's right to withdraw pursuant to this paragraph.  The opt out credit to which Morgan Stanley is entitled shall be a pro rata share of the Settlement Fund based on the number of Class Members who have opted out in relation to the total number of Class Members. Regardless of the number of Class Members who opt out, Morgan Stanley shall also have no obligation to pay the employer's share of taxes and contributions pertaining to such opt outs, as discussed in Section VIII.F.2. of this Settlement Agreement.

10.      If Morgan Stanley exercises its option to withdraw from the Settlement or if this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or, if following approval by this Court, such approval is reversed or substantively modified), the parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose; the Settlement Fund shall be returned to Morgan Stanley,

including the interest earned by the Settlement Fund through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Claims Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no Settlement Agreement, with no stipulated Class.  The parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in this Action. This Settlement Agreement will not be considered an admission of liability by Morgan Stanley nor represent a cap on damages available to the Named Plaintiffs or the Class.

## V.    **RELEASE/BAR OF CLAIMS**

A.    **Class Member Release.** All Class Members, other than the Named Plaintiffs, as a condition of receiving a monetary payment in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator a Class Member Release in the form agreed to by counsel for the parties and attached hereto as Exhibit A.  The Class Member Release will release all sex discrimination claims against Morgan Stanley under federal, state and local laws, including claims related to sexual harassment and termination of employment, through June 30, 2007.

B.    **Named Plaintiff Release.**  All Named Plaintiffs, as a condition of receiving a monetary payment in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator either the Class Member Release attached hereto as Exhibit A or a broader Named Plaintiff Release in the form agreed to by counsel for the parties and attached hereto as Exhibit B.  The Named Plaintiff Release is not a

limited release of claims of sex discrimination but instead releases all claims of any nature against Morgan Stanley under federal, state and local laws through June 30, 2007.

**C.** The Claims Administrator shall provide all Class Members, including Named Plaintiffs, with the Class Member Release at the time the Notice is provided to them.

**D.** The Claims Administrator shall also provide all Named Plaintiffs with the Named Plaintiff Release at the time the Notice is provided to them. If a Named Plaintiff wishes to submit a Class Member Release in lieu of the broader Named Plaintiff Release, such Named Plaintiff must deliver a signed writing received by the Claims Administrator on or before the date established by the Court for receipt of opt outs, with copies to Lead Class Counsel and Defendant's Counsel, making that election. If a Named Plaintiff does not make a timely election in writing to submit a Class Member Release, then the Named Plaintiff will be required to submit the Named Plaintiff Release.

**E.** The terms of the Releases, attached hereto as Exhibits A and B, are a material part of this Settlement Agreement and are hereby incorporated as if fully set forth in the Settlement Agreement; if these Releases, attached hereto as Exhibits A and B, are not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Sections IV.C.8-10. of this Settlement Agreement, then the Named Plaintiff Releases and Class Member Releases shall terminate *nunc pro tunc* and be of no force and effect.

**F.** Any Class Member who does not execute and timely deliver a Class Member Release, and any Named Plaintiff who does not execute and timely delivery a

Named Plaintiff or Class Member Release, as appropriate, shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Class Member or Named Plaintiff has not opted out.

     **G.**     Class Members who neither timely opt out nor timely file a Claim Form shall, upon the Effective Date, be ineligible to receive any monetary award pursuant to this Settlement Agreement and be deemed to have fully, finally and irrevocably waived, released and discharged Morgan Stanley from any and all claims of sex discrimination, whether known or unknown, actual or potential, from August 5, 2003 through June 30, 2007.

## VI.    <u>NO ADMISSION, NO DETERMINATION</u>

     **A.**     This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims or defenses of any party in this case. The Class Members continue to assert the merits and validity of their claims under Title VII or parallel state and local laws prohibiting sex discrimination. By entering into this Agreement, Morgan Stanley does not admit or concede, expressly or impliedly, but denies that it has in any way violated Title VII, parallel state and local laws prohibiting sex discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations, claims or defenses in this case.

**B.**    Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the results of the Claims Process established under this Settlement Agreement) as evidence of discrimination, retaliation or sexual harassment or as evidence of any violation of Title VII, parallel state and local laws prohibiting sex discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered into in connection herewith.

## VII.    PROGRAMMATIC RELIEF

**A.    Communications.**  MS-GWMG shall distribute its Non-Discrimination and Anti-Harassment Policy to all employees upon hire (in hard copy or by electronic mail) and then on an annual basis via email from Morgan Stanley's CEO. Employees shall be required to submit an acknowledgment of receipt.

In addition, the President and COO of MS-GWMG shall issue a separate statement in support of the Policy and its underlying tenets. The Policy will be available on the

Firm's intranet site and will be incorporated into various other Firm policies including its Code of Conduct and its Internet and Electronic Communications Usage Policy.

The Non-Discrimination and Anti-Harassment Policy and the behaviors it seeks to promote and prevent shall be the subject of a mandatory training that all employees will be required to complete upon hire.

B.    **Branch Management/Mobility.**    Pursuant to the Mobility Project agreed to by the parties and announced in 2005, all available management positions will be posted on MS-GWMG's Internal Job Bank. These positions currently are titled: Branch Manager; Financial Advisor in Charge; Sales Manager; and Assistant Branch Manager. Minimum requirements for qualification for a management position are available on MS-GWMG's internal job bank. All positions will be posted for a minimum of five (5) business days. Either the hiring manager or Human Resources will follow up with each applicant/candidate in a timely manner.

