UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Joanne Augst-Johnson, Nancy Reeves, | ) | |
| Debra Shaw, Jan Tyler, Cheryl Giustiniano, | ) | |
| Laurie Blackburn, Erna Tarantino, | ) | |
| and Elizabeth Reinke, | ) | Case No. 1:06-cv-01142 (RWR) |
| | ) | |
| On behalf of themselves and all others similarly | ) | |
| situated, | ) | CLASS ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Morgan Stanley & Co. Incorporated, formerly | ) | |
| known as Morgan Stanley DW Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**INTRODUCTION** ....................................................................................................... 1

**BACKGROUND** ........................................................................................................ 1

  **I. PROCEDURAL HISTORY** ................................................................................ 1

**III. SUMMARY OF THE SETTLEMENT TERMS** ................................................ 3

  **A. General Terms** .................................................................................................. 3

  **B. Programmatic Relief** ......................................................................................... 4

  **C. Monetary Relief for Class Members and Named Plaintiffs** ............................... 5

**ARGUMENT** ............................................................................................................. 7

  **I. CLASS COUNSEL HAS COMPLIED WITH THE NOTICE PROVISIONS** ............... 7

  **II. THE COURT SHOULD APPROVE THE SETTLEMENT CLASS** ........................... 9

    **A. The Proposed Settlement Class Satisfies Rule 23(a)** ...................................... 9

      **1. The Settlement Class Is So Numerous That Joinder of All Members Is Impracticable** ............................................................................................. 10

      **2. Questions of Law and Fact Are Common to the Settlement Class** ......................... 10

      **3. The Named Plaintiffs' Claims Are Typical of the Class Claims** .............................. 11

      **4. The Named Plaintiffs Are Adequate Representatives Under Rule 23(a)(4** ............ 12

    **B. The Proposed Settlement Class Satisfies Rule 23(b)** ..................................... 12

    **C. Class Counsel Are Competent Under Rule 23(g) to Represent the Class** ................. 14

  **III. FINAL APPROVAL IS APPROPRIATE BECAUSE THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE** ........................................... 15

    **A. The Settlement Provides Adequate Relief to the Class** ................................. 18

    **B. The Settlement Is Fair in the Allocation of Benefits Between Named Plaintiffs and Class Members** ........................................................................................... 20

**C. The Response From Members of the Class Has Been Overwhelmingly Positive and Demonstrates that the Settlement Is Fair** ........................................................................ 21

**1. The Vast Majority of Class Members Support the Settlement** .............................. 21

**2. The Few Objections Received Are Without Merit** .......................................... 22

*a. The Objection of Mary Harris Evans Should Be Overruled* ...................................... 22

*b. The Objection of Jennifer Cropper Should Be Overruled* ........................................ 23

*c. The Objection of Janice Grant Should Be Overruled* ............................................ 24

*i. The Monetary Is Not Inadequate* ............................................................ 25

*ii. The Class Definition In Not "Unfairly Restrictive"* ............................................ 28

*iii. The Notice and Claims Process Was Adequate* ................................................ 29

*iv. Injunctive Relief Is Fair and Adequate* .................................................... 30

**IV. THE COURT SHOULD ENTER ADMINISTRATIVE ORDER NO. 2** ..................... 32

**V. CONCLUSION** ............................................................................ 33

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................................. 14

**Barnes v. District of Columbia*, 242 F.R.D. 113 (D.D.C. 2007) ............................................. 12, 13

**Blackman v. District of Columbia*, 454 F. Supp. 2d 1 (D.D.C. 2006) .................................... 15, 16

*Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003)..................................................... 11

*Bynum v. District of Columbia*, 217 F.R.D. 43 (D.D.C. 2003).................................................... 13

**Bynum v. District of Columbia*, 412 F. Supp. 2d 73 (D.D.C. 2006) ..................... 15, 21, 22, 24, 26

*Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003)............................................................. 11

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9
  (D.D.C. 2006) ............................................................................................................................... 10

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) ................................................................. 13

*Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447 (D.C. Cir. 1988) ......................................... 10

*Freeport Partners, LLC v. Allbritton*, 2006 U.S. Dist. LEXIS 9710 (D.D.C. March 13, 2006) .. 19

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ........................................................... 16, 17

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) .......................................... 21

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981) .......................... 21

**In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)................. 22, 28

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251 (D.D.C. 2002) ............................................. 10, 11

*In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004).................................... 16

*Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981 ...................................................................... 16

**Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) .............................................................. 16, 23

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .................................................................... 9, 30

*Osher v. SCA Realty, Inc.*, 945 F. Supp. 298 (D.D.C. 1996)....................................................... 16

iii

*Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998) ................................................................ 11

**Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999) .................................................. 15, 18, 19, 28

*Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007) ........................................... 10

**Thomas v. Albright,* 139 F.3d 227 (D.C. Cir. 1998) .............................................................. 18, 28

*United States v. District of Columbia*, 933 F. Supp. 42 (D.D.C. 1996)........................................ 17

**Other Authorities**
*5 Moore's Federal Practice* § 23.22[3][a] (Matthew Bender 3d ed. 1998) ................................... 9

**Rules**
Fed. R. Civ. P. 23 .............................................................................................................. 8, 13, 14

## INTRODUCTION

Plaintiffs Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke (the "Named Plaintiffs" or "Class Representatives"), on behalf of the Settlement Class, respectfully request that this Court grant the parties' Joint Motion for Final Approval of their Class Action Settlement Agreement. The proposed Settlement will provide Class Members with substantial programmatic and monetary relief. On July 17, 2007, this Court granted preliminary approval to the Settlement with Morgan Stanley & Co. Incorporated. ("Morgan Stanley"). Since then, Notice was provided by first class mail to each of the 2,867 members of the Settlement Class. Only two Class Members have objected to the Settlement, and a third person, who is not a Class Member, submitted a purported objection. No current employees have objected to the Settlement. Only one percent of Class Members have requested exclusion from the terms of the Settlement. As of October 1, 2007, the Claims Administrator, Settlement Services, Inc. ("SSI") has received 907 Claim Forms from Class Members.[1] The overwhelmingly positive response from Class Members provides strong evidence that this Settlement is fair, adequate, and reasonable in all respects and should be approved.

## BACKGROUND

### I. PROCEDURAL HISTORY

The procedural history of this litigation and the terms of the Settlement Agreement are described in detail in Plaintiffs' Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement and Class Counsel's Motion for Award of Attorneys' Fees

---

[1]    The Claims Administrator has not yet determined whether all persons who submitted Claim Forms are, in fact, Class Members.

and Expenses ("Prelim. Mem."), filed on April 24, 2007, at pp. 1-9. We review this history more briefly here.

This case began in early 2005, after Joanne Augst-Johnson contacted Mehri & Skalet, PLLC regarding her experiences at Morgan Stanley. Mehri & Skalet joined forces with Sprenger + Lang, PLLC, and Moody & Warner, P.C., who had been investigating the claims of Nancy Reeves, Debra Shaw, and Jan Tyler. The three firms collectively conducted interviews of more than 200 women employed in Morgan Stanley's retail brokerage business. In the course of the investigation, four additional women stepped forward and were added as Named Plaintiffs in this action. (Declaration of Cyrus Mehri, (hereinafter "Mehri Decl."), ¶¶ 4-5, 10-11), attached hereto as Exhibit 1.

The Named Plaintiffs in this case allege that Morgan Stanley discriminated against women Financial Advisors and Registered Financial Advisor Trainees with respect to distributions and transfers of accounts, work assignments, compensation, career advancement opportunities, termination, and other terms and conditions of employment, as described in the Amended Complaint, filed on April 24, 2007.

