EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Joanne Augst-Johnson, et al., | ) | |
| | ) | |
| On behalf of themselves and all others similarly situated, | ) | Case No. 1:06-cv-01142 (RWR) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CLASS ACTION |
| v. | ) | |
| | ) | |
| Morgan Stanley & Co. Incorporated f/k/a Morgan Stanley DW Inc., | ) | Declaration of Mark Patton |
| | ) | |
| Defendant. | ) | |

I, MARK PATTON, declare:

     1.    I am the Projects Coordinator of Settlement Services Inc. ("SSI"), located at 2032-D Thomasville Road, Tallahassee, Florida. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

     2.    SSI was appointed as the Claims Administrator in the above-entitled action. SSI's duties include but are not limited to: a) preparing, printing, and mailing the Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing ("Class Notice," attached hereto as Exhibit A) and the Claim Form, which also included a release and a W-9 form (attached hereto as Exhibit B); and b) receiving and processing Claim Forms submitted by Class Members.

     3.    SSI received data on or about April 30, 2007 from Steven Sprenger, who is Co-Lead Counsel for the class in this case, and on or about July 13, 2007 from Azeez Hayne, an

attorney at Morgan, Lewis, & Bockius LLP, counsel for Morgan Stanley, characterized as containing the relevant data for all women who have worked or continue to work for Morgan Stanley in the Global Wealth Management Group during the class period as Financial Advisors or Registered Financial Advisor Trainees.

4.     SSI reviewed the data and constructed a single database (the "Class Member List") containing the data needed to facilitate the mailing of the Class Notice and Claim Form.

5.     On July 27, 2007, I caused the Class Notice, Claim Form, IRS Form W-9, and Release ("Notice Packet") to be mailed to the 2,867 Class Members on the Class Member List by First Class postage at the U.S. Post Office in Tallahassee, Florida. Prior to the mailing of the Notice Packets, all addresses in the Class Member List were verified using the National Change of Address ("NCOA") database.

6.     The deadline for postmarking completed Claim Forms was September 24, 2007. As of October 1, 2007, SSI has received approximately 907 Claim Forms postmarked by the September 24, 2007 deadline.

7.     Since July 27, 2007, 41 Notice Packets have been returned as undeliverable to SSI by the U.S. Postal Service with forwarding addresses. I caused new Notice Packets to be re-mailed to the Class Members at each of these new addresses within one business day of receipt of the undeliverable package.

8.     As of September 14, 2007, a total of 316 Notice Packets were returned to SSI by the U.S. Postal Service. These 316 Class Members, which included the 41 discussed above, were traced using our locator service vendor, and on September 14, 2007, Notice Packets were remailed via Priority Mail to the most likely current address obtained via the trace. Out of the 316, the trace did not return a new address for 32 Class Members, although SSI still remailed Notice Packets to all 316, regardless of whether a new address was returned. Included in the

2

Notice Packet for this mailing was an insert, printed on bright yellow paper ("Insert"), which stated, "If you have any questions about anything in the enclosed documents or if you feel you do not have sufficient time to respond in any way to any of the enclosed documents, please call Class Counsel immediately at either of the following toll-free numbers: 1-866-464-9097 or 1-800-950-6231."

9.      Of the 316 Notice Packets remailed on September 14, 2007, 21 have been returned undeliverable as of October 1, 2007.

10.     As of October 1, 2007, 90 of the 316 Class Members to whom Notice Packets were remailed on September 14, 2007 have returned Claim Forms. Of those 90, 78 were postmarked on or before the September 24, 2007 deadline, six had illegible postmarks, and six were postmarked after the September 24, 2007 deadline.

11.     On or about September 17, 2007, Class Counsel sent SSI new addresses for 12 of the 32 Class Members for whom the trace did not return a new address. SSI sent these 12 Class Members an additional Notice Packet to the addresses provided by Class Counsel via Federal Express Overnight Mail. This mailing also included the Insert.

12.     On or about September 18, 2007, Class Counsel sent SSI one additional new address for a Class Member whose Notice Packet was returned undeliverable. SSI sent an additional Notice Packet to the Class Member at the address provided by Class Counsel via Federal Express overnight delivery. This mailing also included the Insert.

13.     As of October 1, 2007, SSI has received 18 claim forms postmarked after the September 24, 2007 deadline, and 28 claim forms with illegible postmarks. Six of the untimely claim forms and six of the illegibly postmarked claim forms came from women who were among the 316 whose Notice Packet was returned undeliverable and later remailed.

14.    Following the Court's final approval of the settlement, SSI shall be responsible for requesting from Morgan Stanley employment data for Class Members who have filed Claim Forms, sending letters to those Class Members which state the employment history information Morgan Stanley has for each, and processing any challenges to this employment data.  In addition, after the Special Master has reviewed the claims and issued his report, SSI shall be responsible for issuing the monetary payments to Class Members and calculating, reporting, and paying all payroll tax withholdings required by state and federal law.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.  Executed this 1st day of October, 2007 in Tallahassee, Florida.

_____

Mark Patton

4

**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke, | ) ) ) ) ) Case No. 1:06-cv-01142 (RWR) |
| On behalf of themselves and all others similarly situated, | ) ) ) ) CLASS ACTION |
| Plaintiffs, | ) ) JURY TRIAL DEMAND |
| v. | ) ) |
| Morgan Stanley & Co. Incorporated f/k/a Morgan Stanley DW Inc., | ) ) ) |
| Defendant. | ) ) |

**NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT AGREEMENT, AND SETTLEMENT HEARING**

**IF YOU ARE A WOMAN AND WERE EMPLOYED AS A FINANCIAL ADVISOR OR REGISTERED FINANCIAL ADVISOR TRAINEE IN THE GLOBAL WEALTH MANAGEMENT GROUP OF MORGAN STANLEY & CO. INCORPORATED OR ITS PREDECESSOR(S) AT ANY TIME FROM AUGUST 5, 2003 THROUGH JUNE 30, 2007, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A federal court has authorized this Notice.*
*This is not a solicitation from a lawyer.*

Please read this Notice carefully and fully. This Notice describes a proposed settlement and related matters, including the procedures for seeking monies from a Settlement.

This Notice is intended to inform you about the terms of a proposed settlement (the "Settlement") of a pending legal action and your rights in connection with this Settlement. This Notice describes the steps you must take to be eligible to receive Settlement monies if this Settlement is finally approved by the Court. If you do not wish to be part of the class, this Notice details the steps you must take to be excluded from the class.

## General Overview

- Eight women ("Plaintiffs"), on behalf of themselves and all other current and former Morgan Stanley women Financial Advisors and Registered Financial Advisor Trainees, have sued Morgan Stanley for sex discrimination. After extensive discussions over more than two years, the Plaintiffs and the Company have agreed on the terms of a Settlement.

- Morgan Stanley denies that it has done anything wrong, and the Court did not make a determination on that issue. However, the Company has agreed to be bound by the terms of this Settlement.

- The Court has reviewed the Settlement and has given it preliminary approval. Before deciding whether to grant final approval to the Settlement, the Court wishes to inform you of the general terms of the Settlement, what actions you need to take to participate in the monetary provisions of the Settlement, and of your rights to opt-out of the monetary relief portion of the Settlement or to object to the Settlement, if you would like to do so.

- The Court has allowed the following Class to assert claims for monetary relief:

  > All women who were employed as Financial Advisors or Registered
  > Financial Advisor Trainees in the Global Wealth Management Group
  > of Morgan Stanley & Co. Incorporated or its predecessor(s) at any time
  > from August 5, 2003 through June 30, 2007.

- If you fit the above definition, then you are a Class Member. This Notice will explain the terms of the Settlement to be presented to the Court for final approval.

