UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke, | ) ) ) ) | Case No. 1:06-cv-01142 (RWR) |
| On behalf of themselves and all others similarly situated, | ) ) ) ) | CLASS ACTION |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc., | ) ) ) ) | |
| Defendant. | ) ) | |

**[PROPOSED] FINAL ORDER APPROVING CLASS REPRESENTATIVES, CERTIFYING CLASS, APPOINTING CLASS COUNSEL, APPROVING SETTLEMENT AGREEMENT, AWARDING FEES AND COSTS AND DISMISSING ACTION SUBJECT TO THE COURT'S CONTINUING JURISDICTION.**

On July 17, 2007, the Court entered an Order preliminarily approving a settlement in this case, directed notice to be sent to the class, established a schedule for class members to object to the settlement or to opt out of the case, and set a date for a hearing on October 11, 2007 to consider whether to enter a final order approving the settlement. Having considered the filings of the parties and Class Members who chose to comment on or object to the proposed settlement, and having conducted a fairness hearing at which persons who submitted comments and/or objections were invited to voice their opinions about the settlement; the Court makes the following findings of fact and conclusions of law and enters final judgment herein.

75928

## FINDINGS OF FACT

I.     **BACKGROUND**

1.     Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc., ("Morgan Stanley"), is a Delaware corporation with its principal place of business in Purchase, New York.    After the Complaint was filed in June 2006, Morgan Stanley DW Inc. merged into Morgan Stanley & Co. Incorporated.  The Named Plaintiffs and Class Members all work or worked as Financial Advisors or Registered Financial Advisor Trainees in what is now referred to as Morgan Stanley's Global Wealth Management Group ("MS-GWMG").

2.     The Named Plaintiffs are eight women.  Seven of them are current or former Financial Advisors employed by MS-GWMG.    One Named Plaintiff (Elizabeth Reinke) was employed by MS-GWMG as a Registered Financial Advisor Trainee.  All Named Plaintiffs are members of the proposed class.

3.     The Settlement Agreement that the parties negotiated provides for the creation of a settlement class, defined as follows:

> All women who were employed as Financial Advisors or Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor(s) at any time from August 5, 2003 through June 30, 2007.

4.     Joanne Augst-Johnson filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Morgan Stanley on August 2, 2005. Subsequently, the remaining seven Named Plaintiffs filed charges of discrimination, with Named Plaintiff Nancy Reeves filing the first EEOC charge including class allegations of sex discrimination.  Ms. Reeves' initially filed her charge on January 25, 2005, and amended it to include class allegations on May 24, 2005.

5.      In March 2005, before the EEOC had issued any right-to-sue letters and hence before any complaint had been filed, the parties agreed to attempt to negotiate a settlement of the dispute.  During these negotiations, the parties exchanged information similar to the discovery that would have occurred during formal class discovery, including detailed information on company policies and practices and company-wide computer data concerning account distributions and compensation for women compared to men during the potential liability period. Plaintiffs hired Dr. Janice Madden, a Professor at the University of Pennsylvania and a principal at the consulting firm, Econsult Corp., to analyze the data Defendant produced during these negotiations.  This information and data exchange permitted the parties to fully assess their respective litigation positions.  The negotiations spanned more than two years and included over 15 in-person meetings.  The mediations were attended by lawyers for Plaintiffs, including lawyers from Mehri & Skalet, PLLC, Sprenger & Lang, PLLC and Moody & Warner, PC ("Class Counsel"), as well as Morgan Stanley's internal counsel and outside counsel from the firm of Morgan, Lewis & Bockius, LLP.  In addition to meeting in person, the parties conducted numerous telephone conferences.   The mediations were facilitated by a respected mediator, Hunter H. Hughes, Esq. of Rogers & Hardin, LLP.

6.      During the course of the mediation, the parties reviewed and analyzed voluminous data and other information concerning Morgan Stanley's workforce and work practices relevant to the claims asserted and damages sought by Named Plaintiffs.

7.      In connection with the mediation sessions, Class Counsel and counsel for Morgan Stanley analyzed, with the assistance of Dr. Janice Madden, an expert statistician, extensive computer-readable employment data produced by Morgan Stanley.   This data included information concerning advancement, compensation, and account distributions.  Class Counsel

also assembled voluminous anecdotal information from Named Plaintiffs and Class Members, while counsel for Morgan Stanley obtained information from its client.

8.    On June 22, 2006, the Named Plaintiffs filed their Complaint.  The parties' mediation efforts culminated when the parties executed a Settlement Agreement on April 23, 2007.  On April 24, 2007, the parties filed an Amended Complaint and the Settlement Agreement, along with a Joint Motion for Preliminary Approval of Class Action Settlement Agreement, two proposed orders and numerous exhibits and supporting papers.

9.    This Court held a preliminary approval hearing on July 5, 2007.  During the hearing, this Court suggested certain revisions to the Settlement Agreement and to the form of Notice to Class Members.  Counsel for the parties made these changes and filed revised versions of the Settlement Agreement and Notice on July 11 and July 16, 2007.  On July 17, 2007, this Court preliminarily approved the proposed settlement, provisionally certified the proposed Class, appointed the Named Plaintiffs as Class Representatives, approved the Notice and Claim Form, and designated Class Counsel. (Preliminary Approval Order, July 17, 2007).

