# Exhibit B

**FILED**

J .N    OCT - 3 2007
    10-3-07
    MICHAEL W. DOBBINS
    CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RONALD MOORE, MORRIS ALLEN, Jr.,    )
MICHAEL BARNETT, ANTHONY BELL,    )
PATRICK CARTER, MARTIN DIXON,    )
ERNEST DORSEY, MARY EVANS,    )
JANICE GRANT, JUSTIN HARRIS,    )
MARK LEWERS, MAURICE MABON,    )
BRIAN ROY, MARION TUCKER, on    )
behalf of themselves and all others similarly    )
situated,    )
    )
    Plaintiffs,    )
    )
v.    )
    )
MORGAN STANLEY & CO., INC.    )
    )
    Defendant.    )

07 C 5606
Judge CONLON
MAG. Judge Keys

Jury Trial Demanded

## COMPLAINT

Plaintiffs Ronald Moore, Morris Allen, Jr., Michael Barnett, Anthony Bell, Patrick

Carter, Martin Dixon, Ernest Dorsey, Mary Evans, Janice Grant, Justin Harris, Mark Lewers,

Maurice Mabon, Brian Roy, Marion Tucker (collectively "Plaintiffs"), on behalf of themselves

and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., hereby

file this Complaint of race discrimination against Defendant Morgan Stanley & Co., Inc.

("Morgan Stanley," "Defendant," or "the Firm"), and state as follows:

### OVERVIEW

1. Morgan Stanley is a leader in the retail brokerage industry, having "one of the largest

retail brokerage networks and domestic retail locations in the United States."[1] Morgan Stanley

employs over 8,000 registered brokers, called Financial Advisors ("FAs"), who provide

brokerage and wealth management services and serve as the face of Morgan Stanley to its individual and institutional clients. Opportunities for compensation and advancement available to Morgan Stanley FAs, however, vary widely depending on their race.

2. Morgan Stanley maintains a race-biased corporate culture and stereotypical views of African-American FAs and clients that create a hostile environment where occupational segregation and disparate treatment are condoned and perpetuated. Morgan Stanley's Firm-wide corporate culture and harmful racial stereotypes infect its policies and form the basis of personnel decisions that disadvantage African-Americans. African-Americans are dramatically underrepresented as FAs and in management and executive positions at Morgan Stanley and are paid substantially less than their counterparts who are not African-American. Defendant treats African-American FAs differently and less favorably than FAs who are not African-American and does not provide African-Americans with equal opportunities to earn income and advance to management. These disparities result from Morgan Stanley's systemic, intentional race discrimination and from policies and practices that serve no reasonable business purpose yet have a disparate impact on African-Americans.

3. Plaintiffs, and the class they seek to represent, charge that Morgan Stanley employs company-wide policies and practices that deny African-Americans the same resources, sales support and business and management opportunities as employees who are not African-American.

4. Morgan Stanley has long been aware of the dramatic underrepresentation, higher attrition, and lower compensation of its African-American employees. Indeed, over one year ago, Plaintiffs again placed Morgan Stanley on notice of its systemic discrimination against

---

[1] Source: http://www.morganstanley.com/about/careers/branchopp.html

African-Americans. Plaintiffs then engaged in months of good faith negotiations with the Firm

regarding the scope and nature of the discrimination facing African-Americans at Morgan

Stanley and ways that discrimination could be remedied.

5. Rather than negotiating in good faith with Plaintiffs to achieve genuine progress,

Morgan Stanley negotiated to transform a dormant putative gender discrimination class action

(*Jaffe v. Morgan Stanley)* into a race, color and national origin class action settlement and to

release the claims of all African-Americans, Latinos, and employees of color at Morgan Stanley.

In essence, Morgan Stanley sought to piggy-back global resolutions for race, color, and national

origin to its recent settlement of the gender discrimination class action *Augst-Johnson et al. v.

Morgan Stanley*, Case No. 06-1142 (D.C.D.C.). In so doing, Morgan Stanley seeks to extinguish

any future liability for its systemic civil rights violations and continue business as usual, which

will not improve the working conditions of or opportunities available to African-Americans. The

Firm's actions will deny just compensation and meaningful relief to class members and cement

systemic discrimination against African-Americans for the foreseeable future.