As agreed to by the parties, MS-GWMG's Learning and Development department shall develop and implement a comprehensive management assessment and development program. The program will provide candidates with a formal and transparent path to assessment and selection as branch managers, and provide field management with an established and tested protocol for selection of high-potential candidates by trained assessors.

MS-GWMG shall provide all management-level field personnel with diversity training no less than every other year. The format of such training may vary from jurisdiction to jurisdiction depending on the relevant legal requirements. However, all managers shall, at a minimum, be required to complete an interactive, customized, e-

learning training program. The positions to be trained are: Division Directors, Associate Division Directors, District Managers, Non-Producing and Producing Branch Managers, Financial Advisors in Charge, Risk Managers, Assistant Branch Managers, Sales Managers, and Service Managers.

Branch Manager compensation shall have a diversity component designed to measure and reward efforts at recruiting, training, and retaining women Financial Advisors.

### C.    Account Distribution

1.    Since 2002, MS-GWMG has utilized a "Power Ranking" system to rank Financial Advisors on performance factors to determine the distribution of the accounts of departing Financial Advisors. Under this Settlement, MS-GWMG has agreed to make significant changes to the Power Ranking system, including reducing reliance on historical factors and more heavily weighting criteria which reflect recent performance. MS-GWMG has also agreed to automate the account distribution process based on the revised Power Rankings and to limit the exceptions that can be made to the Power Rankings. The revised Power Ranking factors are set forth in Appendix 2 filed under seal along with this Settlement Agreement.

### 2.    Power Rankings

a.    All Power Ranking factors that measure performance from the previous twelve-month period will be adjusted to encompass a 12 month period exclusive of absence for parental leave or short-term disability leave. For example, if a Financial Advisor was on a leave of absence for four of the preceding twelve months, the

previous 12 months measure will instead count the last twelve months that the employee was active.

b.    The methodology for calculating the Power Rankings will be provided to each Financial Advisor, including the name of each factor, an explanation of each factor, and how each factor is weighted. Upon hire, each Financial Advisor will be individually provided with the methodology of the objective measures utilized in the Power Ranking calculation and the manner in which calculations are completed and this will be available to all Financial Advisors electronically. MS-GWMG agrees to provide notice to Financial Advisors regarding any modification to the Power Ranking methodology.

c.    MS-GWMG shall inform each Financial Advisor of her or his individual ranking at the time any distribution is made. The actual distribution of a departing Financial Advisor's book will be made available to a Financial Advisor in the Branch confidentially upon request, and such communication shall include the rankings and (without identification of any particular Financial Advisor by name) the number of accounts and the assets distributed to each ranked Financial Advisor.

d.    Review of Account Distributions.  After a full calendar year has passed following implementation of these new Power Ranking criteria, the Industrial Psychologists to be appointed as set forth in Section VII.F.2. below will review how the process has been operating, including reviewing a representative sample of actual distributions and all exceptions and complaints. The Industrial Psychologists shall provide the Diversity Monitor with their findings of deviations from the account distribution system.  If necessary, Lead Class Counsel and counsel for Morgan Stanley will reconvene

to discuss the findings of the Industrial Psychologists and whether further appropriate changes to the Power Ranking criteria or distribution process should be made. The only changes to be made to the Power Ranking criteria are those agreed to by Lead Class Counsel and counsel for Morgan Stanley. If the parties are unable to come to agreement on any proposed changes, no changes will be made to the Power Ranking criteria.

### 3.    Account Distribution Policies

a.    MS-GWMG senior management will issue a comprehensive account distribution policy statement, which shall include policies covering the distribution of the accounts of departing Financial Advisors, retiring Financial Advisors, departing partners, and leads, call-ins, and walk-ins. The statement shall be issued via email to all field employees and shall be posted on MS-GWMG's intranet site and shall include a prohibition on discrimination. In addition, MS-GWMG will train all current Branch Managers on account distribution policies and procedures at the time the settlement becomes effective, and will similarly train all new managers that are subsequently hired.

b.    Financial Advisors are not eligible for account distributions if they are: (1) currently on heightened supervision; (2) subject to any regulatory action reportable as a 'yes' answer on Form U-4 questions 14C-G; (3) subject to discipline reported on Form RE-3 in the last 12 months; or (4) subject to any written performance or workplace conduct warning in the last 90 days. Lateral recruits to MS-GWMG will be ineligible for account distributions during their first 12 months of employment with MS-GWMG. New hire Financial Advisor Trainees are ineligible until they have successfully satisfied the preliminary production thresholds established under the Training Program. Financial Advisors who areon parental or short-term disability leave at the time an account

distribution is made will participate as if they were not on leave, and the distributed accounts will be handled in the same manner as their other accounts are handled while on leave.

            c.     Where an exception is made to the Power Ranking process because of client choice or business exigency (such as client service needs), each individual exception shall be approved by the Complex or District Manager or his/her designee in writing, including the legitimate business reasons for the exception. Records of all such exceptions shall be kept for purposes of monitoring policy compliance. In addition, except for a lateral recruit who receives a distribution in his or her first 12 months of employment because of business exigencies, the Financial Advisor receiving a distribution through an exception will be disqualified from receiving other distributions of approximately equal asset value in the same or subsequent distributions. An individual Financial Advisor who does not receive a specific distribution as a result of an exception shall receive additional accounts in the same or subsequent distributions of approximately equal asset value.

            d.     MS-GWMG shall enhance its technology to allow its account distribution process to be computer automated, subject to branch manager review to ensure compliance with regulatory requirements. Account distributions will be made through this automated process, subject to exceptions described in Section VII.C.3.c. above. The results of all account distributions shall be stored and readily retrievable for monitoring to ensure compliance with account distribution policies.