The parties entered into settlement negotiations in April 2005, well before a complaint was filed. During these negotiations, the parties entered into a tolling agreement, a confidentiality agreement, and exchanged information similar to the discovery that would have occurred during formal class discovery. This information included detailed information on company policies and practices and company-wide computer data concerning account distributions and compensation for women compared to men during the potential liability period. The data exchanged was thoroughly analyzed by recognized statistical expert, Dr. Janice Madden, a professor at the University of Pennsylvania and a principal in the consulting firm,

2

Econsult Corp. (Mehri Decl., ¶¶ 13). The information exchanged enabled the parties to fully assess their respective litigation positions. The exhaustive negotiations spanned more than two years, included over 15 in-person meetings and numerous telephone conferences and were facilitated by a skilled and highly respected mediator, Hunter H. Hughes, Esq. of Rogers & Hardin, LLP. (*Id.* at ¶ 15). These mediation efforts culminated in a Settlement Agreement executed on April 23, 2007. The parties filed a Joint Motion for Preliminary Approval of Class Action Settlement Agreement on April 24, 2007. A preliminary approval hearing was held on July 5, 2007, during which this Court suggested certain revisions to the Settlement Agreement and Notice to Class Members. Counsel for the parties made the changes suggested by the Court and filed revised versions of the Settlement Agreement and Notice on July 11 and July 16, 2007. On July 17, 2007, this Court preliminarily approved the proposed Settlement, provisionally certified the proposed Settlement Class, appointed the Named Plaintiffs as Class Representatives, approved the Notice and Claim Form, and designated Class Counsel. (Preliminary Approval Order, (hereinafter "Prelim. App. Order"), July 17, 2007).

## II.  SUMMARY OF THE SETTLEMENT TERMS

### A.  General Terms

The Settlement Class includes all women who were employed by Morgan Stanley as Financial Advisors or Registered Financial Advisor Trainees at any time between August 5, 2003 and June 30, 2007. (Second Revised Settlement Agreement (hereinafter "Settlement Agreement"), § III.D.1, attached hereto as Exhibit 2). All Class Members who receive a monetary award under the Settlement will expressly release all claims that arise out of the allegations giving rise to this lawsuit. (*Id.,* § V.A). Class Members who wished to opt out of the monetary portion of the Settlement were required to do so by submitting an opt-out statement

with the Court by September 10, 2007.  (*Id.*, § IV.C.5; Prelim. App. Order ¶ 8.)    The terms of

the Settlement are described in detail in Plaintiffs' Preliminary Approval Memorandum at pp. 4-

9 and are only briefly summarized here.

### B.  Programmatic Relief

The programmatic relief agreed to in the Settlement consists of changes in company

policies and practices that plaintiffs alleged were the source of the sex discrimination that they

and other women experienced.  Among other things, Morgan Stanley has agreed to revise the

"Power Rankings" used to allocate accounts and other business opportunities to ensure equitable

and fair account distribution without regard to gender.  Morgan Stanley will also implement

account distribution policies to ensure equitable and fair distribution of the accounts of departing

Financial Advisors, retiring Financial Advisors, departing Financial Advisor partners, and leads,

call-ins, and walk-ins, and will computer-automate the account distribution process.  (Settlement

Agreement, § VII.C).  The company will maintain the Branch Management Mobility project and

develop and implement a comprehensive management and assessment and development program

to provide candidates a path to assessment and selection as branch managers.  (*Id.*, § VII.B).  The

company will provide bi-annual diversity training to all management-level field personnel and

include a diversity component to branch manager compensation designed to measure and reward

efforts at recruiting, training and retaining women Financial Advisors.  (*Id.*).

The parties have jointly selected Industrial Psychologists Dr. Kathleen Lundquist and Dr.

Irwin Goldstein to work with Morgan Stanley and Class Counsel to develop meaningful, novel,

state-of-the-art programs designed to attract, retain and enhance the success of women Financial

Advisors and Registered Financial Advisor Trainees.  The Industrial Psychologists will also

develop meaningful, state-of-the-art programs designed to increase the participation of women

Financial Advisors in partnerships and in the receipt of retiring Financial Advisors' accounts. (*Id.*, § VII.F.2).

The term for the programmatic provisions of the Settlement is five years.  During the five-year term, Morgan Stanley will regularly report to Class Counsel about Morgan Stanley's compliance with its Settlement obligations through a Diversity Monitor hired pursuant to the Settlement Agreement.  (*Id.*, § VII.F.1 and § IX.C).  The company will institute a state-of-the-art monitoring program developed with input from the jointly appointed expert Industrial Psychologists.  (Id., § VII.F.2 and § IX.B).  If Morgan Stanley fails to carry out any of its obligations, Class Counsel may bring an enforcement action following attempted voluntary resolution of the dispute.  Any such enforcement action would be brought before an arbitration panel and subject to binding arbitration and Court oversight (*Id.*, § X).

The parties estimate that Morgan Stanley will spend approximately $7.5 million on diversity efforts during the period of the Settlement Agreement.  As a result of the actions taken by Morgan Stanley under this Agreement, the parties anticipate that the earnings of women Financial Advisors will increase by at least $16 million over the five-year term of the settlement. (Mehri Decl. ¶ 31).

## C. Monetary Relief for Class Members and Named Plaintiffs

On July 27, 2007, pursuant to the Settlement Agreement, Morgan Stanley paid $46 million by wire transfer to the MS-GWMG Financial Advisor Sex Discrimination Settlement Fund.[2]  The principal is expected to generate over $1 million in interest prior to Class Member distributions.  (Mehri Decl. ¶ 25).  Morgan Stanley will also pay the employer's share of payroll

---

[2]      This sum, including the interest thereon, is intended to cover all attorneys' fees and costs Plaintiffs are requesting the Court award.  Plaintiffs' Motion for Attorneys' Fees and Costs will be filed within two days of this Motion.

taxes due on Class Member distributions.  (Settlement Agreement, § VIII.F.2).  Ultimately, the Settlement Fund, inclusive of interest and the employer's share of payroll taxes, is likely to approach $50 million.  (Mehri Decl. ¶ 25).  The Settlement Fund will be used to pay the claims of Class Members (including the Named Plaintiffs), attorneys' fees and litigation expenses, and costs to administer the claims process and to monitor and enforce the Settlement.  (Settlement Agreement, § VIII.A).

The allocation of awards from the Claims Portion to Class Members, including the Named Plaintiffs, will be based on an allocation formula that includes an Earnings Regression component and a Claim Form component, each of which will be weighted equally in calculating a Class Member's monetary award.  (*Id.*, § VIII.D.1-2).  The Earnings Regression component, which will be developed by Plaintiffs' labor economist and statistician, will consist of a mathematical calculation that accounts for both the claimant's length of tenure at Morgan Stanley and the disparity between the claimant's earnings during the liability period and those of male peers.  (*Id.*, § VIII.D.1).  The Claim Form component, which will be administered by a Special Master, will be based on a formula that takes into consideration individual evidence of sex discrimination, individual evidence of compensatory damages, individual contributions to the litigation, and the release of claims asserted in administrative charges that exceed the scope of the Class claims.  (*Id.*, § VIII.D.2).  No awards will be paid prior to final approval of the Settlement.  *(Id.,* § VIII.D.3.d).  The Special Master will recommend a plan of allocation based on the Earnings Regression calculations and consideration of the Claim Forms, and will submit a Report and Recommendation to the Court for approval.  (*Id.*, § VIII.D.3.a-c).  The Special Master's report will include a discussion of the formula and the rationale therefore.