- If the Court grants final approval to the Settlement, the changes to be made to the Company's policies and practices, known as "programmatic relief," will apply to all women who are currently employed by Morgan Stanley as Financial Advisors or Registered Financial Advisor Trainees, including Class Members who opt-out of the monetary relief portion of the Settlement. It is not possible to opt-out of the programmatic relief portion of the Settlement.

- If, after reviewing the terms of the Settlement you would like to participate in the Settlement by making a claim for monetary relief, then you must fill out the attached Claim Form.

- If you want to opt-out of the monetary relief provisions of the Settlement and not receive any monetary relief through this Settlement, or you want to object to the Settlement before the Court, this Notice will describe the procedures to do so.

- The Court will hold a Settlement Hearing to consider whether the Settlement is fair, reasonable, and adequate, and to decide whether to give final approval to this Settlement. The hearing will be held at 10:30 a.m. on October 11, 2007, in the courtroom of the Honorable Richard W. Roberts at the United States District Court for the District of Columbia, Courtroom 9, U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001. If the Settlement is granted final approval by the Court after the Settlement Hearing, the Court's judgment will be final and binding.

•       You are not required to appear at the hearing.  If you are a Class Member you will be represented by attorneys for the Class at no cost to you.  If you wish to opt-out of the monetary relief provisions of the Settlement, you must submit a request to opt-out in writing, but you do not need to appear at the hearing.  If you wish to object to the Settlement, you must submit a written objection. Those who wish to object to the Settlement may present their objection in writing only, or may, in addition to a written objection, appear and be heard by the Court, either by yourself or, at your own expense, with an attorney of your choice.

> •       If you wish to remain a Class Member and to have an opportunity to receive a share of the monetary relief, you must return the attached Claim Form postmarked no later than September 24, 2007.

> •       If you wish to opt-out and exclude yourself from the monetary relief, your opt out request must be received by September 10, 2007.

> •       If you wish to object to the Settlement, your objection must be received by September 10, 2007.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **Submit a Claim Form** | **The only way to be eligible to receive money from the Settlement.** |
| **Do Nothing** | **Stay in this lawsuit.  Receive no money from the Settlement.  Give Up Certain Rights.**<br>By doing nothing, you will not receive any money from the Settlement, and you give up any right to pursue claims against Morgan Stanley separately about the sex discrimination claims covered by the Settlement. |
| **Ask to Be Excluded (Opt Out)** | **Opt out of the monetary provisions of this lawsuit (opt out).  Receive no money from the Settlement.  Keep any rights you might have to pursue monetary claims against Morgan Stanley separately.**<br>If you ask to be excluded, you will not be eligible to receive any money from the Settlement, but you keep any rights you might have to pursue claims against Morgan Stanley separately about the legal claims covered by this Settlement. |
| **Object** | **Write to the Court about why you don't think the settlement is fair to the class.**  Unless you opt out, you may object to the Settlement whether or not you submit a Claim Form |
| **Go to the Hearing** | **Ask to speak in Court about the fairness of the settlement.** |

•       For additional information, you may visit
www.findjustice.com/cases/rights-discrimination/morgan-stanley/ or
www.morganstanleygendercase.com.

**WHAT THIS NOTICE CONTAINS**

Purpose of this Notice .................................................. 1

Background: About the Lawsuit ........................................ 1

Class Definition    You are Part of the Class ........................... 2

Do I Have to Be Part of this Lawsuit? .................................. 3

Summary Of Settlement Terms ......................................... 3

What Are the Terms of the Settlement? ................................ 3

The Settlement Fund .................................................. 3

What Does Morgan Stanley Have to Do Under the Settlement? .......... 3

Settlement Hearing ................................................... 6

Do I have to come to the Settlement Hearing? ......................... 6

How to Proceed: Your Options ........................................ 6

Option A: Remain a Class Member .................................... 6

Option B: Opt-Out: How Do I Exclude Myself from the Settlement? ..... 7

Option C: Object to the Settlement and/or Speak at the Hearing ........ 8

How Will My Settlement Award Be Calculated? ......................... 9

Are There Tax Consequences For Any Money I Might Get? .............. 10

The Lawyers Representing You And The Class ......................... 10

How Will The Lawyers Be Paid? ...................................... 11

Getting More Information ............................................. 11

**BASIC INFORMATION**

1.    **Purpose of this Notice**

The purpose of this Notice is to inform you about this litigation, the certification of a class (the "Class"), the terms of a proposed settlement (the "Settlement"), and your rights in connection with a hearing to be held before the Court on October 11, 2007, to consider the fairness, reasonableness, and adequacy of the Settlement and related matters. This Notice also describes the steps to be taken by those who wish to be excluded from the Class and, for those who remain Class members, the steps necessary to seek a share in the distribution of the Settlement in the event the Settlement is approved by the Court.

2.    **Background:  About the Lawsuit**

In early 2005, Joanne Augst-Johnson contacted the law firm of Mehri & Skalet, PLLC because she believed that she had suffered sex discrimination as a Financial Advisor at Morgan Stanley. After an initial investigation of Ms. Augst-Johnson's claims by Mehri & Skalet, two other law firms, Sprenger + Lang and Moody & Warner joined Mehri & Skalet in the investigation and prosecution of these claims. During a two year period, the firms interviewed over 200 women from over 35 states who were working as or had worked as Financial Advisors or Registered Financial Advisor Trainees at Morgan Stanley in over 35 states. During that time, seven other women joined Ms. Augst-Johnson as Named Plaintiffs in order to prosecute these claims and help bring about change in the treatment of women Financial Advisors and Registered Financial Advisor Trainees at Morgan Stanley. These women are Nancy Reeves, Debra K. Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino and Elizabeth Reinke.

As a result of this investigation, on June 22, 2006, this group of current and former women Financial Advisors and Registered Financial Advisor Trainees sued Morgan Stanley for sex discrimination in the United States District Court in Washington, D.C. The lawsuit is known as Augst-Johnson, et al., v. Morgan Stanley & Co. Incorporated f/k/a Morgan Stanley DW Inc., Case No.1:06-cv-01142 (RWR). Because these women brought this action on behalf of a group, or "class" of women who have similar claims, they filed the case as a "class action," and are referred to as "Named Plaintiffs."

In this lawsuit, the Named Plaintiffs claim that women Financial Advisors and Registered Financial Advisor Trainees at Morgan Stanley received less compensation than similarly situated men as a result of account distributions, partnerships, acquisition of the books of business of retiring Financial Advisors, and other opportunities which were not afforded to women in a manner equal to their male counterparts. The Named Plaintiffs also claim that Morgan Stanley denied them equal opportunities to acquire branch management positions, denied them equal terms and conditions of employment, and terminated them on the basis of sex. Some of the Named Plaintiffs assert other individual, non-class claims, such as age discrimination. You can read all of the plaintiffs' claims in the Named Plaintiffs' Amended Complaint, which can be found at http://www.morganstanleygendercase.com or http://www.findjustice.com/cases/rights-discrimination/morgan-stanley/

Morgan Stanley denies that it discriminated against women or that it otherwise did anything wrong. The Company maintains that women were compensated based solely on their production, just as

1

similarly situated men were.  Morgan Stanley also maintains that opportunities for movement from Registered Financial Advisor Trainee into Financial Advisor positions, and movement from Financial Advisor into branch management positions, were equally available to women and men, and that women were not denied equal terms and conditions of employment or terminated on the basis of their sex.  Morgan Stanley maintains that it does not allow or condone discrimination against women and that it is an equal opportunity employer.  By entering into the proposed Settlement, Morgan Stanley does not admit any wrongdoing.