10.    The Settlement Agreement addresses every significant issue Named Plaintiffs raised in their Amended Complaint and contains significant monetary and injunctive relief.  The injunctive relief covers practices such as: the distribution of accounts and other business opportunities, including with respect to departing Financial Advisors, retiring Financial Advisors, departing Financial Advisor partners, and leads, call-ins, and walk-ins; Branch Management mobility and a management assessment and development program; and bi-annual diversity training to all management-level field personnel.  The Settlement Agreement also requires the appointment of a Diversity Monitor and two Industrial Psychologists to develop and

implement programs aimed at recruiting, training and retaining women Financial Advisors and Registered Financial Advisor Trainees.

11.    On July 17, 2007, the Court entered both of the orders proposed by the parties: (a) an Order Preliminarily Approving Settlement Agreement and Directing Notice to Class Members ("Preliminary Approval Order"), and (b) Administrative Order No. 1.  The Preliminary Approval Order provided for, among other things, notice of the proposed settlement to be given to members of the proposed Class.  In the Preliminary Approval Order, the Court also approved the form of the Notice to Class Members ("Notice"), finding it met the requirements of Fed. R. Civ. P. 23 and informed Class Members of the terms of the proposed Settlement and of the steps Class Members needed to take to file claims and to object to or exclude themselves from the proposed Settlement.

12.    A second order, Administrative Order No. 1, appointed Thomas ("Tommy") Warren as a Special Master and Settlement Services, Inc. ("SSI") as the Claims Administrator and Administrator of the Settlement Fund to be created under the terms of the Settlement Agreement.

13.    On July 27, 2007, Morgan Stanley transferred $46 million to the MS-GWMG Financial Advisor Sex Discrimination Settlement Fund.

14.    Notices were served pursuant to the Class Action Fairness Act ("CAFA") on May 8, 2007 (original notice) and again on July 25, 2007 (revised notices due to revisions made to the Settlement Agreement and Notice at the suggestion of this Court).

## II.    PROVISION OF NOTICE TO CLASS MEMBERS

15.    Pursuant to the Preliminary Approval Order, Morgan Stanley and Class Counsel provided SSI with data on each of the 2,867 members of the Class in order for SSI to complete the Notice process outlined by the Court in the Preliminary Approval Order.

16.    On July 27, 2007, SSI mailed the Notice and the Claim Form attached as Exhibit A to the Declaration of Mark Patton ("Claim Form") to all 2,867 members of the Class recorded in Morgan Stanley's computer-readable data by first class mail.  (The Notice and the Claim Form together are referred to as the "Notice Package.").  Three hundred and sixteen Notice Packages were returned as undeliverable; 41 of those had forwarding address on the returned envelope and were promptly remailed.  SSI searched for updated addresses for all 316 undeliverable Notice Packages, including the 41 that were forwarded, and obtained new addresses for all but 32 Class Members.  On September 14, 2007, SSI resent the Notice Package to all 316 Class Members whose original Notice Packages were undeliverable with a bright yellow insert instructing Class Members to contact Class Counsel if they anticipated any problems meeting the deadlines.  Class Counsel searched for updated addresses for the 32 Class Members for whom SSI's trace did not return a new address and found 13 additional new addresses, which were provided to SSI on September 17 and 18, 2007.  SSI promptly sent these 13 Class Members the Notice Package with the bright yellow insert by Federal Express overnight delivery.  There were only 21 Class Members, less than one percent of the Settlement Class, for whom SSI or Class Counsel could not find what appear to be accurate addresses.

17.    Class    Counsel    also    created    and    maintained    a    website, www.morganstanleygendercase.com, which contained detailed information related to the proposed Settlement.    On this website, a Class Member could view and/or download the

settlement documents and all documents included in the Notice Package. Class Counsel also posted information related to the Settlement and/or links to the www.morganstanleygendercase.com website on their individual firm websites, www.findjustice.com (Mehri & Skalet, PLLC); www.sprengerlang.com (Sprenger & Lang, PLLC); and www.nmlaborlaw.com (Moody & Warner, P.C.).

18.     These actions by Class Counsel and the Claims Administrator to inform members of the Class of the Settlement conform with the obligations of Class Counsel and the Administrator under the Preliminary Approval Order and are sufficient to inform Class Members of the proposed settlement to the extent reasonably practicable.

19.     The actions of Class Counsel and the Claims Administrator in completing the Notice requirements of the Preliminary Approval Order provided sufficient notice for Class Members such that Class Members' due process rights were adequately protected.

## III.    THE SETTLEMENT CLASS

20.     The Class has 2,867 members. There are too many Class Members and they are too widely scattered around the country for joinder to be practicable. The Settlement Class meets the numerosity requirement of Rule 23(a).

21.     The claims of the members of the Settlement Class raise numerous common factual and legal issues, some of which are identified in paragraph 22 of the Amended Complaint. The Settlement Class meets the commonality requirement of Rule 23(a).

22.     The claims of the eight Named Plaintiffs are typical of the claims of other members of the Class, in that they arise from the same practices that give rise to the claims of the other members of the Class. The Settlement Class meets Rule 23(a)'s typicality requirement.

23.     The Named Plaintiffs are adequate representatives of the Class of which they are members under Rule 23(a)(4).  They have engaged experienced and adequate Class Counsel. They do not have any interests antagonistic to those of the Class Members they represent.

24.     The Settlement Class also satisfies the provisions of Fed. R. Civ. P. 23(b). Named Plaintiffs allege that Morgan Stanley has acted on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.  Named Plaintiffs also allege that Morgan Stanley adopted personnel policies and practices with respect to account distributions, compensation, promotions into branch management, mentoring, training, investigation of complaints, diversity training and terminations that have been generally applicable to Financial Advisors and Registered Financial Advisor Trainees.  During its term, the Settlement Agreement will alter each of these policies and practices.  The scope of the negotiated injunctive relief indicates that this relief predominates in importance over monetary relief for the members of the Settlement Class.