6. Plaintiffs have filed this lawsuit to hold Morgan Stanley accountable for its unlawful

treatment of African-Americans and to achieve meaningful reform. This lawsuit is brought by

present and former Morgan Stanley Financial Advisors[2] and applicants on behalf of themselves

and others who have been harmed by the Firm's company-wide pattern or practice of race

discrimination and retaliation against African-Americans. This action seeks an end to Morgan

Stanley's discriminatory practices, make whole relief for the class, and punitive damages.

---

[2] As used herein, the term Financial Advisors includes Financial Advisor Trainees and "producing" managers, *i.e.* those given manager titles or responsibilities but who also maintain a retail brokerage book of business. In addition to being Financial Advisors, Plaintiff Mary Evans was an Assistant Branch Manager of the San Mateo/Burlingame office and, currently, of the Menlo Park office; Plaintiff Brian Roy was also the Sales Manager for the Beverly Hills, California office.

3

### JURISDICTION AND VENUE

7. Plaintiffs' claims arise under 42 U.S.C § 1981,[3] and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). As set forth in paragraphs 11 through 24 below, a majority of the named Plaintiffs reside in this District, and ten of the Plaintiffs applied to or worked at Morgan Stanley branch offices in this District, where they were subjected to unlawful treatment by Morgan Stanley. In addition, Defendant is licensed to do business and maintains a number of branch offices in this District.

### PARTIES

9. Defendant Morgan Stanley & Co., Inc.[4] is a Delaware corporation with its principal place of business in New York. Morgan Stanley provides a wide variety of financial products and services to its global and domestic clients, which include corporations, governments, financial institutions and individuals, and manages approximately $700 billion of client assets.[5] As part of its brokerage, investment advisory and financial and wealth planning services, Morgan Stanley employs more than 8,000 persons nationwide as Financial Advisors to service clients in over 500 offices, including approximately 450 retail locations in the United States. Morgan Stanley is registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant.

---

[3] Certain of the Plaintiffs have filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After they have exhausted their administrative remedies, Plaintiffs will seek leave to amend the Complaint to include claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

[4] On April 1, 2007 Morgan Stanley merged with Morgan Stanley DW Inc., an affiliated broker-dealer registered with the SEC, into Morgan Stanley & Co.

4

10.  Morgan Stanley, Inc., the parent corporation of Morgan Stanley, is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and headquartered in New York. In 2006, Morgan Stanley, Inc. achieved revenues of approximately $34 billion and a net income of nearly $7.5 billion and maintained shareholders equity of nearly $35 billion.

11.  Plaintiff Morris Allen, Jr. ("Allen") is African-American and a resident of Illinois. Allen was employed by Morgan Stanley as a Financial Advisor in the Oakbrook, Illinois office from October 1998 until he was unlawfully terminated on account of his race in August 2005. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Allen was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Allen lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

12.  Plaintiff Michael Barnett ("Barnett") is African-American and a resident of Illinois. Barnett has been employed by Morgan Stanley as a Financial Advisor in the Chicago, Illinois office since 1995. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Barnett has been denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Barnett has lost income and has been otherwise harmed as a result of Defendant's unlawful conduct.

---

[5] Source: www.morganstanley.com and the Company's 2006 Form 10K; *see also* Note 1 to the Consolidated Statement of Financial Condition of Morgan Stanley as of May 31, 2007.

13. Plaintiff Anthony Bell ("Bell") is African-American and a resident of Illinois. Bell was employed by Morgan Stanley as an FA in the Chicago, Illinois office from April 2001 until he was unlawfully terminated on account of his race in November 2003. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Bell was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Bell lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

14. Plaintiff Patrick Carter ("Carter") is African-American and a resident of Florida. Carter was employed by Morgan Stanley as an FA in the Boca Raton, Florida office from 1990 until he was constructively discharged on account of his race in September 2006. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Carter was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Carter lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

15. Plaintiff Martin Dixon ("Dixon") is African-American and a resident of California. Dixon was employed by Morgan Stanley as an FA in the Irvine, California office from May 2003 until he was unlawfully terminated on account of his race in October 2004. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Dixon was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not