4.      **Retiring Financial Advisors**

a.      The book of business formerly serviced by the retiring Financial Advisor will be distributed through the Power Ranking system set forth in Sections VII.C.1. and VII.C.2 above unless a Joint Production Arrangement/Agreement (JPA) has been in effect for twenty-four (24) months or longer at the time of retirement.

b.      The Industrial Psychologists shall make recommendations for increasing participation of women in the receipt of retiring Financial Advisor's books of business. These recommendations shall be made in accordance with Section VII.F.2. below.

5.      **Partnerships**

a.      Unless a Joint Production Arrangement/Agreement (JPA) has been in effect for twenty-four (24) months or longer at the time of departure, the book of business formerly serviced by the departing Financial Advisor will be distributed through the Power Ranking system.

b.      The Industrial Psychologists shall make recommendations for increasing participation of women in the partnerships. These recommendations shall be made in accordance with Section VII.F.2. below.

c.      For purposes of a Financial Advisor's Power Rankings, MS-GWMG will count partnership assets under management based on the percentage of the commission split specified in the partnership agreement.

6.      **Leads, Call-ins, and Walk-ins**

a.      Each Branch Office shall implement a "Financial Advisor of the Day" program. Pursuant to this program, all client prospects who either walk in or

telephone the branch and who are seeking a Financial Advisor shall be directed to the Financial Advisor serving as the Financial Advisor of the Day. The daily assignments shall be made alphabetically and announced on a monthly basis on or before the last day of the preceding month. The monthly roster shall be openly posted in a conspicuous location within the branch where all other Firm policies are posted. Participation among eligible Financial Advisors shall be voluntary each month.

b.      Each Financial Advisor of the Day shall complete a "Financial Advisor of the Day Activity Log" that will detail all telephone calls and walk-in prospects fielded by the Financial Advisor and the disposition of each. The logs shall be maintained in a Branch Financial Advisor of the Day file for a three-year period.

c.      If a prospect insists on speaking to the Branch Manager, the Branch Manager will direct the individual to the Financial Advisor of the Day. If the Financial Advisor of the Day is not qualified to handle the prospect's account, the Branch Manager shall ask the prospective client to interview a diverse slate of Financial Advisors, to the extent available.

d.      All Financial Advisors and Registered Financial Advisor Trainees who have successfully satisfied the preliminary production thresholds established under the Training Program shall be eligible to participate.

e.      Unauthorized failure to perform Financial Advisor of the Day obligations as designated shall render a Financial Advisor ineligible to participate in the Program for a period of six (6) months. The branch shall maintain a list of those Financial Advisors who elected not to participate or who otherwise were ineligible.

### 7.    Distribution Upon Transfer to Non-Producing Manager

Where no JPA has been in existence for at least 24 months at the time of transfer, the book of business serviced by a producing manager who is transferred to a non-producing branch manager position or a Financial Advisor who moves to a non-producing sales manager position will be distributed through the Power Ranking system as set forth in Sections VII.C.1-5 above.

### 8.    Disputes Concerning Account Distributions

The parties agree that if at any time during the term of this Settlement Agreement a dispute shall arise between MS-GWMG and a Financial Advisor or a Registered Financial Advisor Trainee concerning any account distribution, such dispute shall initially go through the MS-GWMG's internal complaint process which includes access to mediation under Morgan Stanley's alternative dispute resolution mechanism ("CARE"). However, nothing herein shall prevent any Class Member or Named Plaintiff from individually pursuing any legal claim not released under this Settlement through any applicable governmental agency or court of law if she is otherwise entitled to do so.

### D.    __Development Opportunities.__    MS-GWMG shall work with the jointly appointed Industrial Psychologists to develop workplace initiatives designed to attract women to MS-GWMG as Financial Advisors, and to retain them and enhance their success, including targeted mentoring and training. Training and mentoring may include but is not limited to training conference calls, online courses, and in person seminars. The Industrial Psychologists shall make recommendations for increasing participation of women Financial Advisors and Registered Financial Advisor Trainees in development

opportunities. These recommendations will be made in accordance with Section VII.F.2. below.

MS-GWMG agrees to maintain its commitment to the biannual Women's Business Exchange. In addition, the biannual Financial Advisor conference will be preceded by a Women's Management Forum.

E.    **Complaint Process and Training.**  The complaint process, including MS-GWMG's prohibition against retaliation, as provided in the Non-Discrimination and Anti-Harassment Policy, shall be communicated in writing to all Financial Advisors and Financial Advisor trainees upon hire, and annually to all Financial Advisors. New hires shall be required to submit an acknowledgment of receipt of this communication.

MS-GWMG will provide its Human Resources staff supporting Financial Advisors and Registered Financial Advisor Trainees with appropriate training regarding compliance with state, federal, and local EEO laws; MS-GWMG's anti-discrimination and harassment policies; and this Settlement Agreement.