# ARGUMENT

## I.  CLASS COUNSEL HAS COMPLIED WITH THE NOTICE PROVISIONS

When this Court granted preliminary approval of the Settlement on July 17, 2007, it also approved the means for giving members of the Settlement Class notice of the proposed Settlement.  As shown below, Class Counsel has fully complied with the Court's directions regarding the notice program.

On April 30, 2007 and July 13, 2007, the parties supplied to the Claims Administrator, Settlement Services, Inc. ("SSI"), data on all female Financial Advisors and Registered Financial Advisor Trainees (current and former) who worked at Morgan Stanley at any time between August 5, 2003 and June 30, 2007.  (Declaration of Mark Patton, ¶ 3 (hereinafter "Patton Decl.), attached hereto as Exhibit 3).  This list contained contact information for 2,867 women who comprise the entire universe of potential Class Members.  (*Id.*).  On July 27, 2007, SSI mailed copies of the Notice, Claim Form, and Class Member Release approved by the Court (the "notice package") to each person on the list provided by Morgan Stanley.  (*Id.*, ¶ 5).  Three hundred and sixteen of the notice packages were returned to SSI as undeliverable; 41 of those had forwarding addresses on the returned envelopes and were promptly remailed.  (*Id.*, ¶ 7-8).  When SSI searched for updated address information for all 316 undeliverable notices, 32 returned the same address and 284 new addresses were found.  (*Id.*, ¶ 8).

On September 14, 17 and 18, Class Counsel searched for updated addresses for the 32 addresses SSI did not find new addresses for using LEXIS-NEXIS' SmartLinx tool.  (Mehri Decl., ¶ 39).  Where phone numbers were located, Class Counsel made efforts to call these Class Members or relatives of the Class Members and obtain updated addresses.  (*Id.*)  Class Counsel provided updated addresses for 13 Class Members to SSI on September 17 and 18, 2007.  (*Id.*).

On September 14, 2007, SSI resent the Notice Package to all 316 Class Members whose original package had been returned as undeliverable. (Patton Decl., ¶ 8). Because the resending of the undeliverable notices was delayed, SSI resent all 316 notice packages via priority mail, with a bright yellow insert instructing Class Members to contact Class Counsel if they anticipated any problems meeting the deadlines. (*Id.*). Class Counsel has received phone calls from some of these Class Members and has instructed each of them to include a letter or note with her submission of a Claim Form indicating that she received her Notice too late to submit her Claim Form by the September 24, 2007 postmark deadline. (Mehri Decl., ¶ 40). As of October 1, 2007, there are only 21 Class Members, less than one percent of the Class, for whom SSI or Class Counsel could not find what appear to be accurate addresses. (Patton Decl., ¶ 10).[3]

The mailed notice packages provided actual notice to each Class Member, to the extent practicable. In addition to the mailed notice packages, Class Counsel created and maintained a website, www.morganstanleygendercase.com, which contained detailed information related to the proposed Settlement. On this website, a visitor can view and/or download the Amended Complaint; the Joint Motion for Preliminary Approval of Class Action Settlement; Plaintiffs' Memorandum in Support of Preliminary Approval; the Second Revised Settlement Agreement; the Notice of Class Action, Proposed Settlement Agreement & Settlement Hearing; the Claim

---

[3]     Approximately 25 Class Members contacted Class Counsel after receiving the remailed notice package. (Mehri Decl., ¶ 40). None of these callers indicated a desire to object to the fairness of the Settlement. (*Id.*) Class Counsel did receive a copy of a letter sent to this Court from Daniel J. Kaiser, Esq., who represents three Class Members involved in individual litigation against Morgan Stanley. One of Mr. Kaiser's clients is on the list of 316 Class Members whose notice package was returned as undeliverable, and Class Counsel understand Mr. Kaiser plans to attend the October 11, 2007 fairness hearing to request the Court give his clients leave to opt-out of the Settlement even though the deadline has passed. Morgan Stanley has communicated to Class Counsel its position is that Class Members whose opt-out requests are untimely must submit a notarized affidavit or a declaration pursuant to 28 U.S.C. § 1746 swearing that they did not receive the notice package before the opt-out deadline. (Mehri Decl., ¶ 43). Class Counsel do not oppose this position.

Form; the Named Plaintiff Release; and the Class Member Release. This website was activated on July 5, 2006. (Mehri Decl., ¶ 36). Class Counsel also posted information related to the Settlement and/or links to the www.morganstanleygendercase.com website on their individual firm websites, www.findjustice.com (Mehri & Skalet, PLLC); www.sprengerlang.com (Sprenger & Lang, PLLC); and www.nmlaborlaw.com (Moody & Warner, P.C.). (*Id.*, ¶ 37).

The Court should find that Class Counsel complied with every provision in the Settlement concerning notice. Due process requires that absent class members have the right to be heard and an opportunity to remove herself from the class, if she so desires. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999). Class Counsel's efforts at providing actual notice to virtually all Class Members have satisfied this requirement.

## II.  THE COURT SHOULD APPROVE THE SETTLEMENT CLASS

On July 17, 2007, the Court provisionally found that the requirements of Fed. R. Civ. P. 23 (a) and (b)(2) and (b)(3) have been satisfied and granted preliminary approval. As part of the final approval process, the Court should conclude that all of the requirements of Rule 23 have indeed been satisfied and certify the Settlement Class.[4]

### A.  The Proposed Settlement Class Satisfies Rule 23(a)

Under Rule 23(a) of the Federal Rules of Civil Procedure, a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

---

[4]    The Class Action Fairness Act provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are served with the notice" of the proposed settlement. 28 U.S.C. § 1715(d). The parties provided notice to the United States Attorney General and the Attorneys General of all 50 states and the District of Columbia on May 8, 2007, and again on July 25, 2007, after implementing the revisions recommended by this Court at the Preliminary Approval Hearing. (Declaration of Mark Dichter (hereinafter "Dichter Decl.," ¶ 9, attached hereto as Exhibit 4). Thus, final approval to this Settlement may be given after October 24, 2007.

of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a). The Settlement Class meets each of these requirements.

### 1. The Settlement Class Is So Numerous That Joinder of All Members Is Impracticable

Courts generally agree that classes with 40 or more members satisfy the numerosity requirement. *See Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1456 n. 10 (D.C. Cir. 1988); *5 Moore's Federal Practice* § 23.22[3][a] (Matthew Bender 3d ed. 1998). The parties have submitted to the Claims Administrator a list of 2,867 Class Members. (Patton Decl., ¶ 4-5). Therefore, the Settlement Class clearly meets the numerosity requirement.

### 2. Questions of Law and Fact Are Common to the Settlement Class

Commonality requires that the claims in a case raise issues that involve questions of law or fact common to the class, but does not require that every issue of law or fact be identical with respect to each class member. *See, e.g., Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Generally, the commonality requirement is satisfied where there is at least one issue which, if resolved, affects all or a significant number of class members. *See, e.g., Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25-26 (D.D.C. 2006). For this reason, the commonality requirement is "easily met." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002).

The programmatic relief provisions of the proposed Settlement demonstrate that the claims of all members of the Class raise numerous common issues. Morgan Stanley maintains its employment practices and policies in much the same way at each of its branch offices. All of the Class Members, both current and former Morgan Stanley employees, were subjected to the

same employment policies and practices during their tenure as Financial Advisors or Registered Financial Advisor Trainees.

The similarity of these employment policies and practices presents a number of factual and legal issues common to members of the Settlement Class, some of which are set forth in the Amended Complaint at paragraph 22. The commonality requirement is thus easily satisfied in this case. *See, e.g., Bynum v. District of Columbia*, 214 F.R.D. 27, 33-34 (D.D.C. 2003) (finding commonality where class members were affected by the same policy or practice, even if the extent of individual class members' injuries varied).