The Court has not made and will not make any determination regarding whether or not Morgan Stanley discriminated against women.  This Notice should not be regarded as an expression of any opinion by the Court on the merits of any claims or defenses of the Parties.  No trial has occurred. There has been no finding or determination by the Court that Morgan Stanley has violated any law or obligation, or that, in the event that the Settlement does not become effective, a recovery could or could not be made by the Named Plaintiffs or other members of the Class.  Because the Named Plaintiffs and the Company together came to the Court to ask that the Court approve the Settlement that the two sides agreed to, the Court will simply examine the Settlement Agreement to determine whether or not it is fair, adequate and reasonable.

The Settlement resolves claims of sex discrimination in compensation, promotions to branch management positions, terms and conditions of employment, and termination brought under Title VII of the Civil Rights Act of 1964 or any state or local anti-discrimination law.  The Settlement also resolves any and all individual, non-class claims the Named Plaintiffs made in the Complaint and Amended Complaint.

The Court has reviewed the Settlement and has preliminarily approved it as being fair, adequate and reasonable.  Before deciding whether to give the Settlement final approval, the Court wishes to inform you of the general terms of the Settlement and of your right to comment on the Settlement, if you so desire, as well as your right to opt-out, or be excluded, from participating in the monetary portion of the Settlement.

## 3.     Class Definition—You are Part of the Class

You are a member of the Class affected by the Settlement if you fit within this definition:

> All women who were employed as Financial Advisors or Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor(s) at any time from August 5, 2003 through June 30, 2007.

If you received this Notice in a mailing addressed to you, then Morgan Stanley's records show that you are currently employed, or were previously employed, by Morgan Stanley as a Financial Advisor or Registered Financial Advisor Trainee at some time from August 5, 2003 through June 30, 2007. Therefore, you are considered a Class Member.  You have legal rights and options that you may exercise before the Court finally approves the Settlement.

**Do I Have to Be Part of this Lawsuit?**

You may exclude yourself from, or "opt-out" of, the monetary provisions of this lawsuit. If you do so, you will not be required to give up any legal rights that you would otherwise have to sue Morgan Stanley individually, and you will not be permitted to share in the monetary portion of the Settlement. Information about how to opt-out is included below.

**4.    Summary Of Settlement Terms**

**What Are the Terms of the Settlement?**

The Settlement requires Morgan Stanley to establish a Settlement Fund and for its Global Wealth Management Group ("GWMG" or "MS-GWMG") to implement changes to its policies and practices. The programmatic portions of the Settlement will last for five years.

**The Settlement Fund**

Under the Settlement, Morgan Stanley will pay forty-six million dollars ($46,000,000) into a an interest bearing Settlement Fund. The Settlement Fund is expected to earn in excess of one million dollars in interest. A portion of the Settlement Fund will be used to reimburse costs and expenses of the litigation, pay Class Counsel's fees as awarded by the Court, and pay for the administration of the settlement process. The remainder of the Settlement Fund will be distributed to the eligible Named Plaintiffs and Class Members who submit a Claim Form to compensate them for the asserted claims.

**What Does Morgan Stanley Have to Do Under the Settlement?**

Morgan Stanley's Global Wealth Management Group has agreed to implement various revisions to its policies and practices. These revisions are intended to further enhance opportunities for employment, earnings and advancement of women Financial Advisors and Registered Financial Advisor Trainees, and to provide a workplace that promotes fairness for all employees.

The parties anticipate that Morgan Stanley's Global Wealth Management Group will spend approximately seven and one-half million dollars ($7,500,000) on diversity efforts during the period of this Settlement Agreement. Furthermore, the parties anticipate that, as a result of actions to be taken by the Global Wealth Management Group pursuant to the Settlement, the earnings of women Financial Advisors will increase by at least sixteen million dollars ($16,000,000) over the five-year term of the Settlement.

Under the Settlement, Morgan Stanley's Global Wealth Management Group will make the following revisions to its policies and practices, or perform the following tasks, during the five-year term of the Settlement Agreement:

> A.    Revise the calculations used to determine account distributions, known as the Power Rankings, to ensure equitable and fair account distribution without regard to sex. The methodology for calculating a Financial Advisor's Power Ranking will be

provided to each Financial Advisor, including an explanation of each factor and how each factor is weighted;

B.    Implement account distribution policies covering the distribution of accounts of departing Financial Advisors, retiring Financial Advisors, departing Financial Advisor partners, and leads, call-ins and walk-ins. The policy statement will be issued via e-mail to all field employees and will be posted on the Global Wealth Management Group's intra-net site. Morgan Stanley's Global Wealth Management Group will also train all Branch Managers on the account distribution policy;

C.    Computer-automate the account distribution process;

D.    Require that the accounts held by (a) a retiring Financial Advisor, (b) a departing partner in a Financial Advisor partnership, or (c) a manager transferred to a non-producing manager position will be distributed through the Power Ranking account distribution process described above, unless a Joint Production Agreement has been in effect for twenty-four (24) months or longer;

E.    Implement a "Financial Advisor of the Day" Program to handle leads, call-ins and walk-ins in each branch office equitably and without regard to sex;

F.    Maintain the Branch Management Mobility project which includes posting all branch management positions on the Global Wealth Management Group's Internal Job Bank for a minimum of 5 business days. The positions to be posted currently include: Branch Manager; Financial Advisor in Charge; Sales Manager; and Assistant Branch Manager;

G.    Develop and implement a comprehensive management assessment and development program to provide candidates a path to assessment and selection as branch managers;

H.    Provide all management-level field personnel with diversity training no less than every other year. Branch Manager compensation will also have a diversity component designed to measure and reward efforts at recruiting, training, and retaining women Financial Advisors;

I.    Appoint two external, independent expert Industrial Psychologists whose tasks will be to:

    i.    Develop innovative, meaningful, novel, state of the art programs and make recommendations for developing workplace initiatives designed to attract and retain women to Morgan Stanley's Global Wealth Management Group and to retain them and enhance their success, including targeted mentoring and training;

    ii.    Develop programs and make recommendations for increasing participation of women Financial Advisors in the receipt of retiring Financial Advisors' accounts;

    iii.   Develop programs and make recommendations for increasing participation of women Financial Advisors in partnerships;

    iv.   Develop programs and make recommendations concerning policies and practices regarding training, development and mentoring that will enhance opportunities for women Financial Advisors and Financial Advisor trainees; and

    v.    Review how the revised account distribution process has been operating and provide the Diversity Monitor with findings of any deviations for the account distribution system.

J.    Appoint an external, independent Diversity Monitor whose tasks will be to:

    i.    Review account distribution data, exception reports and complaints, and inform Morgan Stanley's Global Wealth Management Group and Lead Class Counsel of any potential non-compliance;

    ii.    Review monthly reports regarding complaints of Financial Advisors and Registered Financial Advisor Trainees alleging sex discrimination and the resolution of investigations of such complaints through the Morgan Stanley's CARE program or otherwise;

    iii.   Monitor annual training of management on EEO policies, and policies against discrimination and retaliation, and ensure that the training agreed to is implemented;

    iv.   Review how Human Resources handles investigations and the resolution process for inquiries and complaints;

    v.    Provide reports to Class Counsel and Morgan Stanley's Global Wealth Management Group at least twice per year regarding all the items monitored, including the analysis of the account distribution system;

    vi.   Maintain records for the five-year term of the Settlement Agreement.

K.    Provide Human Resources staff supporting Financial Advisors and Registered Financial Advisor Trainees with appropriate training regarding best practices for complaint investigation and resolution, compliance with state, federal, and local EEO laws; the Global Wealth Management Group's anti-discrimination and harassment policies; and the proposed Settlement Agreement;

L.   Collect data regarding (a) compensation of Financial Advisors, (b) account distributions, (c) partnerships between active Financial Advisors or partnerships between active and retiring Financial Advisors, (d) any other areas agreed upon by Morgan Stanley's Global Wealth Management Group and Class Counsel;

M.   Meet with Class Counsel at least once every six (6) months regarding compliance; and

N.   With input from the Industrial Psychologists and consent from Lead Class Counsel, create and implement a system of monitoring compliance with each policy described the Settlement Agreement, including, without limitation, the account distribution policy using the Power Ranking methodology.