25.     Common issues concerning the nature of Morgan Stanley's personnel policies and practices and their impact on female employees predominate over solely individual issues affecting the claims of Class members, including liability issues.  However, each Class Member's damages could be influenced by purely individual facts.  For example, compensation among class members has varied substantially, and some class members have sought promotions to managerial positions while others have not.

26.     The Settlement Class is also certified under Rule 23(b)(3).  The Court has afforded Class Members the opportunity to opt-out of the monetary portion of the Settlement without releasing any of their claims.  In fact, 29 Class Members have expressed a desire to opt-out of the Settlement.  Class Members' rights to exercise control over the damages aspects of

their claims have thus been protected and the Settlement Class is certified as a hybrid (b)(2) and (b)(3) class.

27.    As of October 1, 2007, 907, or over 31.64 percent of the Settlement Class, had already submitted Claim Forms.  Only 29 of the 2,867 Class members, or one percent, have requested exclusion from the Settlement.   Only two objections from Class Members have been received, and one other person, a non-class member, has submitted a purported objection.  This indicates support for the Settlement by members of the Settlement Class.

28.    Rule 23(g) also requires the Court to appoint class counsel that are able to fairly and adequately represent the interests of the Settlement Class. Fed. R. Civ. P. 23(g)(1).  Lead Class Counsel are competent and experienced employment class-action litigators who have achieved several significant employment discrimination settlements and have vigorously represented the interests of the Class Members in this matter.  Class Counsel are competent to represent the members of the Class and have fairly and adequately represented the interests of the Class.

## IV.    EVALUATION OF THE SETTLEMENT

### A.    <u>The Relief Provided by Morgan Stanley to the Class</u>

#### 1.    *<u>The Settlement is the Result of Arms' Length Negotiations</u>*

29.    This Settlement was reached after over two years of complex, arms-length negotiations.  Mediator Hunter H. Hughes, Esq., of Rogers & Hardin, LLP, facilitated the second year of negotiations.   Numerous lawyers attended and conducted these negotiations.   The mediation sessions included over 15 in-person meetings and numerous telephone conferences.

#### 2.    *<u>The Terms of the Settlement in Relation to the Strength of Plaintiffs' Case and the Risks of Litigation Support Approval of the Settlement.</u>*

30.    The injunctive relief provided by the Settlement is comprehensive.    The provisions address every significant issue raised by the Named Plaintiffs in the Amended Complaint and contain significant injunctive relief relating to: the distribution of accounts and other business opportunities, including with respect to departing Financial Advisors, retiring Financial Advisors, departing Financial Advisor partners, and leads, call-ins, and walk-ins; Branch Management mobility and a management assessment and development program; and bi-annual diversity training to all management-level field personnel.    The Settlement Agreement also requires the appointment of a Diversity Monitor and two Industrial Psychologists to develop and implement programs aimed at recruiting, training and retaining women Financial Advisors and Registered Financial Advisor Trainees.    Systemic changes like these most likely could have been obtained only through negotiations.    The provisions go beyond the relief that typically is awarded by courts after trials in employment discrimination class cases.

31.    The $46,000,000 monetary fund created pursuant to the Settlement will adequately compensate members of the Settlement Class for claimed losses.    It is one of the largest funds ever created in a gender discrimination case.

32.    The relief obtained for members of the Class warrants approval of the Settlement when measured against the likely outcome if this case were litigated.

33.    The Named Plaintiffs and Class Members faced substantial risk factors in this case in addition to the risks, expenses and delay normally associated with employment discrimination class actions.    First, the substantive law regarding the time period for which Named Plaintiffs and the Class can recover for disparities in compensation is in dispute, and both sides have strong legal arguments in their favor.    Second, the Settlement Class encompasses 2,867 Financial Advisors and Registered Financial Advisor Trainees who have worked

throughout the country at numerous locations under numerous managers, making class certification problematic. Both sides faced significant risks in trying to prove or contest a pattern of discrimination and the existence of centralized control over the relevant personnel practices necessary to certify a nationwide class and successfully establish class liability. Third, the Named Plaintiffs intended to seek recovery of compensatory and punitive damages on behalf of all Class Members should litigation commence, again making certification problematic. Finally, an analysis done by Professor Stewart J. Schwab, Dean of Cornell Law School, of employment discrimination cases filed in the federal courts reveals that plaintiffs in employment discrimination cases face higher risks in litigation than plaintiffs in any other case category except prisoner cases. The Court has taken these risk factors into consideration in evaluating whether the Settlement is fair, adequate and reasonable in the quantum of relief it provides to Class Members.

34.     Regardless of the outcome, litigation would have been protracted and expensive, especially if the litigation proceeded through a full-scale liability trial and a large number of individual damages hearings.

### 3.     *The Stage of the Litigation Proceedings at the Time of Settlement*

35.     During the course of the mediation, Class Counsel obtained the information necessary to assess the Settlement by three means. First, they had contact with hundreds of witnesses, conducted over 200 extensive interviews, in addition to regularly conferring with the Named Plaintiffs. Second, prior to and during the negotiation process, they obtained information about Morgan Stanley's policies and Morgan Stanley's computerized personnel information from the defendant, the same type of information that would have been obtained if the parties had proceeded through litigation. Third, they engaged a recognized statistical expert, Dr. Janice

Madden, a professor at the University of Pennsylvania and a principal of the consulting firm, Econsult Corp., who analyzed Morgan Stanley's data, prepared analyses, and provided the results of those analyses to Class Counsel.