African-American. Dixon lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

16. Plaintiff Ernest Dorsey ("Dorsey") is African-American and a resident of Indiana. Dorsey was employed by Morgan Stanley as an FA Trainee in the Chicago, Illinois office from October 2005 until he was unlawfully terminated on account of his race in May 2006. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Dorsey was denied business opportunities on account of his race and treated worse than similarly-situated Morgan Stanley employees who were not African-American. Dorsey lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

17. Plaintiff Mary Evans ("Evans") is African-American and a resident of California. Evans has been employed by Morgan Stanley since May 1995, as a Financial Advisor in the San Mateo office and as an Assistant Branch Manager in the Menlo Park and San Mateo offices. Throughout her employment, and pursuant to Defendant's pattern or practice of discrimination and company-wide policies, Evans has been denied business opportunities and treated worse than similarly situated Morgan Stanley employees who were not African-American. Evans has also been denied promotions and management opportunities for which she was well-qualified on account of her race. Evans has lost income and been otherwise harmed as a result of Defendant's unlawful conduct.

18. Plaintiff Janice Grant ("Grant") is African-American and a resident of Illinois. Grant was employed by Morgan Stanley as an FA in the Chicago, Illinois office from October 2003 until she was constructively discharged on account of her race in September 2004. Throughout her employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of

7

discrimination and company-wide discriminatory policies, Grant was denied business opportunities on account of her race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Grant lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

19. Plaintiff Justin Harris ("Harris") is African-American and a resident of Indiana. In the summer of 2004, Harris applied for an FA Trainee position in Defendant's Chicago, Illinois office but was not hired on account of his race. Harris had financial services experience and was well-qualified for the position. Harris lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

20. Plaintiff Mark Lewers ("Lewers") is African-American and a resident of Illinois. Lewers was employed by Morgan Stanley as an FA in the Chicago, Illinois office from June 2000 until he was unlawfully terminated on account of his race in November 2002. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Lewers was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Lewers lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

21. Plaintiff Maurice Mabon ("Mabon") is African-American and a resident of Indiana. Mabon was employed by Morgan Stanley as an FA in the Chicago, Illinois office from July 1998 until June 2006. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Mabon was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Plaintiff was also, and continues to

8

be, retaliated against and defamed by Morgan Stanley because of his complaints about the Firm's discrimination and unlawful conduct. Mabon lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

22. Plaintiff Ronald Moore ("Moore") is African-American and a resident of Illinois. Moore was employed by Morgan Stanley as an FA in the Chicago, Illinois office from October 2001 until he was constructively discharged on account of his race in April 2004. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Moore was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Moore lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

23. Plaintiff Brian Roy ("Roy") is African-American and a resident of California. Roy was employed by Morgan Stanley in the Malibu, California and Beverly Hills offices from March 1995 until he was unlawfully terminated on account of his race in November 2005. Roy served as a Financial Advisor and as a Sales Manager for the Firm. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Roy was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Roy was also denied promotions and management opportunities for which he was well-qualified on account of his race. Roy lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

24. Plaintiff Marion Tucker ("Tucker") is African-American and a resident of Illinois. Tucker was employed by Morgan Stanley as an FA in the Oakbrook, Illinois and

9

Matteson/Orland Park, Illinois offices from May 1999 until he was unlawfully terminated on account of his race in August 2005. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Tucker was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Tucker lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

## BACKGROUND OF NEGOTIATIONS WITH MORGAN STANLEY

25. On August 8, 2006, a group of the named Plaintiffs informed Morgan Stanley of their claims of race discrimination and their belief that their claims were "part of a nationwide pattern and practice of intentional race discrimination by Morgan Stanley against African-American Financial Advisors and result from employment practices that have a disparate impact on African-Americans." Plaintiffs indicated their willingness to assist Morgan Stanley in addressing its systemic race discrimination and in exploring the possibility of resolving their individual and class claims without full-blown litigation. Morgan Stanley claimed to be interested in proactively addressing its problems and entered into tolling agreements with Plaintiffs so the parties could attempt to address these issues.[6]

26. On December 14, 2006, counsel for Plaintiffs traveled to New York to meet with Morgan Stanley representatives to explain what they had learned from their clients about the systemic obstacles and patterns of discrimination facing African-Americans at Morgan Stanley. Morgan Stanley led Plaintiffs to believe, falsely, that the Firm was interested in improving the condition of African-Americans and in reforming the policies, practices and hostile culture that

---

[6] Other current and former Morgan Stanley employees soon followed suit and joined their efforts.