MS-GWMG will provide its Human Resources staff supporting Financial Advisors and Registered Financial Advisor Trainees with appropriate training regarding best practices for complaint investigation and resolution.  Human Resources will be trained to treat all complaints or inquiries as confidentially as legally possible and to carry out their duties in a manner consistent with the law. In addition, Human Resources will implement controls designed to ensure that only non-complaining employees or managers with a need-to-know will be advised of a complaint or investigation. In all instances, upon being informed of a complaint or investigation, the non-complaining employees and managers so informed will be reminded of MS-GWMG's policy against retaliation.

MS-GWMG will retain documents sufficient to show complaints of sex discrimination, sex bias, and/or retaliation related to such complaints for the term of the Settlement Agreement.

**F.    Appointments.**

**1.    Diversity Monitor.** The parties shall jointly appoint a Diversity Monitor. The Diversity Monitor shall be external to and independent of the MS-GWMG, but will report directly to the COO and President of MS-GWMG. She or he shall monitor MS-GWMG's efforts to carry out the terms of the Settlement Agreement. This shall include the following:

a.    The Diversity Monitor will receive monthly reports regarding complaints of women Financial Advisors and Registered Financial Advisor Trainees alleging sex discrimination and resolution of investigations of such complaints through the CARE program or otherwise.

b.    The Diversity Monitor will review quarterly reports regarding the branches in which Branch Managers have filed exception reports reflecting a deviation from the account distribution process.

c.    The Diversity Monitor will review account distribution data, exception reports and complaints to monitor policy compliance. If the Diversity Monitor identifies issues of potential non-compliance, the Diversity Monitor will inform MS-GWMG and Lead Class Counsel. After consultation with Lead Class Counsel, MS-GWMG will take appropriate corrective actions to address instances of non-compliance. MS-GWMG shall inform the Diversity Monitor and Lead Class Counsel of any such corrective action taken. Where potential non-compliance has been identified, the Diversity

Monitor shall have the right to audit the activities in a branch, by reviewing documents, asking branch management to provide explanations and, if necessary, speaking to Financial Advisors in the branch. Nothing herein shall alter or restrict Lead Class Counsel's right to enforce this Settlement Agreement under the Dispute Resolution provisions of this Settlement Agreement.

          d.     The Diversity Monitor will monitor bi-annual training of management on EEO policies, and policies against discrimination and retaliation, and ensure that the training agreed to was implemented.

          e.     The Diversity Monitor will review how Human Resources handles investigations and resolution process for inquiries and complaints.

          f.     The Diversity Monitor will provide reports to Lead Class Counsel and MS-GWMG at least semi-annually regarding the items monitored, including the analysis of the account distribution system. The Diversity Monitor may report incidents of potential material non-compliance with this Settlement Agreement to Lead Class Counsel and MS-GWMG on a more frequent basis.

          g.     The Diversity Monitor will maintain records for the term of this Settlement Agreement.

        **2.**      **Industrial Psychologists**

          a.     The parties shall jointly appoint Industrial Psychologists Dr. Kathleen Lundquist and Dr. Irwin Goldstein, who shall work with MS-GWMG and Class Counsel to develop innovative, meaningful, novel, state of the art programs and to make recommendations:

- Concerning policies and programs designed to recruit women Financial Advisors and Financial Advisor Trainees to MS-GWMG;
- For increasing participation of women Financial Advisors in the receipt of retiring Financial Advisors' books of business;
- For increasing participation of women Financial Advisors in partnerships;
- Concerning policies and practices with respect to training, development, and mentoring, that will enhance opportunities for women Financial Advisors and Financial Advisor Trainees. Training and development may include but is not limited to training conference calls, online courses, and in-person seminars;
- Concerning a mentoring program for all Financial Advisor Trainees and Financial Advisors; and
- Concerning a system of semi-annual internal data collection and a monitoring process.

b.      The Industrial Psychologists shall present such recommendations to a senior executive panel of MS-GWMG consisting of: the Senior Learning & Development officer; the Senior Diversity officer; the Senior Employment Attorney; the senior Human Resources officer; and a representative from National Sales Management. A copy of the recommendations will also be provided to Lead Class Counsel. If MS-GWMG does not agree with the recommendations, but Lead Class Counsel still thinks they should be implemented notwithstanding MS-GWMG's objections, the Industrial Psychologists, along with Lead Class Counsel, will have the opportunity to present the recommendations to the COO and President of MS-GWMG or the then Head of National Sales for MS-GWMG. All recommendations of the Industrial Psychologists will be designed to advance the purposes of this Settlement Agreement consistent with MS-GWMG s business needs and objectives.

c.      The Industrial Psychologists shall provide the Diversity Monitor with their findings of deviations from the account distribution system.

30

d.    Subject to signing an appropriate confidentiality agreement, and upon reasonable advance notice, the Diversity Monitor and the Industrial Psychologists described in Sections VII.F.1. and VII.F.2. above will have reasonable access to relevant documents, data, and MS-GWMG employees. The Diversity Monitor and the Industrial Psychologists will be compensated by MS-GWMG.

**3.**    If it becomes necessary to replace the Diversity Monitor or either Industrial Psychologist, the parties shall jointly select a replacement by mutual agreement.

**G.    General Non-Discrimination Provisions.**  Pursuant to MS-GWMG's Non-Discrimination and Anti-Harassment Policy, women Financial Advisors and Registered Financial Advisor Trainees will enjoy terms and conditions of employment comparable to their male counterparts.