### 3. The Named Plaintiffs' Claims Are Typical of the Class Claims

The Rule 23(a) typicality requirement is met if "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998) (internal citations omitted); *see also Chang v. United States*, 217 F.R.D. 262, 272 (D.D.C. 2003) ("typicality focuses on the similarity of the legal and remedial theories behind the claims of the named representatives and those of the putative class"). Courts have liberally construed the typicality requirement. *See In re Vitamin Antitrust Litig.*, 209 F.R.D. at 260. Here, all Class Members' claims arise from Morgan Stanley's employment policies and practices.

The eight Named Plaintiffs are or were employed by Morgan Stanley during the class period, between August 5, 2003 and June 30, 2007. Seven of the Named Plaintiffs held the title of Financial Advisor; one Named Plaintiff held the title of Registered Financial Advisor Trainee. Each Named Plaintiff alleges that she suffered sex discrimination with respect to Morgan Stanley's employment practices affecting compensation and career advancement – the same

forms of sex discrimination claimed on behalf of members of the Settlement Class. (*See* Declarations of Joanne Augst-Johnson; Nancy Reeves; Debra Shaw; Cheryl Giustiniano; Laurie Blackburn; Erna Tarantino; and Elizabeth Reinke, filed with Plaintiffs' Prelim. Mem. on April 24, 2007). Each Named Plaintiff would use the same legal theories to prove her claims. Accordingly, the typicality requirement is satisfied.

### 4. The Named Plaintiffs Are Adequate Representatives Under Rule 23(a)(4

The Rule 23(a)(4) adequacy requirement "aims to ensure that the named representatives do not have interests antagonistic to those of the class members they represent, and that they will vigorously pursue the claims of the class through qualified counsel." *Barnes v. District of Columbia*, 242 F.R.D. 113, 122 (D.D.C. 2007).[5] The interests of the Named Plaintiffs do not conflict with the interests of the other Class Members. The representative Named Plaintiffs have claims similar to the members of the Settlement Class and do not face unique overriding defenses. The Named Plaintiffs have aided Class Counsel in prosecuting the case by participating in Class Counsel's investigation and providing input regarding the programmatic relief and the Settlement Agreement at various stages. (Mehri Decl., ¶ 7, 11, 15, 23). The Named Plaintiffs have fairly and adequately represented the interests of the Settlement Class in this case.

### B. The Proposed Settlement Class Satisfies Rule 23(b)

In addition to satisfying all four Rule 23(a) requirements, the proposed Settlement Class also must satisfy the provisions of at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23 (b). The Settlement Class meets this requirement, and was provisionally certified by

---

[5] Although not addressed by the Court in *Barnes*, the adequacy of Plaintiffs' counsel is no longer evaluated under Rule 23(a)(4), but is now assessed under Rule 23(g). *See* Advisory Committee Notes on 2003 Amendments, Subdivision (g) to Fed. R. Civ. P. 23(g).

this Court under both Rule 23(b)(2) and (b)(3).  Approval of a class under both subsections is consistent with Fed. R. Civ. P. 23(c)(4), which permits cases to be maintained as a class action with respect to particular issues, and has been approved by the D.C. Circuit.  *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (permitting district court to adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage"); *see also Barnes v. District of Columbia*, 242 F.R.D. 113, 124 (D.D.C. 2007) (certifying a hybrid (b)(2) and (b)(3) class); *Bynum v. District of Columbia*, 217 F.R.D. 43, (D.D.C. 2003) (certifying two hybrid (b)(2) and (b)(3) classes).

Rule 23(b)(2) requires that the defendant has acted on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.  This requirement is met by a showing that the defendant "has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity."  *Barnes*, 242 F.R.D. at 123 (internal quotations and citation omitted).   Here, Morgan Stanley's account distribution policies and other employment practices affecting compensation, as well as its policies and practices for selecting sales management, applied to all members of the Settlement Class.  The programmatic relief agreed to in the Settlement Agreement will benefit all members of the Settlement Class who currently work for Morgan Stanley as well as female Financial Advisors and Registered Financial Advisor Trainees who will work there in the future.  Class Counsel believes that this relief is as valuable as the monetary relief agreed to in the Settlement. Thus, with respect to the programmatic relief, certification under Rule 23(b)(2) is appropriate.

The Settlement Class has also been provisionally certified pursuant to Rule 23(b)(3).  It is appropriate to certify the Class under Rule 23(b)(3) insofar as Class Members seek and have collectively obtained monetary relief because common issues would predominate over purely individualized issues in the litigation over damages.  The parties have agreed to an allocation formula using statistical earnings regressions models and a Claim Form designed to target distributions to those Class Members most harmed.  Accordingly, some Class Members may believe that they are entitled to damages beyond those that may be afforded to them under this Settlement.  By preliminarily certifying the Class under Rule 23(b)(3), the Court has afforded such Class Members the opportunity to opt-out of the monetary portion of the Settlement without releasing any of their claims.  In fact, 29 Class Members have expressed a desire to opt-out of the Settlement.  (Mehri Decl. ¶ 43).  Class Members' rights to exercise control over the damages aspects of their claims have thus been protected and final certification of this class as a hybrid (b)(2) and (b)(3) class is appropriate.[6]

**C.  Class Counsel Are Competent Under Rule 23(g) to Represent the Class**

Rule 23(g) requires the Court to appoint class counsel that are able to fairly and adequately represent the interests of the Class.  Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; and (3) counsel's knowledge of the applicable law; (4) the resources counsel has committed to representing the class.  The Court

---

[6]     Rule 23(b)(3) also requires that, to be approved, "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."  The Supreme Court, however, has held that this superiority requirement is irrelevant in the context of a settlement class.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

may also consider any other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(C); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 78 (D.D.C. 2006).

Lead Class Counsel are competent and experienced employment class-action litigators who have achieved several significant employment discrimination settlements and have vigorously represented the interests of the Class Members in this matter. The declarations filed by Cyrus Mehri and Steven M. Sprenger on April 24, 2007 with Plaintiffs' Preliminary Approval Memorandum describe in detail the extensive work by Class Counsel to investigate and pursue the claims of Class Members before the Settlement was reached and, on July 17, 2007, this Court found Class Counsel to be adequate representatives of the Class. Since then, Class Counsel have continued to devote substantial resources to representing the Class Members, including responding to Class Member inquiries regarding the Settlement and claims process, assisting the Named Plaintiffs and several Class Members with completion of their Claim Forms and working with SSI on the administration of the Settlement. (Mehri Decl., ¶ 38). Class Counsel are competent to represent the members of the Class and have fairly and adequately represented the interests of the Class.

## III. FINAL APPROVAL IS APPROPRIATE BECAUSE THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE

Rule 23(e) requires the Court to find that the proposed Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). In this Circuit, "there is 'no obligatory test' that the Court must use to determine whether a settlement is fair, adequate and reasonable;" instead, the Court must consider the facts and circumstances of the case and exercise its discretion in determining whether it should approve a proposed settlement. *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) (citing *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999)),

*aff'd* 206 F.3d 1212 (D.C. Cir. 2000).  Three judicial principles provide some guidance.  First, the courts favor compromise of complex litigation to obviate the uncertainties of the outcome and to avoid wasteful litigation and expense.  *See, e.g.*, *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (noting the "interest in encouraging settlements, particularly in class actions, which are often complex, drawn-out proceedings demanding a large share of finite judicial resources"); *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) ("'principle of preference' favoring and encouraging settlements" limits judicial discretion); *Osher v. SCA Realty, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (the general preference of courts for "resolution of disputes through voluntary compromise" is especially strong in the context of class actions "given the litigation expenses and judicial resources required in many such suits") (internal citations omitted); *Hammon v. Barry*, 752 F. Supp. 1087, 1100 (D.D.C. 1990) ("particularly in class action suits, there is an overriding public interest in favor of settlement"); *Luevano v. Campbell*, 93 F.R.D. 68, 85 (D.D.C. 1981) (the "strong public policy in favor of the settlement of claims . . . is particularly important in the resolution of cases brought under Title VII of the Civil Rights Act of 1964, because of the 'strong preference' of Congress for 'encouraging voluntary settlement of employment discrimination claims'") (internal citations omitted).