## 5.   Settlement Hearing

The Court will decide whether or not to give final approval to this Settlement after the Settlement Hearing to be held at 10:30 a.m. on October 11, 2007, before the Honorable Richard W. Roberts at the United States District Court for the District of Columbia, Courtroom 9, U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001.  At this hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate and whether it should be approved. The Court will also consider whether the motion of the Plaintiffs' attorneys, or "Class Counsel," for an award of attorneys' fees and expenses should be approved, and whether, in accordance with the Settlement, an order and judgment should be entered bringing the litigation to a conclusion.

### Do I Have To Come To The Settlement Hearing?

You are not required to appear at the hearing.   Attorneys representing the Class will appear at the hearing on behalf of all Class Members at no cost to you.  However, if you would like to comment on or object to the Settlement, you may appear and be heard at the Settlement Hearing, either by yourself or, at your own expense, with an attorney of your choice.   Information about how to comment on or object to the Settlement is included below.  If the Court gives final approval to this Settlement, the Court's judgment will be final and binding on all Class Members who have not opted out.

## 6.   How to Proceed:  Your Options

After reviewing the terms of the Settlement set forth in this Notice, you have three options.  You must decide at this stage whether you want to A) remain a Class Member with respect to the monetary relief portion of the Settlement and retain an opportunity to share in the distribution of the Settlement; B) opt-out and exclude yourself from sharing in the monetary relief portion of the Settlement; or C) object to the Settlement at the Settlement Hearing.

### Option A:  Remain a Class Member

If you do not request to be excluded, you will remain a part of the Class.  The Court will hold the Settlement Hearing and you, as a Class Member, will be represented by Class Counsel at no cost to you.  In order to be eligible to receive a share of the Settlement, you must fill out the Claim Form

and Form W-9 attached to this Notice and return them to the Claims Administrator postmarked by no later than September 24, 2007. If you are a Class Member and you file a timely Claim Form, you may be eligible to obtain money from this Settlement. The Claim Form asks for information about your employment with Morgan Stanley, and the share of money that you will receive, if any, if the Settlement is finalized, will be determined partly based on your answers to the questions on this Claim Form. Additionally, once your Claim Form has been received, you will receive an Employment Verification Form which you must review for accuracy. If there are any corrections to be made to that Form, you must return a corrected version of that Form to the Claims Administrator. After completing a Claim Form and correcting for errors in the Employment Verification Form, you will not have a right to present any further information concerning your particular situation, nor any right to challenge the final allocation and distribution proposed by the Special Master that is based upon a rationale and methodology approved by the Court.

Each Class Member, including each Named Plaintiff, who is eligible to receive a monetary award from the Settlement will be required to sign a "release" before receiving the settlement award. This release will terminate any sex discrimination claims you have or could have brought against Morgan Stanley arising out of your employment, or termination of employment, with the Company through June 30, 2007. In the case of the Named Plaintiffs, the Named Plaintiff Release will terminate any and all claims you have or could have brought against Morgan Stanley in addition to sex discrimination claims. If you are a Class Member but have already signed a document that releases claims against Morgan Stanley, it is possible that you may have lost your right to recover any money under the Settlement for the claims you released.

Whether or not you submit a Claim Form, unless you opt out, all sex discrimination claims that you may have up through June 30, 2007, arising out of your employment, or termination of employment, with Morgan Stanley, will be barred by this Settlement. Unless you opt out, you remain eligible to object to the Settlement pursuant to Option C, below, whether or not you submit a Claim Form.

**Option B: Opt-Out: How Do I Exclude Myself from the Settlement?**

You may request to opt-out, or be excluded, from the monetary relief provisions of this case. If you opt out, you will not be eligible for any monetary award as part of this Settlement. Any Class Member who wishes to opt out must mail a written, signed statement that she is opting out of the monetary portion of the Settlement to each of the following addresses:

<table>
<tr><td>Cyrus Mehri, Esq.<br>Mehri & Skalet, PLLC<br>1250 Connecticut Avenue, NW, Suite 300<br>Washington, DC 20036</td><td>Steven M. Sprenger, Esq.<br>Sprenger + Lang, PLLC<br>1400 Eye Street, N.W., Suite 500<br>Washington, DC 20005</td></tr>
<tr><td>AND</td><td>Mark S. Dichter, Esq.<br>Morgan, Lewis & Bockius LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921</td></tr>
</table>

To be effective, this opt out statement must be received by the above counsel on or before September 10, 2007, and must contain each of the following:

7

(a)    your name, social security number, current address and telephone number;

(b)    the name and number of this case (Augst-Johnson, et al. v. Morgan Stanley & Co. Incorporated f/k/a Morgan Stanley DW Inc., No. 1:06-cv-01142);

(c)    a statement that you wish to be excluded from the monetary relief provisions of the Settlement, including the following language, which must be contained in your request:

> "I understand that, by this request to be excluded from the monetary settlement in this case, I am foregoing all monetary benefits from this Settlement and will receive no money from the Morgan Stanley Financial Advisor Sex Discrimination Settlement Fund. I understand that I may bring a separate legal action seeking damages, but might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the class for injunctive relief and that I am bound by the injunctive provisions of the Settlement Agreement."

If you choose to opt-out, and submit the necessary information to do so, but later decide to re-join the Class, you may rescind your opt-out request. To be effective, such a rescission must be in writing and signed, and must be received on or before September 24, 2007 by any one of the following:

|  |  |
|---|---|
| Cyrus Mehri, Esq. | Steven M. Sprenger, Esq. |
| Mehri & Skalet, PLLC | Sprenger + Lang, PLLC |
| 1250 Connecticut Avenue, NW, Suite 300 | 1400 Eye Street, N.W., Suite 500 |
| Washington, DC 20036 | Washington, DC 20005 |
| OR | OR |
| Claims Administrator | Mark S. Dichter, Esq. |
| Morgan Stanley Gender Litigation | Morgan, Lewis & Bockius LLP |
| P.O. Box 10646 | 1701 Market Street |
| Tallahasee, FL 32302-2646 | Philadelphia, PA 19103-2921 |

Please note that Class Members who submit timely and valid requests for exclusion will have no right to object to the Settlement in court and will no longer be represented by Class Counsel.

**Option C: Object to the Settlement**

The Court must assess the overall fairness and reasonableness of the Settlement to the Class. Class Members who have not opted out of the monetary relief portion of the Settlement may object to the Settlement. However, in order to speak at the hearing, or have your objection to the Settlement considered by the Court, you must submit a written objection to the Settlement prior to the Settlement Hearing. This statement must be signed, and must include the name and number of this case (Augst-Johnson, et al. v. Morgan Stanley & Co. Incorporated f/k/a Morgan Stanley DW Inc., No. 1:06-cv-01142) and a detailed description of the basis for the objection. This statement must be received by the Court on or before September 10, 2007 at:

Clerk of U.S. District Court
RE: Augst-Johnson, et al. v. Morgan Stanley & Co. Incorporated (No. 1:06-cv-01142)
P.O. Box 34782
Washington, DC 20043

8

You need not appear at the Settlement Hearing for your written comments or objections to be considered by the Court, but you may appear if you so desire. If you plan to comment on or object to the Settlement in person at the Settlement Hearing, you must file a written notice of appearance identifying yourself and any attorney you may retain at your own expense with your objection, which must be signed, include a detailed description of the basis for the objection, and be received by the Court on or before September 10, 2007, at the above address.