36.    Because of these efforts, although the case was in the early stage of the litigation, counsel had adequate information to assess the settlement.

### 4.    _Reaction of the Class to the Settlement_

37.    The Preliminary Approval Order required all opt-outs to be received by September 10, 2007.  As of October 1, 2007, Class Counsel has received 29 requests to opt-out of the Settlement – only one percent of the total Class Members.  Nineteen of these were received on or before September 10, 2007 and ten were received after September 10, 2007.

38.    The Court's Preliminary Approval Order required that all objections to the Settlement from Class Members be received by September 10, 2007.  As of October 1, 2007, Class Counsel had received two objections to the Settlement and a third purported objection from a person who is not a Class Member.  Even assuming that all three are actual objections, none of them provides sufficient reason to question the fairness, adequacy or reasonableness of the Settlement.

### a.    _The Objection of Mary Harris Evans_.

39.    The objection of Mary Harris Evans is not a proper objection for two reasons. First, Ms. Evans has been an Assistant Branch Manager throughout the liability period covered by the Settlement.   As Ms. Evans is not a Class Member, she has no standing to object to this Settlement.  _Mayfield v. Barr_, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

40.    Second, Ms. Evans also states that if she were considered a Class Member, she wished to opt out of the Settlement.  Class Members who opt out are not entitled to object to the

12

Settlement.   Ms. Evans offers nothing to demonstrate any prejudice to her by being excluded from the Settlement Class.  Since Ms. Evans is not a Class Member, she has not released any of her claims and remains free to bring her own gender discrimination case, if she so desires.

> b.    The Objection of Jennifer Cropper.

41.    The objection of Jennifer Cropper does not challenge the fairness, adequacy, or reasonableness of the proposed Settlement.  Nothing requires Ms. Cropper to file a claim.  She has identified nothing in her objection indicating that the Settlement is unfair to the Class, inadequate, or unreasonable.

> c.    The Objection of Janice Grant.

42.    The grounds for Janice Grant's objection fall into four general categories of complaints: (a) that the monetary relief is inadequate; (b) that the Class definition is "unfairly restrictive;" (c) that the notice and claims process was inadequate; and (d) that the injunctive relief is inadequate.  Ms. Grant's objection is invalid because it does not follow the instructions for submitting objections to this Court.   Ms. Grant failed to include a complete detailed description of the basis for her objection.  Ms. Grant submitted a page solely to the court and did not provide this same information to Lead Class Counsel or Counsel for Morgan Stanley.  Class Counsel had no opportunity to respond to the statements Grant made in this ex parte communication to the Court.  Inclusion of such ex parte communications invalidates Ms. Grant's entire objection.

43.    Even if Ms. Grant's objection were valid, it lacks merit.  First, the monetary relief included in the settlement is not inadequate; second, the Class definition is not "unfairly restrictive;" third, the notice and claims process was not inadequate; and finally, the injunctive

relief included within the settlement is adequate.   An explanation for why each of these objections is overruled follows.

*i.   The Monetary Relief Is Not Inadequate*

44.     Ms. Grant's objection to the monetary sufficiency of the settlement is based on the assertion that some other class action employment cases have settled for more money.  The cases cited by Grant involved different facts, different claims, and different class members.  The assertions as to the awards in other cases are apocryphal and are disputed. Overall, this is one of the largest gender settlements in history and the Court will not reject a settlement simply because an individual class member complains that she should have received more money.  *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *In re Lorazepam*, 205 F.R.D. 369, 379 (D.D.C. 2002).   The monetary fund established by the Settlement is fair, adequate and reasonable, especially when juxtaposed with the risks and uncertainty of continued litigation.

*ii.   The Class Definition Is Not "Unfairly Restrictive."*

45.     Branch Managers and Assistant Branch Managers are properly excluded from the Settlement Class.  There is no Named Plaintiff or Class Representative for these managerial employees and the claims of these employees are not being released by this Settlement. Including managerial employees within the same class as the employees they managed would likely present a conflict between Class Members that could make class certification improper, even in a settlement context.  The class definition is not "unduly restrictive."

*iii.  The Notice and Claims Process Was Not Inadequate*

46.     Ms. Grant's objection that the Notice period did not provide sufficient time for Class Members to determine whether to object, opt-out, or file a claim lacks merit.  The Notice Packages were initially mailed to Class Members on July 27, 2007.   Class Members whose

Notice Packages were returned as undeliverable received another mailing. Class Members had 45 days to determine whether to object or opt-out and an additional 14 days to complete and submit their Claim Forms, for a total of 59 days to submit a Claim Form. The Notice Package was also available though the Settlement website and the websites of Class Counsel. The Court finds that the Notice program was more than adequate to inform Class Members of the Settlement and their rights in relation to it.

*iv. The Injunctive Relief Provided For In The Settlement Is Adequate.*

47.    None of Ms. Grant's criticisms of the programmatic relief in this Settlement provide sufficient reason to reject the Settlement. The programmatic relief provided for in the Settlement is more than adequate. The changes will not only benefit women Financial Advisors and Financial Advisor Trainees, but all Financial Advisors at Morgan Stanley. Among other things, the account distribution system will be modified to reduce reliance on historical performance (which Named Plaintiffs allege favors male brokers) and to ensure that business opportunities are distributed on the basis of merit and current performance. The National Counsel of Women's Organizations, a nonpartisan, nonprofit coalition of 220 member organizations that address issues of concern to women has expressed wholehearted support for the Settlement and the programmatic relief contained in it. Finally, contrary to Ms. Grant's allegation, Morgan Stanley has certified that it examined the revised factors to be used for account distributions and found no adverse impact on women or African-Americans.