10

disadvantaged African-Americans and instituting meaningful, company-wide diversity initiatives and other relief for African-Americans.

27. Unbeknownst to the Plaintiffs, Morgan Stanley later contacted the plaintiffs in the dormant putative class action gender discrimination lawsuit, *Jaffe et al. v. Morgan Stanley DW, Inc.*, Case No. 06-3903 (N.D. Ca.) filed in California. At that time, only one of the two *Jaffe* plaintiffs was African-American. Moreover, The *Jaffe* complaint did not include any class claims of race or color discrimination. Morgan Stanley did not inform Plaintiffs of its negotiations with the *Jaffe* plaintiffs regarding race discrimination.

28. On August 2, 2007, a press release was issued that claimed that Morgan Stanley had reached a resolution of a class action lawsuit for 1,200 African-Americans and Latinos as part of the resolution of the dormant putative gender class action lawsuit, *Jaffe v. Morgan Stanley*. *See, e.g.*, press release at http://www.lieffcabraser.com/press_releases/20070802-morgan-stanley.htm.[7] The financial and other terms of this purported settlement of the *Jaffe* case have not been disclosed to the class or the public, nor has the settlement agreement been disclosed. On the same day the purported settlement was announced, the *Jaffe* parties sought to amend the complaint to add an additional African-American plaintiff and, for the first time, to add class-wide claims on behalf of African-Americans and Latinos on the basis of race and/or color

---

[7] The *Jaffe* class action gender discrimination lawsuit was filed on the same day as the *Augst-Johnson et al. v. MSDW* class action gender discrimination lawsuit, but the Northern District of California District Court determined that a stay of the *Jaffe* proceedings was appropriate because the *Augst-Johnson* plaintiffs had been negotiating for a longer period and indicated a settlement was forthcoming. On April 24, 2007, Defendant announced that the parties had reached a settlement of the *Augst-Johnson* class action lawsuit whereby a fund of $46 million, minus approximately $12 million in attorneys' fees, was established for a class of approximately 2,800 female class members. Plaintiffs believe that the diversity initiatives in the *Augst-Johnson* lawsuit are insufficient and will serve to perpetuate gender and race discrimination. Plaintiffs also believe that the monetary awards are insufficient to compensate the victims of the institutionalized discrimination or to deter Defendant from continuing to discriminate.

discrimination. Thus, two of the three plaintiffs in the *Jaffe* case are now African-American. It does not appear, however, that any of the named plaintiffs or putative class representatives in the *Jaffe* lawsuit are Latino. To date, no settlement agreement has been filed with the Court in the *Jaffe* matter, nor has Morgan Stanley announced the terms of the *Jaffe* settlement.

29. On August 1, 2007, the night before the settlement was announced and the amended complaint filed, Plaintiff Mary Evans received a phone call from an attorney who appeared to be attempting to solicit her as a named plaintiff in the *Jaffe* case.

30. The fourteen named Plaintiffs in this case represent a broad cross section of Morgan Stanley employees. They include current and former Morgan Stanley employees, FAs of varying levels of production and tenure, applicants, and managers. Plaintiffs have worked at over ten different Morgan Stanley offices across the country for a number of different managers. Collectively, the Plaintiffs have a wealth of knowledge about the Firm and the manner in which its policies and practices operate to disadvantage and exclude African-Americans, and how to address these shortcomings. Presumably, all would be class members in the new *Jaffe* race and color class action, and represented by class counsel in that lawsuit, but none were consulted during negotiation of the claims of an entire class of African-Americans or in crafting appropriate relief. It appears that only two African-Americans may have been included as part of the *Jaffe* negotiations and that they were not presented with full and fair disclosure about the existence and efforts of Plaintiffs.

## GENERAL PRACTICES OF DISCRIMINATION

---

Plaintiffs further believe that this financial resolution will be used by Morgan Stanley as the benchmark for the race case.