MS-GWMG shall assert the following general policies using a method agreed to by the parties:

**1.**    Prohibition against discrimination on the basis of sex in compensation and business opportunity allocations.

**2.**    Prohibition against retaliation for reporting sex discrimination, participating in the CARE program, participating in this or any discrimination settlement, filing a lawsuit or complaint with any outside agency or entity alleging sex discrimination, or for refusing to participate in sex discrimination.

**3.**    MS-GWMG will not honor business expenses that are directly or indirectly related to male-only entertainment establishments.

**4.**    The parties agree that it shall be a violation of this Settlement Agreement for a Morgan Stanley supervisor to retaliate against any Class Member for her

31

participation in the prosecution of the allegations contained in the charges underlying this Settlement or in the Settlement itself.    However, nothing in this Settlement will prevent a Class Member from pursuing whatever legal rights or remedies she otherwise may have with respect to any individual claim not covered by the claims released through this Settlement.

## VIII.  MONETARY RELIEF

A.    **Settlement Fund.**  No later than ten (10) days after Preliminary Approval of this Settlement Agreement, Morgan Stanley shall pay by wire transfer to the Depository Bank the sum of Forty-Six Million Dollars ($46,000,000). The $46 million will be placed in an interest-bearing account titled in the name of MS-GWMG Financial Advisor Sex Discrimination Settlement Fund, a Qualified Settlement Fund organized and existing under the laws of the District of Columbia, intended by the parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. This payment is made in order to satisfy the claims of all Named Plaintiffs and Class Members, as well as for other purposes identified in this paragraph. The monies so transferred, together with interest subsequently earned thereon, shall constitute the Settlement Fund.  The $46 million transferred into the Settlement Fund by Morgan Stanley shall, with the additional Employer Payroll Tax Payment described below, constitute the total Settlement cash outlay by Morgan Stanley in connection with: (1) the resolution of this matter; (2) this Settlement Agreement (and attachments); and (3) the dismissal of this Action.    Except as provided in Section VIII.F.2. (*i.e.*, employment taxes), this sum is inclusive of payment for: (a) all amounts paid to Class Members, including Named Plaintiffs, which are to be distributed pursuant to Section VIII.D. below; (b) all attorneys' fees and costs awarded by the Court, including those in connection with securing court approval of

the Settlement, the claims process and monitoring the Settlement Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; and (c) all costs in connection with the Settlement Fund including, but not limited to, those related to notice, claims processing, legal advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), and the Special Master's fees and expenses; and (d) applicable federal, state and local income taxes, and all federal and state unemployment taxes required to be withheld and/or paid by Morgan Stanley.  However, the $46 million payment to the Settlement Fund does not include Morgan Stanley's share of taxes or contributions (*i.e.*, FICA, FUTA, SUTA and Medicare) which will be paid separately by Morgan Stanley to the Claims Administrator. Morgan Stanley shall, upon notice from the Claims Administrator as required in Section VIII.F.2. below, remit any required tax payment to the Claims Administrator.  Nothing in the foregoing provisions of this Section, however, shall release MS-GWMG from expending the resources required to fulfill its responsibilities under this Settlement Agreement.

**B.**    **Administration by Trustee.**  The Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management and distribution of the Settlement Fund.  The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and to maintain that qualification.

C.      **Claims Filing Procedures for Settlement of Claims of Named Plaintiffs
and Class Members.**  Class Members shall be entitled to submit their Claim Forms to the
Special Master in accordance with the procedures set forth on the Claim Form. Any Class
Member who previously released claims which would otherwise be covered by this
Settlement Agreement, or who obtained a final judicial determination concerning claims that
would otherwise be covered by this Settlement Agreement, is not eligible to receive a
monetary award for those claims.

In order to be eligible for an award from the Settlement Fund, Class Members,
including Named Plaintiffs, must submit a Claim Form which must be postmarked or actually
received by the date established by the Court. The Claim Form shall be completed in its
entirety to the extent applicable, including the survey of information to identify, among other
things, individual evidence of alleged sex discrimination.

The Claims Administrator will provide counsel for Morgan Stanley and MS-GWMG's
payroll department with the names and social security numbers of Class Members who
submitted Claim Forms ("Claimants").  The identity of the Claimants will not be disclosed to
anyone else at MS-GWMG.

After receiving the Claimant information discussed in the paragraph above, Morgan
Stanley, through its counsel, will provide the Claims Administrator with the dates each
Claimant was employed in the MS-GWMG as a Financial Advisor and/or Registered
Financial Advisor Trainee and earnings information for those Claimants.   The Claims
Administrator will provide that information to each Claimant.   To the extent there is any
disagreement relating to the accuracy of the information provided to the Claimants, the

disagreement shall be resolved by the Special Master. The Special Master shall provide any corrected data to Plaintiffs' experts.

D. **Allocation Formula.** Class Members who submit a Claim Form will be eligible to receive monies based on a formula (the "Allocation Formula") which will have two components: (1) an Earnings Regression Component developed by Class Counsel's statistical experts and (2) a Claim Form Survey Component to be determined by the Special Master. Fifty percent (50%) of the formula will be allocated to each of these two components.

1. **Earnings Regression Component.** A Financial Advisor Class Member, including a Named Plaintiff, whose annual earnings in any year during the liability period fall below an annual earnings curve which is set at two standard deviations above the mean earnings curve for male Financial Advisors (controlling for registration date and branch/office location), shall be eligible to receive a monetary award from the earnings regression component for that year.