Second, the purpose of requiring court approval of the settlement of a class action is to ensure that the interests of the non-party class members are protected.  *See Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 7-8 (D.D.C. 2006) ("in deciding whether to approve a proposed settlement, the Court must protect the interests of those unnamed class members whose rights may be affected by the settlement of the action"); *Osher,* 945 F. Supp. at 304 (the Court has "the duty of protecting absentee class members, which it executes by 'assuring that the settlement

represents adequate compensation for the release of the class claims'"). At the July 5, 2007 preliminary approval hearing, this Court proposed revisions to the Class Notice and Settlement Agreement that provided greater clarity for Class Members. Class Counsel implemented the Court's proposed revisions before the Notice was distributed to Class Members.

Third, in evaluating a settlement under these principles, a court also should leave considerable discretion to the litigants and their counsel. *United States v. District of Columbia*, 933 F. Supp. 42, 46-47 (D.D.C. 1996) ("the function of the reviewing court is not to substitute its judgment for that of the parties to the decree, but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy"); *Hammon*, 752 F. Supp. at 1093 ("a court deciding whether to approve a class action should not substitute its judgment for that of the proponents of the settlement"). Indeed, a presumption of fairness, adequacy, and reasonableness attaches to a class settlement that was reached after arm's length negotiations between experienced, capable counsel after meaningful discovery. *Blackman*, 454 F. Supp. 2d at 8. As described in the Declarations from Lead Counsel Cyrus Mehri and Steven M. Sprenger filed with Plaintiffs' Preliminary Approval Memorandum, this Settlement has been crafted by experienced class action attorneys after the exchange of extensive information that enabled both sides to evaluate the strengths and weaknesses of their respective positions.

Given the application of these factors to this case, the proposed settlement is fair, adequate and reasonable to class members in three crucial respects. First, it provides adequate relief from the defendant to the Class. Second, it provides a fair means for allocating the benefits between Named Plaintiffs and other Class Members. Finally, the response from the members of the Class has been overwhelmingly positive. Each of these factors will be discussed in greater detail below.

**A.  The Settlement Provides Adequate Relief to the Class**

In assessing the fairness, adequacy and reasonableness of a settlement, "by far the most important factor is a comparison of the terms of the compromise or settlement with the likely recovery the plaintiffs would realize if the case went to trial."  *See Blackman v. Dist. of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006); *see also Pigford,* 185 F.R.D. at 91; *Thomas v. Albright,* 139 F.3d 227, 231 (D.C. Cir. 1998).  In this case, the Settlement provides significant programmatic and monetary relief to Class Members, far better than would likely have been possible in litigation.

As described briefly above and in more detail in Plaintiffs' Preliminary Approval Memorandum, the programmatic relief is comprehensive, with provisions that address every significant issue raised by the Plaintiffs in the Amended Complaint: compensation, account assignments, mentoring programs, management job selection procedures, EEO investigative techniques and corporate accountability, monitoring and compliance, and enhanced programs and initiatives to promote opportunities for female Financial Advisors and Registered Financial Advisor Trainees.  Systemic changes like these go far beyond the relief that is typically awarded by courts after trials in employment discrimination class cases.  Class Counsel expects that the changes in Morgan Stanley's employment practices contemplated in this Settlement will set an example for employers throughout the industry.  (Mehri Decl., ¶ 17).

Likewise, the Settlement Fund is among the highest ever negotiated in the settlement of a gender discrimination class action. (Mehri Decl., ¶ 25).  It will adequately compensate members of the Class for claimed losses.  After deducting attorneys' fees and the costs for settlement administration, the Settlement Fund will have approximately $32 million to distribute to Class Members who submit timely Claim Forms.  (Mehri Decl., ¶ 34).

The outstanding programmatic and monetary relief obtained for the Class makes approval of the Settlement appropriate, particularly when measured against the likely outcome if this case were litigated.  The Named Plaintiffs and Class Members, as well as defendant, faced substantial risks in this case in addition to the risks, expenses and delay normally associated with employment discrimination class actions.[7]  First, the substantive law regarding the time period for which Named Plaintiffs and the Class can recover for disparities in compensation is in dispute, and both sides have strong legal arguments in their favor, making the case risky for the Named Plaintiffs, Class and the defendant.  Second, the Settlement Class encompasses over 2,800 Financial Advisors and Registered Financial Advisor Trainees who have worked throughout the country at numerous locations.  Both sides faced significant risks in trying to prove or contest a pattern of discrimination and the existence of company influence over the relevant personnel practices necessary to certify a nationwide class and successfully establish class liability.  Third, the Named Plaintiffs intended to seek recovery of both economic and compensatory damages on behalf of all Class Members should litigation have commenced, and defendant intended to seek to limit the potential scope of recovery.

Finally, an analysis done by Professor Stewart J. Schwab, Dean of Cornell Law School, of employment discrimination cases filed in the federal courts reveals that employment discrimination plaintiffs face a more difficult time in every stage of litigation than virtually any other category of cases.  (*See* Stewart J. Schwab, *How Employment Discrimination Cases Fare*

---

[7]     Both sides recognize that, regardless of the outcome, litigation would be protracted and expensive, especially if the litigation preceded through a full-scale liability trial and a large number of individual damages hearings.  *See, e.g. Freeport Partners, LLC v. Allbritton*, 2006 U.S. Dist. LEXIS 9710 at *29-30 (D.D.C. March 13, 2006) (holding that early settlement that saved the class substantial money in attorneys' and expert fees, as well as avoiding the delay and uncertainty of litigation is a fact that "must weigh heavily" in favor of settlement approval); *Pigford v. Glickman*, 185 F.R.D. 82, 104 (D.D.C. 1999).

*in the Federal Courts: An Empirical Analysis*, attached as Exhibit B to Mehri Decl.).  Dean Schwab found that 61 percent of employment discrimination cases are decided on pretrial motions in the defendant's favor.  (*Id.* at 1).  Employment discrimination plaintiffs win only 28.1 percent of trials.  (*Id.* at 1).  When an employment discrimination plaintiff wins at trial and the defendant appeals the judgment, the judgment is more likely to be reversed (42 percent of the time) than in almost any other category of cases.  (*Id.* at 2).  Considering the likelihood of losing a dispositive pretrial motion, the low win rate at trial, the high likelihood that a plaintiff's trial win will be appealed by the defendant, the high rate of reversal of plaintiffs' trial wins, and a generally low median award for employment discrimination plaintiffs, Professor Schwab projects that the value of a typical individual discrimination case is between $6,536 and $9,648.  (*Id.* at 5).  Therefore, this Settlement is a far better result for Class Members than proceeding with the typical employment discrimination litigation.

For all of these reasons, the Settlement is fair, adequate and reasonable in the quantum of relief it provides to Class Members.