In order for your objection to be considered, copies must also be received by Lead Class Counsel and counsel for Morgan Stanley on or before September 10, 2007 at:

|  |  |
|---|---|
| Cyrus Mehri, Esq. | Steven M. Sprenger, Esq. |
| Mehri & Skalet, PLLC | Sprenger + Lang, PLLC |
| 1250 Connecticut Avenue, NW, Suite 300 | 1400 Eye Street, N.W., Suite 500 |
| Washington, DC 20036 | Washington, DC 20005 |
|  |  |
|  | Mark S. Dichter, Esq. |
|  | Morgan, Lewis & Bockius LLP |
| AND | 1701 Market Street |
|  | Philadelphia, PA 19103-2921 |

Please note that no one may appear at the Settlement Hearing for the purpose of objecting to the Settlement without first having filed and served her objection(s) in writing within the time period described above.

## 7.    **How Will My Settlement Award Be Calculated?**

Class Members, including the Named Plaintiffs, who file a timely Claim Form will have their claim reviewed by a Special Master appointed by the Court. Class Members who submit a Claim Form will be eligible to receive monies based on a formula (the "Allocation Formula") which will have two components: (1) an Earnings Regression Component developed by Class Counsel's statistical expert and (2) a Claim Form Survey Component to be determined by the Special Master. Each of these two components will constitute fifty percent (50%) of the Allocation Formula. You will not have a right to challenge the allocation and distribution proposed by the Special Master that is based upon the rationale and methodology approved by the Court.

**Earnings Regression Component.** A Financial Advisor Class Member, including a Named Plaintiff, whose annual earnings in any year during the liability period fall below an annual earnings curve which is set at two standard deviations above the mean earnings curve for male Financial Advisors (controlling for registration date and branch/office location), shall be eligible to receive a monetary award from the earnings regression component for that year.

Once it is determined that a Claimant is eligible for a monetary award from the earnings regression component for a particular year, the calculation of the monetary award will take into account the Claimant's earnings during that year and shall control for the following variables: a) the Claimant's length of tenure at MS-GWMG as a Financial Advisor; b) the Claimant's registration date; and c) the Claimant's branch office location.

A separate, comparable earnings regression model will be conducted with respect to Registered Financial Advisor Trainees. The earnings regression component will be developed by Class Counsel's expert with input from MS-GWMG.

**Claim Form Survey Component.** The Special Master shall make allocations under the Claim Form survey component by taking into consideration: (1) information provided by Class Counsel and information contained in the Claim Form submitted to the Special Master concerning the Claimant's (i) individual contribution to the prosecution of this action; (ii) individual evidence of alleged sex discrimination presented on the Claimant's Claim Form; (iii) individual evidence supporting an award of compensatory damages; and (2) the release of individual claims that were filed in an EEOC charge on or before December 31, 2006 and that go beyond the scope of the settled class claims. Based on information provided by MS-GWMG, the Special Master may modify allocations to be made under the Allocation Formula based on any data or information specific to the Claimant's branch/office, including information regarding persons who previously signed a release that covered sex discrimination claims. Subject to Court approval of the rationale and methodology used by the Special Master, the Special Master will have sole and final authority as to the final distribution.

The information provided on the Claim Form may be verified for accuracy against Morgan Stanley's computerized personnel, payroll, commission, or account data, or documents provided by claimants. The claims of Claimants will then be determined by the Special Master, with 50% of the funds distributed based on a statistical analysis comparing the claimant's earnings with earnings of similarly situated men, and 50% of the funds distributed based on individual responses to questions on the Claim Form.

The Court will approve the rationale and methodology upon which the final distributions to Claimants are based. The final distributions will be filed with the Court under seal to protect Claimants' confidentiality. At this time, it is not possible to predict how much money a particular Claimant will receive. You will not be entitled to contest the amount of the award you receive under this process.

### Are There Tax Consequences For Any Money I Might Get?

Any award you receive from the Settlement will have tax consequences for you. The Claims Administrator will be responsible for withholding, remitting and reporting each Claimant's share of payroll taxes from the Settlement Fund. Morgan Stanley will be responsible to pay for the employer's share of taxes and costs, including FICA, FUTA, SUTA and Medicare. The Claims Administrator will withhold the employee's share of taxes and costs, including any applicable FICA, FUTA, SUTA and/or Medicare, from Claimants' awards and remit those amounts to the appropriate taxing authorities. Class Counsel are not tax advisors and cannot give you advice on any tax matters. Class Counsel urge you to consult your tax advisor for answers to any questions you may have about the tax implications of any potential award.

### 8.    The Lawyers Representing You And The Class

As a Class Member, you are represented in this litigation by Class Counsel, led by Cyrus Mehri of Mehri & Skalet and Steven M. Sprenger of Sprenger + Lang:

**Mehri & Skalet, PLLC**
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036
Phone: (202) 822 5100
Facsimile: (202) 822 4997
Toll Free (866) 464 9097

**Moody & Warner, PC**
4169 Montgomery Blvd. N.E.
Albuquerque, NM 87109
Phone: (505) 944 0033
Facsimile: (505) 944 0034

**Sprenger + Lang, PLLC**
1400 Eye Street, N.W., Suite 500
Washington, DC 20005
Phone: (202) 265 8010
Facsimile: (202) 332 6652

310 Fourth Avenue South, Suite 600
Minneapolis, MN 55415
Phone: (612) 871 8910
Facsimile: (612) 871 9270
Toll Free (800) 950 6231

Unless you elect to exclude yourself from the Settlement, you will continue to be represented by Class Counsel in connection with implementation and monitoring of the Settlement throughout the five-year duration of the terms of the Settlement at no cost to you. Although it is not necessary, you may, if you wish to do so, retain your own attorney at your own expense.

## How Will The Lawyers Be Paid?

In connection with the Settlement, the Court will award Class Counsel reasonable attorneys' fees and expenses out of the Settlement. If you are a Class Member and receive an award from the Settlement , you will not owe any fees or expenses to the lawyers who have represented you as part of the Class. The attorneys' fees and expenses of Class Counsel, as awarded by the Court, will be paid only from the Settlement and only if and after the Settlement has been approved by the Court.

As is routine in class action cases, Class Counsel has filed a motion for an award of attorneys' fees and expenses already incurred as well as the fees and expenses that will be incurred during the five-year term of the Settlement. In its motion, Class Counsel have requested that the Court award them attorneys' fees and expenses in the amount of 26% of the proposed $46 million monetary settlement, plus $300,000 per year during the five-year term of the Settlement to cover future fees and expenses relating to monitoring and enforcing the Settlement, plus interest accruing on all fees and expenses from the date on which the Settlement is funded until such fees and expenses are disbursed to Class Counsel.

Class Counsel have pursued these claims on behalf of Plaintiffs and the Class without receiving any compensation for their services or reimbursement of their out-of-pocket expenses. Class Counsel have undertaken substantial risks in pursuing this matter. They have done so with the understanding that, if they obtained a recovery for the class, their expenses would be reimbursed and they would receive fees from the fund recovered.