48.    The small number of objections, the relatively small number of opt outs, and the substantial number of claimants show strong support for the Settlement from Class Members.

*5.    The Opinion of Experienced Counsel*

49.     Class Counsel have extensive experience in prosecuting employment discrimination class actions.  Class Counsel and the Class Representatives believe that this settlement is fair, reasonable and adequate.

B.     **Allocation of the Benefits of the Settlement**

50.     Both the injunctive and monetary benefits of the settlement will be shared by the Named Plaintiffs and Class Members.  All Class Members, not just the Named Plaintiffs, are entitled to consideration of their contributions to the prosecution of this litigation.   The Named Plaintiffs are entitled to additional consideration if they decide to release their individual non-class claims, but the total amount of the Settlement Fund was negotiated with the intent of covering those claims and the amount of the fund agreed upon is sufficiently large to do so.

51.     The changes in policies and practices mandated by the injunctive provisions of the Settlement Agreement will be equally available to Named Plaintiffs who are current employees and all members of the Settlement Class.  The Settlement Agreement does not contain any injunctive provisions, such as job relief, specifically benefiting any Named Plaintiffs or particular class member or members.  Many of the injunctive provisions are designed to make Morgan Stanley's human resources policies and practices fairer for all Financial Advisors, Registered Financial Advisor Trainees as well as potential Financial Advisors and Registered Financial Advisor Trainees, not just for women.

52.     The Settlement Agreement provides that the Claims Portion of the Fund will be allocated to members of the Class who timely file Claim Forms.  The payments will be based on an Earnings Regression formula to be developed by the Special Master and information provided on a Claim Form and by Class Counsel.  After reviewing the Claim Form submissions, the Special Master will recommend and submit an allocation plan to the Court for before any

disbursements are made. The allocation process is fair and reasonable even though the precise details of the formula are not spelled out in the Settlement itself.

**C.    The Requested Award of Attorneys' Fees and Expenses**

53.    Class Counsel request an initial allocation of 26% ($11,960,000 plus accrued interest) of the Settlement Fund to cover fees and costs incurred through final approval of the Settlement, plus additional annual payments of $300,000 plus accrued interest over the next five years to compensate them for projected future fees and expenses to monitor and enforce the Settlement.

54.    Class Counsel's requested award also includes reimbursement for actual and estimated expenses of approximately $195,846.

## CONCLUSIONS OF LAW

**I.    JURISDICTION AND VENUE**

1.    This Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1331.

2.    The propriety of venue in this Court is not disputed.

**II.    NOTICE TO CLASS MEMBERS**

3.    Under Fed. R. Civ. P. 23(e), the Court is required to give class members notice and an opportunity to comment on, or object to, a proposed settlement of a class action. The form and method of notice must be adequate to inform the class members of the terms of the settlement.

4.    Due process requires that absent class members have the right to be heard and an opportunity to remove herself from the class, if she so desires. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999).

5.     The form and method of notice were adequate in this case to inform the members of the Settlement Class of the terms of the Settlement.  Class Counsel's efforts at providing actual notice to virtually all Class Members satisfied the due process requirement.

## III.    CLASS ACTION FAIRNESS ACT REQUIREMENTS

6.     The Class Action Fairness Act ("CAFA") provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are served with the notice" of the proposed settlement.  28 U.S.C. § 1715(d).  The parties provided notice to the United States Attorney General and the Attorneys General of all 50 states and the District of Columbia on May 8, 2007 (original notice) and again on July 25, 2007 (revised notice due to revisions made to Settlement Agreement at the request of this Court).  No Attorney General has objected to the Settlement.   Accordingly, CAFA's notice requirements were satisfied as of October 24, 2007 (90 days after the second notice).

## IV.    THE SETTLEMENT CLASS

7.     A class that the parties seek to have certified in the context of a settlement must satisfy all of the requirements of Fed. R. Civ. P. 23, except that, if certification is sought pursuant to Rule 23(b)(3), the manageability of the proposed class action at trial is not in issue.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

8.     A class may be certified only if it satisfies the four requirements of Rule 23(a) and at least one of the three alternatives of Rule 23(b).  Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

9.     The Settlement Class satisfies the requirement of Rule 23(a)(1) because there are too many members who are too widely scattered around the country for joinder to be practicable. *See Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1456 n.10 (D.C. Cir. 1988); 5 Moore's Federal Practice § 23.22[3][a] (Matthew Bender 3d ed. 1998).

10.     The Settlement Class satisfies the requirements of Rule 23(a)(2), because the claims of the members of the Class raise numerous common issues of fact and law, even though the extent of individual Class Members' injuries varied.  *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25-26 (D.D.C. 2006); *Bynum v. District of Columbia*, 214 F.R.D. 27, 33-34 (D.D.C. 2003) (finding commonality where class members were affected by the same policy or practice, even if the extent of individual class members' injuries varied).

11.     The Settlement Class satisfies the requirements of Rule 23(a)(3).  The claims of the eight Named Plaintiffs arise out of the same policies and practices and are typical of those of the other members of the Settlement Class.  *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998); *Chang v. United States*, 217 F.R.D. 262, 272 (D.D.C. 2003) ("typicality focuses on the similarity of the legal and remedial theories behind the claims of the named representatives and those of the putative class"); *Thomas v. Christopher*, 169 F.R.D. 224 at 238 (holding that typicality requirement is satisfied when commonality requirement is satisfied and the plaintiffs have experienced the same types of adverse actions complained of for the class).