31. The Financial Advisors who work at Defendant's branch offices across the country develop, advise and service the Firm's clients. FAs are supervised by branch managers who implement the Firm's company-wide policies and distribute resources and income-generating opportunities to FAs in the offices they manage. As a result of Defendant's systemic discrimination, African-Americans are nearly excluded from branch management. On information and belief, of the approximately 500 branch managers at Morgan Stanley, fewer than five branch managers are African-American.

32. An FA attains clients in a number of ways, including through the FA's own efforts and contacts, as well as through transfers from other FAs; membership in a partnership, or team of brokers; and by assignment of accounts, leads, referrals, walk-ins, call-ins, and other opportunities provided by the Firm. The Firm ranks and compensates its FAs, and distributes valuable resources, on a comparative and competitive scale based on a combination of revenue generated from client accounts and an FA's length of service.

33. All FAs are compensated pursuant to uniform, nationwide compensation plans. Compensation is largely based on commissions generated from the client accounts that comprise an FA's book of business.

34. Due to the competitive manner in which FAs are compensated, a level playing field and fair distribution of resources and opportunities is essential. Defendant's policies and practices, however, do not create an equal playing field for African-Americans but result in significant compensation and promotional disparities. These disparities are driven in large part by Defendant's unequal and discriminatory practices with regard to the distribution of accounts and other income-generating opportunities, sales support, and its corporate culture that permits and reinforces the differential treatment of African-Americans.

13

35. Defendant has a strong corporate culture that is biased against African-Americans and reinforces the differential treatment of African-Americans. Morgan Stanley maintains stereotypical views about the skills, abilities and potential of African-Americans that form the basis of personnel decisions. Defendant maintains race-based attitudes about its clients as well as its FAs, as is evident by management and Firm-wide efforts to steer African-American FAs to African-American clients, and vice versa. Defendant's corporate culture creates an environment where occupational segregation, disparate treatment, and harassment are pervasive and are condoned. By way of example, Plaintiffs provide the following examples of the Morgan Stanley's biased culture:

- A Morgan Stanley branch manager openly asked his colleagues why Morgan Stanley bothers to hire African-Americans because African-Americans cannot succeed in the retail brokerage business.

- A successful Morgan Stanley FA in California openly referred to one Morgan Stanley office as the one with the "nigger and the spic," or words to that effect.

- Morgan Stanley managers regularly steered African-American Financial Advisors toward African-American clients, assuming this was the only business they could garner. Managers engaged in similar "race-matching" with mentoring and partnership opportunities between FAs.

- A sales manager referred to one Plaintiff's book of business as the "black book" because many of his clients were African-American.

- A branch manager openly made jokes in the office about African-American FAs and made derogatory remarks about African-American clients.

14

- Another branch manager asked an African-American candidate how he was going to generate clients because he "sounded black" and clients would be able to tell he was African-American on cold calls and would not want him as their Financial Advisor.

- One branch manager told an African-American Financial Advisor that "black males do not make it" in the retail brokerage business, or words to that effect.

- African-Americans were regularly excluded from networking opportunities and office outings.

36. Defendant's human resources and legal departments are ineffective at resolving complaints of race discrimination and retaliation and, as a result, many African-Americans recognize the futility of lodging internal complaints. Those who do come forward suffer retaliation.

37. Defendant's pattern and practice of race discrimination is demonstrated in part by its historic and continued underrepresentation of African-American brokers and management. Defendant has been on notice of its disparity in treatment and opportunities for African-Americans for over thirty years. In the 1970s, the Equal Employment Opportunity Commission ("EEOC") sued Defendant's predecessor, Dean Witter, for engaging in a pattern and practice of race and sex discrimination with respect to recruitment, hiring, assignment, training, promotion, and other terms and conditions of employment. *See EEOC v. Dean Witter & Co, Inc.*, Case No. 78-839 (E.D. Pa.).

38. Little has changed in the three decades since the EEOC sued Dean Witter. On information and belief, African-Americans are still underrepresented to a statistically significant degree as compared to their availability in the relevant labor markets as Financial Advisors and in management at Morgan Stanley. On information and belief, Morgan Stanley does not employ

15

any tenured Financial Advisors in over thirty states. The dramatic underrepresentation of African-Americans as FAs is due to the Firm's discriminatory recruiting and hiring practices. Defendant's nearly all-white management team is responsible for hiring decisions and applies higher standards to African-American candidates.