Once it is determined that a Claimant is eligible for a monetary award from the earnings regression component for a particular year, the calculation of the monetary award will take into account the Claimant's earnings during that year and shall control for the following variables: a) the Claimant's length of tenure at MS-GWMG as a Financial Advisor; b) the Claimant's registration date; and c) the Claimant's branch office location.

A separate, comparable earnings regression model will be conducted with respect to Registered Financial Advisor Trainees. The earnings regression component will be developed by Class Counsel's expert with input from MS-GWMG.

2. **Claim Form Survey Component.** The Special Master shall make allocations under the Claim Form survey component by taking into consideration: (1)

information provided by Class Counsel and information contained in the Claim Form submitted to the Special Master concerning the Claimant's (i) individual contribution to the prosecution of this action; (ii) individual evidence of alleged sex discrimination presented on the Claimant's Claim Form; (iii) individual evidence supporting an award of compensatory damages; and (2) the release of individual claims that were filed in an EEOC charge on or before December 31, 2006 and that go beyond the scope of the settled class claims. Based on information provided by MS-GWMG, the Special Master may modify allocations to be made under the Allocation Formula based on any data or information specific to the Claimant's branch/office, including information regarding persons who previously signed a release that covered sex discrimination claims. Subject to Court approval of the rationale and methodology upon which the proposed allocation and distribution are based, the Special Master will have sole and final authority as to the final distribution.

3.      **Special Master Authority to Determine Award Eligibility.**

a.      Within a reasonable time period after the date specified for receipt of the Claim Forms, the Special Master shall render a determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund.

b.      The total amount of such awards shall not exceed the net amount of the Settlement Fund after all costs and Class Counsel's attorney's fees, as discussed in Section VIII.A. above, are considered.

c.      After determining the proposed allocation the Special Master shall submit a Report and Recommendation including the proposed allocation and distribution plan, together with a full explanation of the rationale and methodology upon which the proposed allocation and distribution are based, to the Court under seal for *in camera* review

and approval of the rationale and methodology, with copies to Lead Class Counsel. If there is no objection or suggested modification by the Court within thirty (30) days following submission to the Court, the rationale and methodology shall be deemed approved, the allocation and distribution plan contained in the Report and Recommendation shall be deemed final, and the Special Master shall submit the distribution plan to the Claims Administrator to send the Notices of Awards to the eligible Claimants.

       d.     Following approval by the Court, the Claims Administrator shall send a Notice of Award to each eligible Claimant, along with a Named Plaintiff Release or a Class Member Release, whichever is applicable. Within a reasonable time period after receipt of an executed Named Plaintiff Release or Class Member Release from a Named Plaintiff or an executed Class Member Release from a Class Member, the Claims Administrator shall send the Named Plaintiff or Class Member her award payment. Any Named Plaintiff who does not execute and timely deliver an executed Named Plaintiff or Class Member Release, and any Class Member who does not execute and timely deliver an executed Class Member Release to the Claims Administrator within six (6) months of the date the Notice of Award was mailed to her shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Named Plaintiff or Class Member has not opted out. Any undistributed funds that remain after six (6) months from the mailing of the Notice of Award due to unsubmitted releases shall be distributed to 501(c)(3) organizations advancing opportunities for women, including opportunities in the financial services industry, as jointly selected by Lead Class Counsel and MS-GWMG.

       e.     The Special Master shall maintain the distribution plan and allocation list for a period of five (5) years. Morgan Stanley shall have access to individual

allocation amounts only upon written notice to Class Counsel and a showing of good cause (e.g., actual or threatened litigation by a Claimant). Any dispute as to whether good cause exists for such a requested disclosure shall be resolved through the Dispute Resolution process set forth in this Settlement Agreement.

      **4.**     **Confidentiality Regarding Amount of Monetary Award.** All Claimants receiving monetary awards will be required to keep the amount of their award confidential.

    **E.**    **Non-Admissibility of Fact of Award (or Non-Award).** Except to the extent that it would constitute a set off in an action for damages claimed for any period covered by this settlement, neither the fact nor amount of an award, nor the fact of any non-award, shall be admissible in any other proceeding for any purpose other than to enforce a Named Plaintiff Release or a Class Member Release executed in accordance with this claims process, nor shall it be deemed to be a finding as to the merits of any claim.

    **F.**    **Tax Treatment**

      **1.**     **Qualified Tax Status and Tax Responsibilities.** The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Claims Administrator under the Court's supervision. The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

      **2.**     **Payment of Federal, State and Local Taxes.** The parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows: The Claims Administrator shall serve as trustee

38

of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement, including the handling of tax-related issues and payments. Specifically, the Claims Administrator shall be responsible for withholding, remitting and reporting of the Claimant's share of the payroll taxes from the Settlement Fund, and Morgan Stanley shall be responsible for the employer's share of payroll taxes as set forth in this section.

The Special Master will establish, for tax purposes, the allocation of the payments made to Claimants to wages, interest, compensatory damages, or such other tax character of such payout as the Special Master may determine, based on the principles set forth in Treas. Reg. §1.468B-4 by reference to the claims pursuant to which distributions are made and as if Morgan Stanley made such payments directly to Claimants.

The Claims Administrator shall inform Morgan Stanley in writing of the employer's share of all taxes or contributions (*i.e.*, FICA, FUTA, SUTA, and Medicare) required to be paid by Morgan Stanley.  Morgan Stanley shall, within ten (10) business days of such notice, remit all such payments (net of the credit for opt outs, if any, as provided for in Section IV.C.9. above) to the Claims Administrator for payment to appropriate taxing authorities ("Employer Payroll Tax Payment").