## B. The Settlement Is Fair in the Allocation of Benefits Between Named Plaintiffs and Class Members

With respect to monetary relief, the Settlement provides for the allocation of a portion of the Settlement Fund to Class Members who timely submit Claim Forms.  (Settlement Agreement, § VIII.C).  Monies will be allocated to Class Members based on an Earnings Regression model and information provided on a Claim Form and by Class Counsel.  Class Members, including Named Plaintiffs, are entitled to consideration of their contributions to the prosecution of the litigation.  In addition, Named Plaintiffs are entitled to consideration of their release of individual claims beyond the scope of the class-wide claims of sex discrimination if they decide to release such claims.  (*Id.*, § VIII.D).  After reviewing the Claim Form

submissions, the Special Master will recommend and submit an allocation plan to the Court for approval. No awards will be paid until Court approval is obtained. (*Id.*, § VIII.E).

The Court may exercise its authority to review the recommended awards to insure that the interests of Class Members are fully protected pursuant to Fed. R. Civ. P. 23(d). An allocation plan that is subject to court scrutiny is fair and reasonable even though the precise details of the formula are not spelled out in the settlement itself. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) (where court assessed overall fairness of settlement prior to adoption of distribution scheme, and where defendant's obligations under settlement agreement are not an issue, distribution scheme need not be finalized prior to final approval of class settlement); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 224 (5th Cir. 1981) (sustaining district court's approval of settlement notice even though amount each class member could expect to receive not yet determined); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 76 (D.D.C. 2006) (proposed method of allocating a sum certain for distribution to all class members who filed claims held to be fair, even though class members would not know exact size of award until after all claims had been processed).

**C. The Response From Members of the Class Has Been Overwhelmingly Positive and Demonstrates that the Settlement Is Fair**

**1. The Vast Majority of Class Members Support the Settlement**

The reaction of Class Members to the Settlement, as evidenced by the number of objections, opt-outs, and claim forms submitted, has been overwhelmingly positive. Class Counsel and the Claims Administrator have received 907 Claim Forms, only 29 opt-outs,[8] and only two objections from Class Members. (Mehri Decl., ¶ 42-43, 46; Patton Decl., ¶ 6). Class Members are voting overwhelmingly in favor of the Settlement and this response strongly

---

[8]    This number includes opt-outs received after the September 10, 2007 deadline.

supports final approval of the Settlement. *See, e.g. Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002). In addition, Class Counsel have received numerous calls from Class Members who have a favorable view of the Settlement. (Mehri Decl., ¶ 41).

The Court's Preliminary Approval Order required all opt-outs and objections to be sent to both Lead Class Counsel and counsel for Morgan Stanley and received by September 10, 2007. As of October 1, 2007, Class Counsel has received 29 requests to opt-out of the Settlement – only one percent of the total Class Members. (Mehri Decl., ¶ 43).

As of October 1, 2007, Class Counsel has received two objections to the Settlement, and a third person, who is not a Class Member, has submitted a purported objection. The low number of opt-outs and objections supports the conclusion that the Settlement is favorably viewed by well over the majority of the Class Members. *Bynum*, 412 F. Supp. 2d at 77; *In re Lorazepam*, 205 F.R.D. at 378. No currently-employed Class Members have claimed that any part of the Settlement is unfair to Class Members. In any event, none of the objections provides sufficient reason to question the fairness, adequacy or reasonableness of the Settlement.

**2. The Few Objections Received Are Without Merit**

       *a. The Objection of Mary Harris Evans Should Be Overruled*

The objection of Mary Harris Evans is not a proper objection for two reasons. First, Ms. Evans stated in her letter that she is an Assistant Branch Manager in Morgan Stanley's Menlo Park branch office. (Objection/Opt-out of Mary Harris Evans, at 1, attached at Exhibit G to Mehri Decl.). Assistant Branch Managers are not part of the Settlement Class in this case, and Class Counsel's review of the list of Class Members provided by Morgan Stanley confirms that Ms. Evans is not a Class Member. (Mehri Decl., ¶ 46). As Ms. Evans is not a Class Member,

she has no standing to object to this Settlement. *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

Second, Ms. Evans also specifically stated that if she were considered a Class Member, she wished to opt out of the Settlement. (Evans Objection/Opt-out, at 2). Class Members who opt out are not entitled to object to the Settlement. *Id*. Although there is an exception to this general rule that is recognized for non-settling parties who demonstrate "prejudice" from the settlement, *id*., at 1093, Ms. Evans' objection/opt-out does not demonstrate any prejudice to her by her being excluded from the Class. Ms. Evans simply states that as a "producing" Assistant Branch Manager, she has been and is subjected to gender discrimination. (Evans Objection/Opt-out, at 1-2). This is not persuasive. The far-reaching programmatic relief that Morgan Stanley will implement as a result of this Settlement will benefit all employees at Morgan Stanley, including female "producing" Assistant Branch Managers. Further, the type of prejudice that entitles a non-class member to object to a proposed settlement means "'plain legal prejudice," as when 'the settlement strips the party of a legal claim or cause of action.'" *Mayfield*, 985 F.2d 1090, 1093. Ms. Evans will not be stripped of any legal claim or cause of action by this Settlement – since she is not a Class Member, she has not released any of her claims and remains free to bring her own gender discrimination case, if she so desires.[9]

### b. *The Objection of Jennifer Cropper Should Be Overruled*

The objection of Jennifer Cropper does not challenge the fairness, adequacy, or reasonableness of the proposed Settlement. Ms. Cropper simply states in her objection that she

---

[9]    Ms. Evans also states that she agrees with the objection of Janice Grant. (Evans Objection/Opt-Out, at 2). Ms. Grant also raises the concern about the exclusion of Assistant Branch Managers from the Class; Named Plaintiffs address the merits of this objection *infra* on p. 28-29.

"neither experienced nor witnessed any form of discrimination," and that Morgan Stanley made "every possible resource" available to female Financial Advisors to assist them. (Objection of Jennifer Cropper, attached as Exhibit E to Mehri Decl.). If Ms. Cropper does not feel she was discriminated against at Morgan Stanley, she is not forced to file a claim. She has, however, identified nothing in her objection that would make the proposed Settlement unfair, inadequate, or unreasonable for the Named Plaintiffs and Class Members who believe they have been discriminated against at Morgan Stanley. Indeed, Ms. Cropper's objection underscores the challenges Plaintiffs would face if they pursued litigation instead of settlement in this case.

### c.  The Objection of Janice Grant Should Be Overruled

Janice Grant, a former Registered Financial Advisor Trainee, submitted a lengthy objection to the Court and Class Counsel. However, Ms. Grant's objection is invalid because it does not follow the instructions for submitting objections to this Court. *Bynum*, 412 F. Supp. 2d at 76 (letters complaining about aspects of settlement that did not comply with procedure for making objections were not treated by court as objections). The Class Notice clearly stated that in order for a Class Member to either speak at the fairness hearing or have her objection considered by this Court, she must submit her objection in writing, with a detailed description of the basis for her objection. (Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing, at p. 8 (hereinafter the "Class Notice")). Copies of any objections must also be submitted to Lead Class Counsel and counsel for Morgan Stanley. (*Id*. at 9).