## 9.    Getting More Information

If you have further questions or are still not sure whether you are included, you can get free help at www.findjustice.com/cases/rights-discrimination/morgan-stanley/ or www.morganstanleygendercase.com, or by calling or writing to Class Counsel in this case, at the following phone number or address:

Cyrus Mehri, Esq.
Mehri & Skalet, PLLC
1250 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
(202) 822-5100

11

Toll Free: 866-464-9097
E-mail: info@findjustice.com

This Notice contains only a summary of the terms of the Settlement, the provisions of the releases and related matters.  For further information, the Settlement Agreement (which includes the complete terms of the Settlement), the Claim Form, the Release, and numerous other documents connected with the Settlement are available for review and/or downloading on the web at either: www.findjustice.com/cases/rights-discrimination/morgan-stanley/ or www.morganstanleygendercase.com or can be viewed in hard copy in the Office of the Clerk of the United States District Court, 333 Constitution Avenue, N.W., First Floor, Washington, DC 20001.  Other orders that the Court may issue from time to time regarding the administration of the Consent Decree will also be on file with the Court and available on the web at www.findjustice.com/cases/rights-discrimination/morgan-stanley/ and www.morganstanleygendercase.com.


PLEASE DO NOT CALL OR CONTACT THE COURT, THE OFFICE OF THE CLERK OF COURT, OR MORGAN STANLEY WITH QUESTIONS REGARDING THIS NOTICE.

Dated: July 17, 2007                                    /s/
                                              RICHARD W. ROBERTS
                                              United States District Judge

**Exhibit B**

# AUGST-JOHNSON, ET AL. v. MORGAN STANLEY & CO.
## INCORPORATED CLAIM FORM

> **You must postmark this Claim Form by no later than September 24, 2007 in order for it to be considered.**

[fname] [lname]        [mailid]
[address1] [address2]
[city], [state]  [zip]

**IF YOU ARE A WOMAN AND WERE EMPLOYED AS A FINANCIAL ADVISOR OR REGISTERED FINANCIAL ADVISOR TRAINEE IN THE GLOBAL WEALTH MANAGEMENT GROUP OF MORGAN STANLEY & CO. INCORPORATED OR ITS PREDECESSOR(S) AT ANY TIME FROM AUGUST 5, 2003 THROUGH JUNE 30, 2007, YOU MAY BE ELIGIBLE FOR A MONETARY AWARD OUT OF THE SETTLEMENT CREATED IN THIS CASE.**

**NOTE: Claims based on facts occurring before August 5, 2003 or after June 30, 2007 are not eligible for any award under the Settlement Fund.**

If your address is different than printed on the label above or if you did not receive this Claim Form in the mail, please complete your accurate and complete address information below.

Full Name: _____
*First/Middle Initial/Last Name*

Address: _____
*Street Address, including any apartment or box number*

_____
*City*                    *State*        *Zip Code*

## CLAIM FORM INSTRUCTIONS

**All information contained in this Claim Form will be kept strictly confidential. You will not be subject to any retaliation for your completion of these questions. Your answers to Sections A and G are required for you to participate in the claims process. Answer Sections B through F to the extent that they apply to you. Fill in only what applies to you. The monetary award that you receive will be determined based on a combination of your answers to these questions and your work history at Morgan Stanley.**

Make sure to *sign and date* your Claim Form. You may use additional sheets of paper to answer any question on the Claim Form. If you do so, please be sure to put your name, social security number, and the question number on each additional sheet of paper you include with your Claim Form.

**IMPORTANT**: In order to be eligible to receive a settlement award, you must return this Claim Form **postmarked on or before September 24, 2007,  to:**

> **CLAIMS ADMINISTRATOR**
> **MORGAN STANLEY FINANCIAL ADVISOR**
> **SEX DISCRIMINATION LITIGATION**
> **POST OFFICE BOX 10646**
> **TALLAHASSEE, FL 32302-2646**

# SECTION A

## REQUIRED BACKGROUND AND JOB HISTORY INFORMATION

### REQUIRED BACKGROUND INFORMATION

You **_must_** complete Questions Nos. 1 through 19 in order for your Claim Form to be processed.

1. _____            2. _____
   *Home Telephone*                      *Work/Day-time Telephone*

3. _____
   *Cell Phone (if any)*

4. E-mail Address: _____   5. _____
   (if any)                                    Social Security Number

6. Date of Birth: _____
   Month  /Day / Year

7. Please list any previous names you have used, including any used while you were employed by Morgan Stanley:

8. Please list any Central Registration Depository ("CRD") Number(s) you have or ever had:

9. Please list the date you were first registered ("registration date") with the NASD as a Series 7 broker/financial advisor:

10. Please list all Financial Advisor Number(s) ("FA Nos.") you have ever had while employed by Morgan Stanley, including any Joint Production FA Nos., Partnership FA Nos., etc.:

11. Are you female?   Yes      No

## SECTION A (CONTINUED)

### REQUIRED JOB HISTORY

12. Please list the approximate date you began working at Morgan Stanley as a Financial Advisor or Registered Financial Advisor Trainee:

13. Please list the approximate date you began production at Morgan Stanley:

14. Are you currently a Registered Financial Advisor Trainee with Morgan Stanley? Yes    No

15. If you were, but are no longer, a Registered Financial Advisor Trainee with Morgan Stanley, please indicate the reason and the approximate date you ceased being a Registered Financial Advisor Trainee at Morgan Stanley:

    Date:

    Reason:
    Terminated        Left industry        Went to competition    Took another position at Morgan Stanley

    Other (explain):

16. Are you currently a Financial Advisor with Morgan Stanley? Yes    No

17. If you were but are no longer a Financial Advisor with Morgan Stanley, please indicate the reason and approximate date you ceased being a Financial Advisor with Morgan Stanley.

    Date:

    Reason:
    Terminated    Left industry        Went to competition    Took another position at Morgan Stanley

    Other (explain):

18. Have you passed your Series 7 exam?    Yes    No
    Date Passed:

19. List all Morgan Stanley branch offices where you worked during your tenure with Morgan Stanley, including the branch identification numbers, if known, and the dates you worked in each branch office:

3

# SECTION B

## COMPENSATION

**WOMEN FINANCIAL ADVISOR CLASS MEMBERS WHO BELIEVE
THEY EXPERIENCED DISCRIMINATION IN COMPENSATION
AT MORGAN STANLEY ON THE BASIS OF THEIR SEX
PLEASE ANSWER QUESTIONS 20 - 25**

20. Please list all accounts which you believe you didn't receive because of your sex from August 5, 2003 through June 30, 2007. These accounts may have been available as the result of:

> Call-ins
> Walk-ins
> Financial Advisor leaving for another company
> Financial Advisor being terminated
> Retiring Financial Advisor
> Deceased Financial Advisor
> Partnership dissolution
> Other

21. For each account please include the following information: Name of Account, Approximate Date, Approximate Asset Value, Source, Receiving Financial Advisor (name/sex).

22. Has any Morgan Stanley manager ever asked you if you wanted to receive assigned accounts?
Yes    No

23. Did you sign or enter into an Account Distribution Acknowledgement?
> Yes    No

a. If "Yes," approximately when did you sign or enter into an Account Distribution Acknowledgement?

b. If "Yes," did you receive any accounts after signing that Account Distribution Acknowledgement?
> Yes    No

c. If "No," did you ever ask any Morgan Stanley manager to receive assigned accounts?
> Yes    No

> (i) If "Yes," did you receive any accounts after asking that manager for assigned accounts?
> Yes    No

> o If "Yes," please state the number and asset value of any account(s) you received.

> o If "No," please describe the manager's response to your request for assigned accounts.

4

24. Did a Branch Manager ever refuse to approve a Joint Production Agreement/Arrangement or a partnership that you proposed?

    a.   If "Yes," please describe, including the approximate date(s), the name and sex of the Branch Manager, the names of the other Financial Advisors involved and any reason(s) the Branch Manager gave for his or her actions or decisions.

25.    Did you ever ask to be part of a Joint Production Agreement/Arrangement or a partnership and were told by a Branch Manager that you could not?

    a.   If "Yes," please describe, including the approximate date(s), the name and sex of the Branch Manager, the names of the other Financial Advisors involved and any reason(s) the Branch Manager gave for his or her actions or decisions.