12.     The Settlement Class satisfies the requirements of Rule 23(a)(4), because there are no interests in conflict between or among the Named Plaintiffs and/or the unnamed members of the Class, and the Named Plaintiffs have vigorously pursued the claims of the Class through qualified counsel.  *Barnes v. District of Columbia*, 242 F.R.D. 113, 122 (D.D.C. 2007).

Accordingly, the Court appoints Named Plaintiffs Augst-Johnson, Reeves, Shaw, Tyler, Giustiniano, Blackburn, Tarantino and Reinke as Class Representatives.

13.    The Settlement Class is certified under both Rule 23(b)(2) and (b)(3). *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (permitting district court to "adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage"); *see also Barnes v. District of Columbia*, 242 F.R.D. 113, 124 (D.D.C. 2007) (certifying a hybrid (b)(2) and (b)(3) class); *Bynum v. District of Columbia*, 217 F.R.D. 43, (D.D.C. 2003) (certifying two hybrid (b)(2) and (b)(3) classes).

14.    The Settlement Class meets the requirements for certification under Rule 23(b)(2) insofar as it seeks injunctive relief.  Morgan Stanley's account distribution policies and other employment practices affecting compensation, as well as its policies and practices for selecting sales management, applied to all members of the Settlement Class.  The programmatic relief agreed to in the Settlement Agreement will benefit all members of the Settlement Class who currently work for Morgan Stanley as well as female Financial Advisors and Registered Financial Advisor Trainees who will work there in the future, and makes final injunctive relief appropriate for the Class as a whole.

15.    The Settlement Class meets the requirements for certification under Rule 23(b)(3) insofar as it seeks monetary relief.  Common issues concerning the nature of Morgan Stanley's personnel policies and practices and their impact on female employees predominate over solely individual claims of Class Members, including liability issues.  Class Members' right to exercise

control over the damages aspects of their claims have thus been protected and final certification of this Settlement Class as a hybrid (b)(2) and (b)(3) class is appropriate.

16. Pursuant to Fed. R. Civ. P. 23(g)(1), the Court finds that Class Counsel are competent to represent the members of the Class and have fairly and adequately represented the interests of the Class. The Court appoints Cyrus Mehri, Steven A. Skalet, Lisa M. Bornstein and Anna M. Pohl of Mehri & Skalet, PLLC; Steven M. Sprenger and Mara R. Thompson of Sprenger + Lang, PLLC; and Christopher Moody and Whitney Warner of Moody & Warner, P.C. as Class Counsel. The Court further designates Cyrus Mehri and Steven M. Sprenger to serve as Lead Class Counsel.

## V.    EVALUATION OF THE SETTLEMENT

17. Class actions may be approved only if they are fair, reasonable and adequate, based on three criteria: is the quantum of relief provided by Morgan Stanley to the class fair, reasonable, and adequate; is the plan for distribution of that relief among plaintiffs and class members fair; and is the compensation to Class Counsel fair and reasonable. *In re Lorazepam & Clorazepate Antitrust Litig.* ("*Lorazepam*"), 205 F.R.D. 369 (D.D.C. 2002).

### A.    <u>The Relief to be Provided by Morgan Stanley to the Class</u>

18. The Court is guided by the following factors in determining whether the relief to be provided by Morgan Stanley to the class is fair, reasonable and adequate:

> (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel.

*Lorazepam*, 205 F.R.D. at 375 (citations omitted). As set forth below, under these factors the Court concludes that the quantum of relief to the class is fair, reasonable, and adequate.

### 1.    <u>The Nature of the Negotiations</u>

19.    The settlement was a product of arms length negotiations between experienced attorneys.  Accordingly, a "presumption of fairness, adequacy and reasonableness attaches to [the] class settlement."  *Lorazepam*, 205 F.R.D. at 376; *see also Blackman v. Dist. Of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006).

        2.    <u>The Amount of the Settlement Compared to the Strength of Plaintiffs' Case</u>

20.    In assessing the terms of a settlement, "by far the most important factor is a comparison of the terms of the compromise or settlement with the likely recovery the plaintiffs would realize if the case went to trial."  *Blackman*, 454 F. Supp. 2d at 8; *see also Pigford v. Glickman,* 185 F.R.D. 82, 91 (D.D.C. 1999).

21.    This Settlement provides substantial monetary and injunctive benefits to the Settlement Class which justify the Settlement in view of substantial risks that a class would not have been certified, that even if certified it would have been much smaller than the Class defined in the Settlement, and that even if certified the Class would not have prevailed on liability and/or damages would have been substantially less than sought.

        3.    <u>The Stage of the Litigation Proceedings at the Time of Settlement</u>

22.    Although "[e]arly settlement of [class action] cases is encouraged," when a case is settled early, a court must consider "whether counsel had sufficient information . . . to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *Lorazepam*, 205 F.R.D. at 377.

23.    Based on Class Counsel's research, investigation, and the exchange of information with Morgan Stanley, Class Counsel had adequate information to reasonably assess the benefits and risks of litigation at the time of settlement.

        4.    <u>Reaction of the Class to the Settlement</u>

22

24.     The few objections, the small number of opt outs, and the substantial number of claims already filed reflect strong approval for the proposed settlement, which strongly supports approval.  *See Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006); *Lorazepam*, 205 F.R.D. at 378.