39. Plaintiff Harris was denied a position as a result of Defendant's discriminatory hiring practices. Harris was recommended by one of the Firm's few successful African-American FAs and was well-qualified for the FA Trainee position he applied for in mid-2004. Harris held a Series 6 license and had prior financial services experience. Despite his experience and qualifications, management challenged his ability to pass the Series 7 and to garner clients on the basis of racial hostility and/or stereotypes. After presenting a superior business plan, Harris was offered a position, which was then revoked because of his race on the Friday before he was scheduled to start his employment with the Firm.

40. The few African-Americans hired by Defendant suffer an attrition rate substantially higher than the attrition rate of non-African-Americans. A Regional Manager at the Firm told one of the Plaintiffs that the "wash-out" rate of African-Americans was over 90%. The high attrition rate and dramatic underrepresentation of African-Americans is attributable to Defendant's ongoing differential treatment of African-Americans and its failure to provide African-Americans with equal opportunities to succeed.

41. The success of FAs is contingent on a number of factors, including access to partnership opportunities and to business opportunities like accounts of retiring or departing brokers, leads, referrals, and opportunities for clients to participate in initial public offerings ("IPO"). Morgan Stanley has implemented and maintains uniform, company-wide policies and practices that discriminate against African-Americans in the distribution of these opportunities.

As a result, African-American FAs are nearly excluded from favorable partnerships and do not receive the same level of account distributions, referrals, leads, IPOs, walk-ins and call-ins as their counterparts who are not African-American, and so earn less income.

42. FAs also rely on sales, administrative and managerial support to develop and service their books of business. African-American brokers, however, do not receive the same level of sales and managerial support as brokers at Morgan Stanley who are not African-American. African-American brokers are often assigned fewer and less experienced sales assistants whom they have to train, whereas similarly situated non-African-American brokers are assigned experienced, and often licensed, sales assistants. As a result, African-American brokers must perform most of their own administrative tasks and have less time to devote to developing and serving clients.

43. Similarly, African-Americans are often also denied the managerial support necessary to operate a smooth, efficient and profitable business. Pursuant to company-wide policies and practice, Morgan Stanley managers distribute resources and business opportunities to FAs in the offices they manage. In addition to allocating limited resources, such as accounts, office space, and sales assistants, managers must approve certain activities and approve certain financial expenditures. Managers also can provide assistance in maneuvering within the Firm and its policies, can be an important resource for ideas, can help develop and sustain client relationships, and can make assessments and recommendations regarding promotional opportunities. Morgan Stanley vests its nearly all-white management team with a substantial amount of discretion, and the Firm's managers exercise that discretion in a way that disadvantages African-Americans, as managers steer business opportunities to white FAs and do not provide African-American broker with the same level of resources and support as their white counterparts.

17

44. African-Americans are also disadvantaged by Morgan Stanley's discriminatory policies and practices regarding partnerships, or teams, among FAs. These partnerships are formed at the direction and/or with the approval of management, and act to steer assets and business opportunities to non African-American FAs, including trainee FAs, who would not otherwise receive these assets and opportunities. African-American FAs, unlike their white counterparts, do not benefit as a class from partnerships. Partnerships often protect the beneficiaries of past discrimination and prevent their accounts from being distributed in an equitable fashion. African-Americans are largely excluded from favorable teams. As a result of stereotypes and discrimination, the skills and contributions of African-American FAs are not valued, and they are not selected or permitted to join partnerships as equal partners. On the rare occasions when African-Americans are invited to join a team, the partnership often becomes a vehicle to cannibalize their books of business.

45. The Plaintiffs who worked as FAs or Trainee FAs were denied the same business opportunities, sales and managerial support, and partnership opportunities as their colleagues who were not African-American.