The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify Morgan Stanley for any penalty arising out of an incorrect calculation and/or interest with respect to late deposit of the same. Subject to the Claims Administrator's obligation to comply with applicable laws, the parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS on

Form 1099-INT. The amounts paid for emotional distress shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

Except with respect to the Employer Payroll Tax Payment, the Claims Administrator shall be responsible to satisfy from the Settlement Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, FUTA, SUTA, Medicare and any state employment taxes. The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

The Claims Administrator shall be responsible for procuring an executed Named Plaintiff or Class Member Release and Form W-9 from each Named Plaintiff prior to making any monetary allocations to such Named Plaintiff. The Claims Administrator shall be responsible for procuring an executed Class Member Release and Form W-9 from each eligible Claimant who is not a Named Plaintiff prior to making any monetary allocations to such Claimant.

All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Morgan Stanley with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution

costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund.  Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

       **G.**     **Morgan Stanley Has No Further Obligation, Liability or Responsibility**. Other than Morgan Stanley's responsibility for the employer's share of payroll taxes as discussed in Section VIII.F.2. above, Morgan Stanley shall have no withholding, reporting or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Class Members.  Moreover, Morgan Stanley shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) its obligation to pay the settlement amount of $46 million no later than ten (10) days after preliminary approval of this Agreement; (2) its obligation related to the Employer Payroll Tax Payment as set forth in Section VIII.F.2.; and (3) its agreement to cooperate in providing information which is necessary for Settlement administration set forth herein.

       **H.**     The parties anticipate that, as a result of actions to be taken by MS-GWMG pursuant to the Settlement, the earnings of women Financial Advisors will increase over the period of the Settlement Agreement by at least $16 million.

       **I.**     The parties anticipate that MS-GWMG will spend approximately $7.5 million on diversity efforts during the period of this Settlement Agreement, including programs for

training, re-education, and other development programs for women Financial Advisors and Registered Financial Advisor Trainees. This includes costs associated with settlement compliance, such as costs for the retention of the Industrial Psychologists, compensation for the Diversity Monitor, compensation and all expenses for employees who will be working on the diversity programs, and the costs associated with the Women's Business Exchange and other training and development programs for women Financial Advisors and Registered Financial Advisor Trainees.

## IX.    MONITORING

A.    **Data Collection.**  MS-GWMG will collect data which will include, but not be limited to: (1) compensation of Financial Advisors; (2) account distributions, defined to include all transfers of accounts from one Financial Advisor to another within MS-GWMG such as those of retiring and deceased Financial Advisors, not just the distribution of the accounts of departing Financial Advisor; (3) partnerships between active Financial Advisors or partnerships between active and retiring Financial Advisors; and (4) any other areas agreed upon by MS-GWMG and Lead Class Counsel. MS-GWMG will include several variables in its data collection, including but not limited to, gender, production and length of experience.

B.    **Monitoring System**.    MS-GWMG, with input from the Industrial Psychologists and consent from Lead Class Counsel, will create and implement a system of monitoring compliance with each policy described herein, including, without limitation, the account distribution policy using the Power Ranking methodology.

C.    **Reports.**    Lead Class Counsel will receive semi-annual reports from the Diversity Monitor.

**D.    Meetings.**  MS-GWMG and Lead Class Counsel will meet at least once every six (6) months regarding compliance, and may confer more frequently at their discretion or as dictated by information either side gathers.

## X.    ENFORCEMENT

**A.    No Third Parties.**    Enforcement of this Settlement Agreement shall be prosecuted by Lead Class Counsel or counsel for Morgan Stanley only, not third parties. Lead Class Counsel shall meet and confer with counsel for Morgan Stanley prior to commencement of any enforcement proceedings.

**B.    Dispute Resolution.**    The parties will work diligently and in good faith to resolve all disputes that may arise during the term of this Settlement Agreement concerning the rights, obligations and duties of the parties to this Settlement Agreement. In the event the parties cannot agree, the parties will attempt to resolve the dispute with the facilitation of a mutually selected mediator. If mediation fails to resolve the dispute(s) at issue, the parties agree to submit the dispute(s) to binding resolution by a mutually appointed arbitrator.

## XI.    CONFIDENTIALITY

**A.    Documents and Information Produced by Morgan Stanley and Class Counsel.**    All proprietary and confidential documents or information that have previously been provided to either Morgan Stanley or Class Counsel as of the date this Settlement Agreement is executed, or which are produced by Morgan Stanley or Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential.  Said documents and information shall not be disclosed to anyone other than the mediator, arbitrator or the Court in connection with any proceeding to enforce any provision of this Settlement Agreement. If such disclosure is deemed necessary

by Class Counsel or Morgan Stanley, Class Counsel or the Company shall identify and disclose to the other party such documents and information deemed necessary to disclose at least ten (10) business days prior to filing such documents with the Court, and, if a party so requests, shall seek permission to file said documents with this Court under seal.