The copy of Ms. Grant's objection received by Lead Class Counsel included a nearly blank page, with the words "I submit the following paragraph confidentially to the Court" at the top of the page and a "REDACTED" stamp at the bottom of the page. (Objections of Janice Grant to Proposed Settlement and Notice of Intent to Appear at Settlement Fairness Hearing, at 7

(hereinafter "Grant Objection"), attached as Exhibit F to Mehri Decl.).  The purpose of requiring objections to be submitted before the Fairness Hearing is so that counsel for the class has an opportunity to respond to the objections.  Class Counsel cannot possibly respond to the redacted portion of Ms. Grant's objection.  Moreover, to the extent Ms. Grant's attorney instructed or encouraged her to submit information to the Court that was not shared with Class Counsel or counsel for Morgan Stanley, this conduct violates the District of Columbia and Illinois Rules of Professional Conduct, which prohibit ex parte communication with the Court.  *See* D.C. R. Prof. Conduct 3.5; Ill. R. Prof. Conduct 3.5(i).

In addition, Ms. Grant states that she plans to raise additional objections to the proposed Settlement at the Fairness Hearing that she does not identify in her written objection.  (Grant Objection, at 9).  However, the Class Notice instructions were clear that no objections may be raised at the Settlement Hearing that were not first submitted to the Court, Lead Class Counsel, and counsel for Morgan Stanley by September 10, 2007.  (Class Notice, at 9).  Ms. Grant is therefore precluded from raising any objections at the Fairness Hearing that are not contained within the version of her objection received by Lead Class Counsel.

Even if Ms. Grant's objection is valid, it lacks merit.  Ms. Grant was never a Financial Advisor at Morgan Stanley.  She was a Registered Financial Advisor Trainee for only seven months, from February 2004 until September 2004.  (Dichter Decl., ¶ 12).  The grounds for Ms. Grant's objection fall into four general categories of complaints: (a) that the monetary relief is inadequate; (b) that the Class definition is "unfairly restrictive;" (c) that the notice and claims process was inadequate; and (d) that the injunctive relief is inadequate.  Each category is addressed in turn.

i.  *The Monetary Relief Is Not Inadequate*

Ms. Grant believes that the "best test" for whether a settlement is fair to the Class is whether, in the absence of any "extra" awards or payments, the Named Plaintiffs would have settled their claims.    (Grant Objection, at 6).    Ms. Grant misunderstands the legal test for evaluating the fairness of a settlement, and the reasons justifying the fairness, adequacy and reasonableness of the monetary relief in this Settlement have been extensively briefed *supra* and in Plaintiffs' Preliminary Approval Memorandum.    In any event, the Named Plaintiffs agreed to the same distribution process that applies to all Class Members.    Like Class Members, the Named Plaintiffs will not know the amount of their awards until the Special Master has recommended an allocation plan and the Court has approved it.

Ms. Grant also appears to have not read or has misunderstood the description of the monetary fund.    All Class Members, not just the Named Plaintiffs, are entitled to consideration of their contributions to the prosecution of the litigation.    The Named Plaintiffs are entitled to additional consideration if they decide to release their individual non-class claims, but the total amount of the settlement was negotiated with the intent of covering those claims and the amount of the fund agreed upon is sufficiently large to do so.[10]    Contrary to Ms. Grant's belief, Financial Advisor Trainees, like Ms. Grant, are eligible for awards from both the Earnings Regression and the Claim Form components of the allocation formula, to the same extent as Financial Advisors. There will be a separate Earnings Regression analysis for Registered Financial Advisor Trainees.

The Earnings Regression component will provide an award to any Class Member whose annual earnings in any year during the liability period fall below an annual earnings curve which is set at two standard deviations above the mean earnings curve for male Financial Advisors and

---

[10]    Awarding additional money to named plaintiffs for their individualized damages is a common feature in class settlements.    *See, e.g, Bynum*, 412 F. Supp. 2d at 80-81.

male Registered Financial Advisor Trainees.  (Settlement Agreement, § VIII.D.1).  Two standard deviations above the mean earnings curve for male Financial Advisors is approximately the highest-earning 5% of male peers.  (Mehri Decl., ¶ 27).  Based on Class Counsel's review of Morgan Stanley's employment and payroll data, very few, if any, Class Members will have earned enough money to be excluded from an award under the Earnings Regression component.  (*Id.*, ¶ 27).  Even those Class Members who do not receive an award under the Earnings Regression component may still be eligible for an award under the Claim Form component.  Indeed, the claims procedure in this Settlement will provide for significantly expedited relief for Class Members.  This is an enormous benefit that compares favorably with other settlements, particularly in this industry, where class members have been required to prosecute and succeed at individual mini-trials in order to recover a monetary award.  (*Id.*, ¶ 25).  If this case were handled in a similar fashion, it is likely that many of the claimants could not successfully prosecute such a mini-trial – as has happened to numerous claimants in similar settlement arrangements in this industry.  (*Id.*).  This would result in large numbers of claimants receiving nothing, a situation that will not occur here.  (*Id.*).

Ms. Grant describes several other cases which she claims settled for a much larger amount of money than provided for in this Settlement.  (Grant Objection, at 3-4).  The cases she mentions involved different facts, different claims, and different class members.  Ms. Grant is either uninformed or mistaken about the justifications for and actual cash value received by class members in those cases.  (Dichter Decl., ¶¶ 15-18; Mehri Decl., ¶¶ 47-48).  Similarly, Ms. Grant's calculation of the maximum monetary award that will be available to Class Members (Grant Objection, at 3), is far too simplistic and is mistaken.  The monetary funds will be distributed only to Class Members who file timely and valid claims.  To date, SSI has received

907 Claim Forms. (Patton Decl., ¶ 8). As described above, after deducting attorneys' fees and settlement administration costs, the Settlement Fund will have approximately $32 million to divide among these Class Members, based upon the result of the Earnings Regression analysis and the answers on their Claim Forms. (Mehri Decl., ¶ 34).

In any event, the crux of Ms. Grant's objection is that she believes Class Members should receive more money than they likely will in this Settlement. However, the Court should not reject a settlement simply because a single class member complains that the Class should have received more money. *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *In re Lorazepam*, 205 F.R.D. at 379. Indeed, "[p]utting a monetary value on the damage done to someone who has experienced discrimination…obviously is no easy matter, and it is probable that no amount of money can fully compensate class members for past acts of discrimination." *Pigford*, 185 F.R.D. at 108. The monetary fund in the proposed Settlement is fair, adequate and reasonable, especially when juxtaposed with the risks and uncertainty of continued litigation.

## ii. *The Class Definition Is Not "Unfairly Restrictive"*

Ms. Grant contends that the class definition should be expanded to include Morgan Stanley employees who manage retail books of business but also have managerial titles or responsibilities. (Grant Objection, at 11). Ms. Grant again misunderstands the law related to class actions and class settlements. First, this case does not have a Named Plaintiff with managerial responsibilities who could represent the interests of these excluded employees.[11] These employees are not represented and their claims are not released by this Settlement.

Second, Ms. Grant herself points out that these managerial positions also manage retail books of business. (*Id.*) To the extent these "producing" managers play any role in the

---

[11]    Ms. Grant does not have standing to represent such excluded employees either.

assignment of accounts or other decisions which could affect the earnings of Financial Advisors, there exists a potential for conflict between their interests and the interests of the rest of the Class.  In fact, many women Financial Advisors reported to Class Counsel that managers at Morgan Stanley made decisions directing accounts to themselves.  (Mehri Decl., ¶ 14).  Plaintiffs did not include managers and assistant managers in their investigation precisely because of this potential conflict.  (*Id*.).

Finally, as explained above in response to Ms. Evans' Objection/Opt-out, if any female Sales Managers or Assistant Managers feel they have been discriminated against, this Settlement does not take away their right to bring claims based on these allegations.