**WOMEN REGISTERED FINANCIAL ADVISOR TRAINEE CLASS MEMBERS WHO
BELIEVE THEY EXPERIENCED DISCRIMINATION IN COMPENSATION
AT MORGAN STANLEY ON THE BASIS OF THEIR SEX
PLEASE ANSWER QUESTIONS 26 - 30**

26. How long have you been or were you a Series 7 licensed Trainee employed with Morgan Stanley?
    0-6 months      6-12 months      12-18 months     18-24 months       over 24 months

27. Are you aware of any male Registered Financial Advisor Trainees who were permitted to complete the training period and become full-fledged Financial Advisors in less time than you?   Yes    No

    a. If "Yes," when were those male Registered Financial Advisor Trainees permitted to complete the training period and become full-fledged Financial Advisors in less time than you?

    b. If "Yes," please describe, including the name of the male Registered Financial Advisor Trainee(s), the branch identification number (if known), and the name(s) and sex(es) of any managers you believe were involved.

28. Are you aware of any male Registered Financial Advisor Trainees who were permitted to join teams, partnerships or joint production agreements while still trainees?     Yes    No

    a. If "Yes," approximately when were those male Registered Financial Advisor Trainees permitted to join teams, partnerships or joint production agreements while still trainees?

    b. If "Yes," please describe, including the name of the male Registered Financial Advisor Trainee(s), the branch identification number (if known), and the name(s) and sex(es) of any managers you believe were involved.

    c. If "Yes," did you ever seek to join teams, partnerships or joint production agreements while still a trainee and were told by a manager that you could not?

        • If "Yes," please describe, including the approximate date(s), the name and sex of the manager, and any reason(s) the manager gave for his or her actions or decisions.

29. Do you believe you were unfairly paid less than any male Registered Financial Advisor Trainee because you are female? Yes    No

    a. If "Yes," identify the male Registered Financial Advisor Trainee(s), the training class he/they were in, his branch identification number, if known, and amount of base salary.

30.    Did you request a higher base salary at the time you were hired?   Yes    No

    a. If "Yes," to whom did you make the request, what was the response, and what reason were you given for the response?

# SECTION C

## PROMOTIONS/BRANCH MANAGEMENT OPPORTUNITIES

**WOMEN FINANCIAL ADVISOR CLASS MEMBERS
WHO BELIEVE THEY EXPERIENCED DISCRIMINATION IN OPPORTUNITIES TO MOVE
INTO BRANCH MANAGEMENT ON THE BASIS OF THEIR SEX
PLEASE ANSWER QUESTIONS 31 – 35.**

31. Please list any branch management positions that you applied for from August 5, 2003 through June 30, 2007 and did not receive.  Please include the position title, approximate date, whether or not you were interviewed, and the name and sex of the person who received the position, if known.

    TITLE              DATE APPLIED     INTERVIEWED    SEX  NAME

    a. How did you apply for the positions identified in response to Question 31?

32. During your tenure at Morgan Stanley, and from August 5, 2003 through June 30, 2007, please list any management positions (Branch Manager, Assistant Branch Manager, Sales Manager, etc.) that you would have been interested in but you did not know were available until they were filled, the approximate date each was filled, and the name and sex of the person placed in that position.

    DATE           POSITION           NAME     SEX

33. Did you ever indicate interest in a management position to any management individuals?  Yes No

    a. If "Yes," please list who you communicated with, when you communicated with him or her, and what response you received.

34. Were there any other branch management positions that you were interested in and knew about, but did not apply for?  Yes      No

    a. If so, please list the position, approximate date it was available, who got the position, the gender of that person, and the reason you did not apply.

7

35. If you believe opportunities to move into management were unfair in any manner not already addressed above, please explain.


**WOMEN REGISTERED FINANCIAL ADVISOR TRAINEE CLASS MEMBERS WHO BELIEVE THEY EXPERIENCED DISCRIMINATION IN OPPORTUNITIES TO ADVANCE INTO A FINANCIAL ADVISOR POSITION ON THE BASIS OF THEIR SEX PLEASE ANSWER QUESTIONS 36 - 37.**

36. From August 5, 2003 through June 30, 2007, did  you move from Registered Financial Advisor Trainee to Financial Advisor at Morgan Stanley? Yes    No

    If "No," why not? (check all that apply)

    _____ Left Morgan Stanley before training completed.  Reason: _____

    _____ Did not make production goals during training

    _____ Met production goals, but branch manager did not change my title or status.

           Please provide any reason any manager gave for not changing your title or status.


    _____ Other (describe)

37. If you believe opportunities to move into management were unfair in any manner not already addressed above, please explain the basis of that belief.

8

## SECTION D

## TERMINATIONS

**WOMEN FINANCIAL ADVISOR CLASS MEMBERS OR REGISTERED FINANICAL ADVISOR TRAINEE CLASS MEMBERS WHO BELIEVE THEY WERE TERMINATED ON THE BASIS OF THEIR SEX. PLEASE ANSWER QUESTIONS 38 - 43.**

**If you were *not* terminated by Morgan Stanley, please skip this section.**

38. Were you terminated as part of the Morgan Stanley Reduction-in-Force ("RIF") of Financial Advisors in August 2005?                Yes            No

    a.  If "Yes," did you know any male Financial Advisors who were in a similar situation to you in terms of productivity but were not terminated, but who you believe should have been? Please list names and reasons.

39. Were you terminated as part of the Morgan Stanley Reduction-in-Force ("RIF") of Registered Financial Advisor Trainees in May 2006?                Yes            No

    a.  If "Yes," did you know any male Registered Financial Advisor Trainees who were in a similar situation to you in terms of productivity but were not terminated, but who you believe should have been?  Please list names and reasons.

40. If you were not terminated as part of a RIF, when were you terminated?  Date_____

    What was the stated reason for your termination:

41. Do you believe that you were unfairly terminated because of your sex?      Yes    No

    If "Yes," please explain:

42. After you were terminated from Morgan Stanley, approximately how long were you out of work: _____years _____ months _____ weeks

43.  Did you seek alternative employment?          Yes    No

# SECTION E

## TERMS AND CONDITIONS OF EMPLOYMENT

**WOMEN FINANCIAL ADVISOR CLASS MEMBERS OR REGISTERED FINANICAL ADVISOR TRAINEE CLASS MEMBERS WHO BELIEVE THEY WERE DISCRIMINATED AGAINST IN THE TERMS AND CONDITIONS OF THEIR EMPLOYMENT ON THE BASIS OF THEIR SEX.**
**PLEASE ANSWER QUESTIONS 44 - 47.**

44. Did any male Financial Advisors or Registered Financial Advisor Trainees receive ***training or mentoring opportunities*** at Morgan Stanley that you did not receive?  Yes    No

   a.  If "Yes," please explain, including approximate date(s) of each occurrence, the manager(s) involved, and any specifics about the situation.

45. Did any male Financial Advisors or Registered Financial Advisor Trainees receive ***marketing opportunities*** at Morgan Stanley that you did not receive?  Yes   No

   a.  If "Yes," please explain, including approximate date(s) of each occurrence, the manager(s) involved, and any specifics about the situation.

46. Did any male Financial Advisors or Registered Financial Advisor Trainees receive ***administrative support or other sales assistance*** at Morgan Stanley that you did not receive? Yes  No

   a.  If "Yes," please explain, including approximate date(s) of each occurrence, the manager(s) involved, and any specifics about the situation.