25.     The objection of Mary Harris Evans is overruled because she is not a Class Member and has no standing to object to this Settlement.  *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

26.     The objection of Jennifer Cropper is overruled because she does not challenge the fairness, adequacy, or reasonableness of the Settlement.

27.     The objection of Janice Grant is overruled because the inclusion of ex parte communication with the Court and her complete detailed description of the basis for her objection to Lead Class Counsel or counsel for Morgan Stanley invalidates her objection.  Even if her objection were valid, it is overruled because the monetary relief included in the Settlement is fair, reasonable and adequate; the class definition is not "unfairly restrictive;" the notice and claims process was not inadequate; and the injunctive relief included in the Settlement is fair, reasonable and adequate.

### 5.     The Opinion of Experienced Counsel

28.     Because they are experienced litigators in this field, the Court gives substantial weight to Lead Class Counsel's view that the settlement is fair, reasonable and adequate. *Blackmun*, 454 F. Supp. 2d at 8; *Lorazepam*, 205 F.R.D. at 380; *see also United States v. District of Columbia*, 933 F. Supp. 2d 42, 46-47 (D.D.C. 1996).

### 6.     Conclusion

29.     For all of the above reasons, the Court concludes that the relief to the class provided by the settlement is fair, reasonable and adequate.

**B.**     **Allocation of the Benefits of the Settlement**

30.     The monetary relief to the members of the Settlement Class will be distributed pursuant to an allocation plan to be proposed by the Special Master and approved by the Court. An allocation plan such as the one at issue here that is subject to close court scrutiny at every stage is fair and reasonable even though the precise details of the formula are not spelled out in the Settlement Agreement itself.  *In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 170 (2d Cir. 1987) (where court assessed overall fairness of settlement prior to adoption of distribution scheme, distribution scheme need not be finalized prior to final approval of class settlement); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 224 (5th Cir. 1981) (sustaining district court's approval of settlement notice even though amounts each class member could expect to receive are not yet determined); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 76 (D.D.C. 2006) (proposed method of allocating a sum certain for distribution to all class members who filed claims held to be fair, even though class members would not know exact size of award until after all claims had been processed).

31.     The Court will review the Special Master's Report and Recommendation to ensure the Settlement fairly and reasonably allocates the relief obtained from Morgan Stanley among and between Named Plaintiffs and Class Members.

**C.**     **The Requested Award of Attorneys' Fees and Expenses**

32.     For purposes of evaluating the fee and expense provisions, this is a "common fund case.  Proposed fee awards in common fund cases should be evaluated on the "percentage-of-the-fund method."  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1263, 1271 (D.C. Cir.

1993); *In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344 at *24-25 (D.D.C. June 16, 2003); *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, at *10 (D.D.C. 1998) (*"Newbridge Networks"*); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) (*"Ampicillin"*).

### 1.     Fees Allocable to Work Already Performed

33.     Class Counsel requests 26% ($11,960,000 plus accrued interest) of the common fund to compensate them for fees and expenses incurred through final approval, and an additional 3.2% ($1,500,000 plus accrued interest) to compensate them for projected future fees and expenses to monitor and enforce the Settlement over the next five years.

34.     Fee awards in this District have ranged from 20% to 45% of the fund, and tend to center around 30%. *See Swedish Hospital*, 1 F.3d at 1272 (20%); *McReynolds v. Sodexho Marriott Servs., Inc.,* Case No. 1:01-CV-00510 (ESH) (D.D.C. July 26, 2006) (30.1% for fees and expenses); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (33.3% of class fund plus costs); *McLaurin v. National Railroad Passenger Corp*, 311 F. Supp. 2d 61 (D.D.C. 2004) (37.5% for past and future fees and expenses); *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 22 (D.D.C 2003) (28% of gross settlement fund); *Kosen v. American Express Financial Advisers, Inc.*, Civ. No. 1:02CV00082 (HHK), slip op. at 12 (D.D.C. June 16, 2002) (35% for fees and expenses); *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *36 (34% plus expenses); *Newbridge Networks*, 1998 U.S. Dist. LEXIS 23238, at *11 (30% plus expenses); *Thornton v. National Railroad Passenger Corp.*, 16 F. Supp. 2d 5 (D.D.C. 1998) (37.5% for past and future fees and expenses); *Ampicillin*, 526 F. Supp. 494, 499 (D.D.C. 1981) (granting award of 45%, including expenses).

*35.*    Several courts in this district have cited seven factors in evaluating a fee request. *See e.g. In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d at 17; *In re Lorazapam*, 2003 U.S. Dist. LEXIS 12344 at *27; *Kosen*, No. 1:02-CV-00082, at 26-28.

> *a.   The size of the fund created and the number of persons benefited*

36.    Higher percentages of recoveries should generally be awarded to attorneys who achieve a settlement, such as this one that produce "exceptional benefits." *See Kosen*, No. 1:02-CV-00082, at 26; *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *62.

37.    In judging the benefits provided by this Settlement, the Court considers not only the monetary relief, but also the comprehensive injunctive relief contained in the Settlement.

> *b.    The presence or absence of substantial objection by members of the class to the settlement and/or the requested fees*

38.    The Court gives substantial weight to the fact that only two Class Members have objected to the Settlement and neither objected to the requested attorneys' fees.

> *c.    The skill and efficiency of the attorneys involved*

39.    The experience, skill and professionalism of Class Counsel and the performance and quality of opposing counsel all support awarding a fee in the range suggested by Class Counsel. *See Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *26 (approving 34% fee award based in part on "[t]he experience, skill and professionalism of counsel and the performance and quality of opposing counsel").