46. Defendant also employs management grooming, assessment, training and selection practices that disadvantage African-Americans. Defendant maintains "tap on the shoulder" management grooming and selection practices that systemically exclude African-Americans from branch management, and from most management-feeder positions, like Sales Manager and Assistant Branch Manager positions. Plaintiffs Barnett, Mabon, Carter, and Tucker, for example, were well-qualified to join management but were never groomed for management opportunities. Similarly-situated non-African-American FAs, including those who never expressed interest in

management, were approached about management opportunities, groomed for management positions, and assigned to management or feeder positions or sent to management training.[8]

47.  Plaintiffs Evans and Roy were experienced, successful producing managers and were well-qualified to become branch managers.  Consistent with Defendant's pattern of discrimination, each was passed over for promotion to branch management positions in favor of less qualified individuals who were not African-American.

## Pattern Allegations

48.  Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and retaliation and knowingly employs company-wide policies and practices that have a disparate impact on African-Americans.  Defendant's nationwide pattern and practice of discrimination, harassment and retaliation against African-Americans includes, but is not limited to, the following practices:

    a)  failing to recruit and hire African-Americans;

    b)  failing to promote African-Americans, including to management;

    c)  underutilizing African-Americans and engaging in job segregation by, among other things, steering African-Americans into clerical positions, investment advisor positions, or other non-producing roles;

    d)  denying African-American trainee brokers the same opportunities and support as trainees who are not African-American, and treating African-American trainee brokers less favorably than trainees who are not African-American;

    e)  employing uniform company-wide employment and compensation policies that disadvantage African-Americans, including, but not limited to, the Firm's national compensation plans, account distribution and "power ranking" policies, and team policies;

---

[8] To illustrate, Tucker's repeated expressions of interest in management were ignored, despite his manager's acknowledgment that he was "more prepared" than his manager was at the time he was tapped on the shoulder and directed to management.

19

f) employing discriminatory hiring, compensation and promotion practices;

g) taking race and racial stereotypes into account when making employment decisions, including but not limited to decisions regarding teams and the assignment of walk-ins, leads, referrals, departing brokers' accounts and initial public offerings ("IPOs");

h) establishing, maintaining, and relying upon subjective, arbitrary and/or race-based criteria, practices and policies that work to the disadvantage of African-Americans;

i) making decisions regarding reductions-in-force in a manner that disadvantages African-Americans;

j) targeting the accounts and clients of African-American brokers and reassigning them to white brokers using a number of means, including partnerships;

k) failing to credit African-Americans for their experience on the same basis as non-African-Americans and failing to consider African-Americans for timely promotions or title changes on the same basis as non-African-Americans;

l) employing policies and practices that disproportionately disadvantage African-American brokers and/or that reinforce and continue the disparate impact of past discrimination, including but not limited to policies and practices regarding account distributions and partnerships;

m) failing to apply and enforce Morgan Stanley policies in a consistent, race-neutral fashion, to the detriment of African-American brokers;

n) employing a number of means to exclude African-Americans from income-generating opportunities, including but not limited to using partnerships to deny African-American brokers the opportunity to receive valuable account distributions or to otherwise participate in lucrative business opportunities;

o) systematically paying African-Americans lower wages and/or denying African-Americans opportunities to increase their earnings, including commissions;

p) negligently hiring and/or retaining individuals with known propensities to discriminate against or harass African-Americans;

q) maintaining a corporate culture and a work environment that is hostile and offensive to or biased against African-Americans;

20

r) retaliating against African-Americans who complain of discrimination;

s) knowingly employing policies and practices that have a disparate impact on African-Americans;

t) manipulating the length of service ("LOS") designation to safeguard non-African-Americans from termination or disciplinary action and/or to manipulate earnings and performance;

u) terminating African-Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been but for the unlawful conduct of Morgan Stanley; and

v) defaming African-Americans to their clients and on their Uniform Termination Notice For Securities Industry Registration Form U-5's ("Form U-5"), but issuing clean Form U-5's to non-African-Americans who were charged with disciplinary violations or race discrimination.

49. The discrimination and retaliation described above is ongoing and constitutes a continuing violation of the civil rights laws.

50. Each of the Plaintiffs was subjected to some, but not all, aspects of the above pattern and practice of systemic discrimination and was harmed as a result of Defendant's unlawful conduct.

51. The problems of race discrimination at Morgan Stanley are national in scope. The named Plaintiffs and putative class representatives worked at Morgan Stanley branch offices in Illinois, Florida, and California. The class members who are relying on the class representative to protect their rights work or worked at Morgan Stanley offices throughout the country.