   **B.**    **Return or Disposal of Confidential Documents and Information.**    All proprietary and confidential documents or information that have previously been provided to Class Counsel or to Morgan Stanley as of the date this Settlement Agreement is executed, or which are produced by Morgan Stanley or Class Counsel pursuant to any provision of this Settlement Agreement, shall be destroyed or returned to counsel as follows:

   After the expiration of the five (5) year term of the Settlement all proprietary and confidential documents or information provided to Class Counsel or Morgan Stanley and designated "Confidential for Settlement Purposes Only" or similar designation pursuant to the Confidentiality Agreement, or that have been produced in confidence pursuant to any provision of this Settlement Agreement, and all copies of such documents or information, shall, upon request, be returned to counsel for the producing party or be destroyed within thirty (30) days of the expiration of the five (5) year term of the Settlement.  Certification of such destruction shall be provided to counsel for the producing party.

   The preceding paragraphs of this Section are intended to supersede those provisions of the "Confidentiality Agreement For Settlement Discussions" earlier executed by counsel for the parties that address the timing of the return or destruction of proprietary and confidential documents or information provided to Class Counsel or Morgan Stanley.  All other provisions of the "Confidentiality Agreement For Settlement Discussions" remain in full effect.

Nothing in the preceding paragraphs shall preclude any party from responding to a lawful discovery request, subpoena or court order; provided, however, that the party against whom such discovery is sought or such subpoena or order is directed agrees to provide immediate notice and a copy of same to counsel for the other parties to this Settlement Agreement.

In the event that this Settlement Agreement is terminated for any reason, all proprietary and confidential documents or information provided to Class Counsel or Morgan Stanley and designated "Confidential for Settlement Purposes Only" or similar designation pursuant to the Confidentiality Agreement, or that have been produced in confidence pursuant to any provision of this Settlement Agreement, and all copies of such documents or information, shall, upon request, be returned to counsel for the producing party or be destroyed within thirty (30) days of the date on which this Settlement Agreement is terminated. Certification of such destruction shall be provided to counsel for the producing party.

## XII.    ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL.

As discussed above in Section VIII.A., all of Class Counsel's fees and costs, including those in connection with securing Court approval of this Settlement Agreement, the claims process and any monitoring of this Settlement Agreement, shall be paid from the Settlement Fund, following approval of those attorney's fees and costs by the Court.

## XIII.   GOVERNING LAW

The parties agree that federal law shall govern the validity, construction and enforcement of this Settlement Agreement. To the extent that it is determined that the validity, construction or enforcement of this Settlement Agreement or any Named Plaintiff Release or

Class Member Release executed pursuant to its terms is governed by state law, the law of the District of Columbia shall apply.

This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the parties with respect to the Settlement. This Settlement Agreement does not impose any obligations on the parties beyond the terms and conditions stated herein. Accordingly, this Settlement Agreement shall not prevent or preclude MS-GWMG from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as they are consistent with this Settlement Agreement.

Except as specifically provided for herein, this Settlement Agreement may not be amended or modified except with the express written consent of the parties.

## XIV.   OTHER CONDITIONS OF SETTLEMENT

A.      **Exhibits.**  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

B.      **Notices to Counsel.**  All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to counsel for the respective parties (specifically, to Cyrus Mehri of Mehri & Skalet, PLLC, Steven M. Sprenger of Sprenger & Lang, PLLC, Alexa B. Pappas of Morgan Stanley, and Mark S. Dichter of Morgan, Lewis & Bockius LLP) at their respective addresses set forth below (or to such other address as any such party or counsel may designate in a notice). Notices sent to Alexa B. Pappas under this paragraph shall be addressed to Ms. Pappas at the following address: 2000 Westchester Avenue, Purchase, New York, 10577-2530.

**C.**     **Failure to Insist on Strict Compliance.**  The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

**D.**     **Settlement Agreement Binding.**  This Settlement Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreements shall not inure to the benefit of any third party.

**E.**     **No Drafting Presumption.**  All parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

**F.**     **Dispute As To Meaning of Agreement Terms.**  In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the parties agree that such dispute will be resolved and adjudicated only in accordance with the dispute resolution provisions of Section X of this Settlement Agreement.

**G.**     **Interpretation of Terms.**  Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

**H.**     **Paragraph and Section Headings.**  Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

**I.**     **Counterparts.**     This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

**J.**     **Agreement Binding.**     As of the date on which counsel for the parties execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless the Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated.


[Remainder of this page intentionally left blank.]

DATED: July 17, 2007

s/Cyrus Mehri
Cyrus Mehri, Esq.
Email: cmehri@findjustice.com
Steven A. Skalet, Esq.
Sandi Farrell, Esq.
Lisa Bornstein, Esq.
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, N.W.  Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Christopher Moody, Esq.
Email: moody@nmlaborlaw.com
Whitney Warner, Esq.
MOODY & WARNER, P.C.
4169 Montgomery NE
Albuquerque, NM 87109
Telephone: (505) 944-0033

Steven M. Sprenger, Esq.
SPRENGER + LANG, PLLC
Email: ssprenger@sprengerlang.com
1400 Eye Street, N.W. Suite 500
Washington, DC 20005
Telephone: (202) 265-8010
Facsimile: (202) 332-6652

Mara R. Thompson, Esq.
SPRENGER + LANG, PLLC
Email: mthompson@sprengerlang.com
310 Fourth Avenue South, Suite 600
Minneapolis, MS 55415
Telephone: (612) 871-8910
Facsimile: (612) 871-9270

*Attorneys for Plaintiffs and the Class*

DATED: July 17, 2007


s/Mark S. Dichter
Mark S. Dichter, Esq.
Email: mdichter@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5291
Facsimile: (215) 963-5299


*Attorneys for Defendant*
*Morgan Stanley & Co. Incorporated,*
  *formerly known as Morgan Stanley DW Inc.*