### iii.  The Notice and Claims Process Was Adequate

Ms. Grant expresses concern that Class Members who are former employees may not have received the Notice with enough time to determine whether to object, opt-out, or file a claim.  (Grant Objection, at 11).  This Court approved the Notice and the timeframe for the required responses as adequate notice to the Class.  (Prelim. App. Order, July 17, 2007).  The notice packages were mailed on July 27, 2007, which allowed Class Members 45 days to determine whether to object or opt-out.  (Patton Decl., ¶ 5).  The deadline for submitting Claim Forms gave Class Members an additional 14 days to complete and submit their claims.  The notice package was also available though the case website and the websites of Class Counsel.  In addition, the case and Settlement have been covered timely and significantly in the media, which increased the likelihood that former employees would learn of it.  (Mehri Decl., ¶ 36-37).  Indeed, Ms. Grant claims to have learned of the Settlement from press reports about it.  (Grant Objection, at 11).  The notice program was more than adequate to inform Class Members of the Settlement and their rights in relation to it.  Class Members' due process rights were sufficiently

and fairly protected by the notice process employed here.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999).

As discussed above, 316 notice packages were returned as undeliverable, but all have been remailed.  (Patton Decl., ¶ 8).  The bright yellow insert encouraged Class Members to contact Class Counsel if they believed they would have trouble meeting any of the deadlines.  (*Id*.).  Only approximately 25 of these Class Members contacted Class Counsel and none indicated a desire to object to the fairness of the Settlement.  (Mehri Decl., ¶ 40).  Class Counsel has no objection to allowing those Class Members who wish to opt out to do so, if they sign an affidavit or declaration pursuant to 28 U.S.C. § 1746 testifying that they received the remailed notice package after the deadline to opt out.

### iv.  The Injunctive Relief Is Fair and Adequate

Ms. Grant claims the programmatic relief achieved in this Settlement is "grossly inadequate" and will discriminate against African-Americans.  (Grant Objection, at 8-11).  The far-reaching and comprehensive changes Morgan Stanley has agreed to make have been described in detail in this brief and in Plaintiffs' Preliminary Approval Memorandum.  The changes will not only benefit women Financial Advisors and Financial Advisor Trainees, but also other protected groups at Morgan Stanley.  (Mehri Decl., ¶ 18-25, 31).  Among other things, the  account distribution system will be modified to reduce reliance on historical performance (which Named Plaintiff allege favors male brokers) and to ensure that business opportunities are distributed on the basis of merit and current performance.  (*Id*., ¶ 18-20).  In fact, the National Council of Women's Organizations, a nonpartisan, nonprofit coalition of 220 member organizations that address issues of concern to women has expressed wholehearted support for the Settlement and the programmatic relief contained in it.  (*Id.*, ¶ 3).

Most of Ms. Grant's criticism is related to another class action against Morgan Stanley, *Jaffe v. Morgan Stanley*, Case No. 06-3903, filed by other counsel in the Northern District of California, who recently announced that they entered into a race class action settlement with Morgan Stanley.  Ms. Grant's objection is therefore really an objection in that case, which she will have an opportunity to make if and when the plaintiffs in the case submit their proposed settlement for approval.

Ms. Grant's remaining criticisms of the programmatic relief in this case are not sufficient reason to reject this Settlement.  First, Ms. Grant is mistaken when she claims that the revised Power Rankings have not been "back-tested" for disparate impact on African Americans.  (Grant Objection, at 8).  Morgan Stanley did indeed "back-test" the revised Power Rankings and found no adverse impact on either women or African Americans.  (Dichter Decl., ¶ 22).

Second, Ms. Grant is mistaken when she claims that the Settlement Agreement "makes no meaningful attempt to address the issues of partnerships."  (Grant Objection, at 9).  The Settlement ensures that partnerships are not formed as a way of circumventing the regular account distribution process (Settlement Agreement, § VII.C.5.a and VII.C.7), and instructs the jointly appointed Industrial Psychologists to make recommendations for increasing the participation of women in partnerships.  (*Id*., at § VII.C.5.b and VII.F.2.).  Ms. Grant is again mistaken when she complains that the Industrial Psychologists have no authority to implement meaningful reform.  (Grant Objection, at 10).  The Industrial Psychologists have access to, and in fact are instructed to, present their recommendations to senior executives at Morgan Stanley, including, if necessary, the Chief Operating Officer and President of Morgan Stanley. (Settlement Agreement, § VII.F.2.b).

Finally, Ms. Grant misunderstands the enforcement provisions of this Settlement Agreement. The provision limiting enforcement of the Agreement to Class Counsel is typical of class settlements like this one, and any Class Member who believes Morgan Stanley is not abiding by the terms of the Agreement may contact Class Counsel at any time during the term of the Agreement to discuss her concerns. The arbitration provision is related to enforcing the Settlement Agreement itself. (Settlement Agreement, § X.B). Morgan Stanley does not have a mandatory arbitration policy. (Dichter Decl., ¶ 23). The Settlement Agreement provides that disputes related to account distributions shall initially go through Morgan Stanley's alternative dispute resolution mechanism, but nothing in the Settlement Agreement prevents a Class Member from "pursuing any legal claim not released under the Settlement through any applicable governmental agency or court of law if she is otherwise entitled to do so." (Settlement Agreement, § VII.C.8).

Although Ms. Grant raises numerous issues in her 12-page objection, none of her arguments provide a basis to reject the proposed Settlement.

## IV. THE COURT SHOULD ENTER ADMINISTRATIVE ORDER NO. 2

On July 27, 2007, Morgan Stanley paid the sum of $46 million by wire transfer to the Settlement Fund. The terms of the Settlement provide that this sum will be allocated to cover all amounts paid to Class Members, including Named Plaintiffs; all attorneys' fees and costs awarded by this Court; and all costs in connection with administering the Settlement Fund. Administrative Order No. 1 established a Claims Portion and a Fees Portion of the Settlement Fund. The Fund must be allocated appropriately between these portions in manner consistent with the Attorneys' Fees Motion made by Class Counsel. In order to properly allocate the Fund, the parties request the Court to enter proposed Administrative Order No. 2. It provides for the

allocation of the Settlement Fund portions and is consistent with the Settlement Agreement and practices in other class action settlements in this District.

## V.  CONCLUSION

For all the foregoing reasons, the Named Plaintiffs request that the Court certify the proposed Settlement Class, find that Class Counsel complied with the notice provisions of the Preliminary Approval Order, issue the proposed Findings of Fact, Conclusions of Law and Order granting final approval to the Settlement, and enter the parties' jointly proposed Administrative Order No. 2 to enable the proper allocation of settlement monies among the portions of the Settlement Fund and provide for the payment of attorneys' fees and costs.

Dated: October 1, 2007

Respectfully submitted,

*/s/* Cyrus Mehri

Cyrus Mehri (DC No. 420970)
Steven A. Skalet (DC No. 359804)
Lisa M. Bornstein (DC No. 485933)
Anna M. Pohl (DC No. 489407)
MEHRI & SKALET, PLLC
1250 Connecticut Ave. NW
Suite 300
Washington, DC  20036
(202)822-5100

Steven M. Sprenger (DC No. 418736)
SPRENGER & LANG, PLLC
1400 Eye Street, N.W.
Suite 500
Washington, DC 20005
(202) 265-8010

Mara R. Thompson (*Pro Hac Vice*)
SPRENGER & LANG, PLLC
310 Fourth Avenue S.
Suite 600
Minneapolis, MN 55415
(612) 871-8910

Christopher M. Moody (*Pro Hac Vice*)
Whitney Warner (*Pro Hac Vice*)
MOODY & WARNER, P.C.
4169 Montgomery Blvd. NE
Albuquerque, NM 87109
(505)944-0033

*Attorneys for Plaintiffs and the Class*