47. Do you believe that, because of your sex, you unfairly received an ***office assignment*** that was not commensurate with your production ranking in your office?  Yes    No

   a.  If "Yes," were other Financial Advisors or Registered Financial Advisor Trainees unfairly assigned a better or more desirable office that should have been assigned to you? Yes    No

   If "Yes," identify the Financial Advisor(s) or Registered Financial Advisor Trainee(s), their sex(es), the approximate date of each occurrence, the manager(s) involved, and the reasons why you believe the better or more desirable office assigned to the other advisor(s) should have been assigned to you.

# SECTION F

## MEDICAL AND/OR PSYCHOLOGICAL
## EFFECTS OF DISCRIMINATION
## (COMPENSATORY DAMAGES)

**WOMEN FINANCIAL ADVISOR CLASS MEMBERS OR REGISTERED FINANICAL
ADVISOR TRAINEE CLASS MEMBERS WHO BELIEVE THEY EXPERIENCED MEDICAL
AND/OR PSYCHOLOGICAL EFFECTS OF DISCRIMINATION ON THE BASIS
OF THEIR SEX
PLEASE ANSWER QUESTIONS 48 – 51.**

48. Do you contend that any of the sex discrimination you allege in this Claim Form resulted in emotional or physical effects or damages to you?    Yes   No

   **If you answered "No" to question 48, please skip the remainder of this section.**

49. At any time from August 5, 2003 through June 30, 2007, did you see a medical doctor, medical practitioner, psychiatrist, psychologist or any other mental health professional because of any physical, emotional or psychological effects you believe were caused by any conduct you allege in this Claim Form as sex discrimination?    Yes    No

   a. If "Yes," please provide the name(s) and address(es) of each medical or mental health professional you have seen as well as the number of times you sought treatment, and the duration (time period) of any treatment.

50. Have you been prescribed any medication or other treatment for symptoms or conditions related to the physical, emotional or psychological effectes of any conduct you allege in this Claim Form as sex discrimination.   Yes        No

   a. If "Yes," please describe, including the number of times you sought treatment, the duration (time period) of any treatment, any prescription medications your were prescribed, and any diagnosis.

51. Have you incurred any costs for any medical or psychological treatments or prescriptions you sought as a result of the physical, emotional or psychological effectes of any conduct you allege in this Claim Form as sex discrimination.             Yes             No

   a. If "Yes," please describe, including the amount of cost(s) and what any cost(s) was/were incurred for.

11

# SECTION G

## SWORN AFFIRMATION AND SIGNATURE

**I DECLARE UNDER PENALTY OF PERJURY THAT THE PRECEDING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

**I understand that I must keep the Claims Administrator informed of my current address and of any change in my home address. If I do not do so, I understand that I may not receive any award that I might otherwise be entitled to receive.**

Executed this _____ day of _____, 2007

_____
Signature of Claimant

_____
Typed or Printed Name of Claimant

_____
Social Security Number of Claimant

**WHEN YOU HAVE COMPLETED THIS CLAIM FORM,
PUT IT IN THE ENVELOPE PROVIDED, PUT POSTAGE ON IT, AND MAIL IT
BY NO LATER THAN SEPTEMBER 24, 2007 TO:**

**CLAIMS ADMINISTRATOR
MORGAN STANLEY FINANCIAL ADVISOR SEX DISCRIMINATION LITIGATION
POST OFFICE BOX 10646
TALLAHASSEE, FL 32302-2646**

12

# RELEASE AND INDEMNIFICATION AGREEMENT
## (CLASS MEMBERS, EXCLUDING NAMED PLAINTIFFS)

In consideration of my receipt of a court-approved monetary distribution from the Claims Portion of the Settlement Fund in *Augst-Johnson, et al. v. Morgan Stanley & Co. Incorporated,* Case No. 1:06-CV-01142, I hereby agree to be bound by the terms of this Release and Indemnification Agreement (the "Agreement"), as follows:

## I.    DEFINITIONS

Unless otherwise specified in this Agreement, the terms used herein shall have the same meanings as those set forth in the Settlement Agreement.

## II.    LIMITED RELEASE OF CLAIMS AGAINST MORGAN STANLEY & CO. INCORPORATED

I hereby waive, release and discharge Morgan Stanley & Co. Incorporated ("Morgan Stanley"), including its officers, directors, subsidiaries, affiliates, predecessors, successors, fiduciaries, insurers, employees and agents ("Released Parties"), from any and all claims of sex discrimination that I may have against the Released Parties relating to my employment or the termination thereof. I understand that this release includes all sex discrimination claims that I have or may have arising at any time on or before **[INSERT DATE OF PRELIMINARY APPROVAL]**, 2007. I also understand that my release includes all related claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII of the Civil Rights Act of 1964, as amended, or any other federal, state, local or common laws or regulations.

I understand that my release does not include other claims of discrimination such as claims of race, age, or national origin discrimination, or claims arising under the Fair Labor Standards Act or the Employment Retirement Income Security Act.

## III.    INDEMNIFICATION

I understand that I am responsible for payment of any and all federal, state or local taxes (excluding the employer share of employment taxes and unemployment taxes and excluding amounts properly withheld from the distributions) resulting from or attributable to the distributions that I receive. Accordingly, I agree to indemnify and hold harmless the Released Parties, Class Counsel, and the Depository Bank from any tax liability, including penalties and interest and costs of any proceedings. I further agree to indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability, including penalties and interests and costs of any proceedings, that is attributable to my own acts or omissions. In the event a tax liability arises with respect to my monetary award that is not attributable to my own acts or omissions, I agree to indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability only to the extent of the taxes due and payable, but not with respect to penalties and interest, or the costs of any proceedings related to such tax liability.

2019385

## IV.     OTHER AGREEMENTS AND REPRESENTATIONS

A.     Confidentiality.  I agree to keep the amount of any and all distributions I receive from the Settlement Fund strictly confidential to the fullest extent permitted by law, except that I may disclose the same to my attorneys, tax advisors and immediate family members.

B.     Ownership of Claims.  I represent and warrant that I have not assigned or transferred any claim I am purporting to release, nor have I attempted to do so.

C.     Entire Agreement.  This Agreement may not be modified in any manner, except by a writing signed by both me and an authorized Morgan Stanley attorney.  I acknowledge that Morgan Stanley has made no representations or promises to me, other than those in or referred to by this Agreement and the Settlement Agreement.

D.     Successors and Assigns.    This release binds my heirs, administrators, representatives, executors, successors, and assigns.

E.     Interpretation.  This Agreement shall be construed as a whole according to its fair meaning.  Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other.  This Agreement shall be governed by the statutes and common law of the District of Columbia (excluding any that mandate the use of another jurisdiction's laws).

F.     Knowing and Voluntary Waiver and Release of Claims.  I understand and agree that:

a.     I am entering into this Agreement knowingly and voluntarily;

b.     I understand the terms of this Agreement;

c.     I have been advised of my right to consult with an attorney prior to signing this Agreement; and

d.     I have had a sufficient amount of time to consider this Agreement before signing it.

**AGREED:**

_____
[SIGNATURE]

_____
[PRINT NAME]

DATE    _____

2019385

Form **W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

Print or type
See Specific Instructions on page 2.

Name (as shown on your income tax return)

Business name, if different from above

Check appropriate box:
☐ Individual/ Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ ................. ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

---

**Part I** | **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

---

**Part II** | **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here** | Signature of U.S. person ▶ | Date ▶

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 11-2005)

● The U.S. grantor or other owner of a grantor trust and not the trust, and

● The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

***Example.*** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments (after December 31, 2002). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules regarding partnerships* on page 1.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line. Check the appropriate box for your filing status (sole proprietor, corporation, etc.), then check the box for "Other" and enter "LLC" in the space provided.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

## Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.socialsecurity.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer ID Numbers under Related Topics. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see *Exempt From Backup Withholding* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one). If you are a sole proprietor, IRS encourages you to use your SSN.

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules regarding partnerships* on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.