> *d.    The complexity and duration of the litigation*

40.    This lawsuit raised a host of complex factual and legal issues.

41.    Counsel should not be penalized for achieving such an outstanding settlement in approximately two and a half years instead of the typically longer period between the start of an investigation and the conclusion of a class action lawsuit. *See Vitamins*, 2001 U.S. Dist. LEXIS

25067, at *34 (proponents find the percentage of recovery method attractive "because it directly aligns the interests of the Class and its counsel for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system."); *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 198 (3d Cir. 2000) (recognizing purpose of percentage of recovery method is to encourage early settlement); *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding 33% in common fund securities case settled early in litigation); *In re Safety Components Int'l Inc.*, 166 F. Supp. 2d 72 (D.N.J. 2001) (awarding 33% of settlement fund when case settled early in litigation). *Cf. Hartman v. Duffey*, 973 F. Supp. 199, 200 (D.D.C. 1997) (case took over 20 years to resolve).

### e.   The risk of nonpayment

42.   This riskiness of a case must be assessed as of the commencement of representation, not sometime later when developments in the litigation made nonpayment more or less risky. *See Lorazepam,* 2003 U.S. Dist. LEXIS 12344, at *29.

43.   At the commencement of representation, this case posed a substantial risk of nonpayment to Class Counsel. This risk supports an award in the range requested by Class Counsel. *See Newbridge Network Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, at *11 ("[U]nlike in *Swedish Hospital Corp.*, where an award of twenty percent was made because prior resolution of the underlying legal issue eliminated the risk of zero recovery,…here counsel did not 'piggyback' on the success of other plaintiffs and clearly faced the prospect of zero recovery.")

### f.   The amount of time devoted to the case by Class Counsel

44.   The number of hours and type of work performed by Class Counsel fully supports the requested fee award. *See Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *26.

### g.   The awards in similar cases

45.    Class Counsel request an initial allocation of 26% of the Settlement Fund to cover fees and costs incurred through final approval of the Settlement, plus additional annual payments for monitoring and administering the Settlement.   This request is well within the range of attorney fee awards in this district, and lower than the typical percentage of the fund award in employment discrimination class action cases.  *Kosen,* No. 1:02-CV-00082, at 12 (35% for fees and expenses); *Thornton*, 16 F. Supp. 2d 5 (37.5% for past and future fees and expenses); *McLaurin*, 311 F. Supp. 2d 61 (37.5% for past and future fees and expense).

> h.    Conclusion

46.    For all these reasons, the proposed fee and expense award is fair and reasonable and shall be approved.

## ORDER AND JUDGMENT

1.    The Settlement Agreement is approved and shall become effective according to its terms when either the time for appeal has run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for *certiorari* or appellate review) has been finally resolved.

2.    The following Settlement Class is established pursuant to Fed. R. Civ. P. 23(b)(2) for the purposes of participating in the injunctive relief negotiated in the Settlement Agreement. For purposes of claiming entitlement to monetary relief, the following Settlement Class is established pursuant to Fed. R. Civ. P. 23(b)(3):

> All women who were employed as Financial Advisors or Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor(s), at any time from August 5, 2003 through June 30, 2007.

3.      Named Plaintiffs Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino or Elizabeth Reinke are appointed Class Representatives.  Cyrus Mehri, Steven A. Skalet, Lisa M. Bornstein and Anna M. Pohl of Mehri & Skalet, PLLC; Steven M. Sprenger and Mara R. Thompson of Sprenger & Lang, PLLC; and Christopher Moody and Whitney Warner of Moody & Warner, PC are appointed Class Counsel. Cyrus Mehri and Steven M. Sprenger are appointed Lead Class Counsel.

4.      The Class Members identified on Exhibit A hereto have submitted a timely opt-out request and have excluded themselves from the monetary relief provisions in the Settlement Agreement.  They shall not be eligible for any awards from the Settlement Fund.  Class Members who have submitted an untimely opt-out request and are willing to sign an notarized affidavit or a declaration pursuant to 28 U.S.C. § 1746 swearing that they did not receive the Notice Package prior to the opt-out deadline may exclude themselves from the monetary relief provisions in the Settlement Agreement.  Class Members who submitted an untimely opt-out request and are unable or unwilling to sign such an affidavit or declaration are not excluded from the Settlement.

5.      The sum of $13,460,000 plus all income earned thereon since July 27, 2007 shall be awarded to Class Counsel for attorneys' fees and costs.  The Settlement Fund shall be allocated pursuant to Administrative Order No. 2, which this Court enters consistent with this ruling.

6.      The Amended Complaint shall automatically, ten business days after the effective date, be dismissed with prejudice, except that the Court shall retain continuing jurisdiction limited to enforcing the Settlement Agreement.

7.      LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:

Dated:  October 25, 2007

_____
The Honorable Richard Roberts
Judge, United States District Court
for the District of Columbia

**EXHIBIT A**

Vickie Bartholomew
Karen Crovicz
Nirvana Fahmy
Bonnie M. Gibbs
Alice I. Hughes
Louis E. Ladd
Jessica Kartzinel
Karen Perri
Angela Russell
Barbara Zech
Karen Prebonick
Daisy Theodora Madencis-Jaffe
Deborah Jean Dodson
Linda C. Mills
Jane B. McMillan
Kelsey Davis
Melinda Sander
Celie Althoff
Bonnie Stahlman