52. The claims of the class representatives demonstrates the need for and appropriateness of class treatment. Although they worked in different offices across the United States, Plaintiffs' experiences at Morgan Stanley were remarkably similar, and are similar to those encountered by other African-American Financial Advisors at Morgan Stanley offices nationwide.

53.

21

**Plaintiffs Were Injured as a Consequence of Defendants' Unlawful Conduct**

54. Plaintiffs lost wages and other benefits, suffered embarrassment and humiliation, and their careers were irreparably injured as a result of Morgan Stanley's conduct. Plaintiffs suffered loss of enjoyment of life, inconvenience and other nonpecuniary losses as a direct result of Morgan Stanley's conduct.

55. The actions of the Defendants have caused and continue to cause Plaintiffs substantial losses in earnings, management opportunities and other employment benefits, in an amount to be determined by a jury.

56. Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected civil rights of Plaintiffs. Plaintiffs are thus entitled to recover punitive damages in an amount to be determined by a jury.

**CLASS ALLEGATIONS**

57. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of past and present African-American applicants, Financial Advisor Trainees, Financial Advisors, and managers of Defendant in the United States who have been subjected to discrimination by Defendant due to their race and have been subjected to retaliation due to their opposition to discrimination.

58. Plaintiffs are members of the class they seek to represent. Plaintiff Harris brings this action on behalf of applicants to Morgan Stanley who were not hired because of their African-American race.

59. Plaintiffs Evans and Roy bring this action on behalf of managers who were denied promotion to branch manager because of their race.

22

60. The class of African-American applicants, employees and former employees is so numerous that joinder of all members is impracticable.

61. There are questions of law and fact common to the class, and those questions predominate over individual questions.

62. The claims alleged by the plaintiffs are typical of the claims of the class.

63. Plaintiffs will fairly and adequately represent and protect the interests of the class.

64. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

<u>COUNT I</u>

**RACE DISCRIMINATION IN VIOLATION OF
42 U.S.C. SECTION 1981**

65. Plaintiffs, on behalf of themselves and those similarly situated, reallege paragraphs 1 through 63 and incorporate them by reference as though fully stated herein as part of Count I of this Complaint.

66. Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.

67. Defendant maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African-Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

23

68. Plaintiffs and all those similarly situated were subjected to and harmed by Defendant's systemic discrimination.

69. Defendant's unlawful conduct resulted in considerable harm to Plaintiffs and all those similarly situated.

70. On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

## PRAYER FOR RELIEF

71. WHEREFORE, Plaintiffs respectfully request that this Court find in their favor and against Defendant as follows:

a.   Certify this case as a class action;

b.   Designate Plaintiffs as Class Representatives and designate Plaintiffs' counsel of record as Class Counsel;

c.   Declare that Defendant's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. Section 1981;

d.   Declare that Morgan Stanley engaged in a pattern and practice of racial discrimination against African-Americans;

e.   Order appropriate equitable and injunctive relief to remedy the discrimination, including an order forbidding Defendant from adopting mandatory arbitration of civil rights claims by its employees for a period of at least five years;

f.   Order Plaintiffs and all others similarly situated reinstated to their appropriate positions, promotions and seniority and otherwise make Plaintiffs whole;

g.   Award Plaintiffs and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Morgan

24

Stanley's unlawful conduct;

h.   Award Plaintiffs and all others similarly situated compensatory and punitive

damages;

i.   Award Plaintiffs and all others similarly situated prejudgment interest and

attorneys fees, costs and disbursements, as provided by law;

j.   Award Plaintiffs and all others similarly situated such other make whole

equitable, injunctive and legal relief as this Court deems just and proper to end the

discrimination and fairly compensate Plaintiffs.

k.   Award Plaintiffs and all others similarly situated such other relief as this Court

deems just and proper.

## DEMAND FOR A JURY TRIAL

72.  Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules

of Civil Procedure.

Respectfully submitted on behalf of Plaintiffs and those
similarly situated,

*Mary Stowell*

STOWELL & FRIEDMAN LTD.

Mary Stowell
Linda D. Friedman
Suzanne E. Bish
STOWELL & FRIEDMAN LTD
321 S. Plymouth Court
Suite 1400
Chicago, Illinois  60604
(312) 431-0888

25