# EXHIBIT F

# Stowell & Friedman, Ltd.
ATTORNEYS AT LAW

321 South Plymouth Court
Suite 1400
Chicago, IL 60604
Telephone: 312/431-0888
Facsimile: 312/431-0228

## TELECOMMUNICATION TRANSMITTAL

**DATE:** September 10, 2007

**TO:** Cyrus Mehri

**FAX:** 202-822-4997

**FROM:** Janice Grant

**TOTAL PAGES SENT INCLUDING THIS COVER SHEET:** 16

**MESSAGE:**   Client No. 3563

Please find attached the Objections to Proposed Settlement and Notice of Intent to Appear at the Settlement Fairness Hearing of Janice Grant, class member in the case Augst-Johnson et al. v. Morgan Stanley, Case No. 1:06-cv-01142.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient or employee responsible for delivering this message to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If this communication is received by error, please notify us immediately by phone.

September 7, 2007

The Honorable Richard W. Roberts
c/o Clerk of U.S. District Court
Re: *Augst-Johnson, et al. v. Morgan Stanley & Co. Inc.*, No. 1:06-cv-01142
P.O. Box 34782
Washington, DC 20043

Dear Judge Roberts:

My name is Janice Grant. I am an African-American woman, former Morgan Stanley Financial Advisor, and a putative class member in the lawsuit *Augst-Johnson et al. v. Morgan Stanley, & Co.*, Case No. 1:06-cv-01142. I write to respectfully object to the settlement in that case and to request an opportunity to address the Court about the nature of my objections at the October 11, 2007 Fairness Hearing.

I am not opting out of this lawsuit solely because I understand that anyone who opts out cannot object to the proposed settlement. I have grave concerns about the fairness of the proposed settlement and believe I have an obligation to provide the Court with relevant information to help you make a fair and reasonable decision for the class. I believe that unless I object, the Court will lack meaningful input regarding this very important decision. My objections to the proposed settlement are set forth in the attachment to this letter.

Sincerely,

Janice Grant

Streamwood, Illinois 60107

Witnessed and Notarized by:

"OFFICIAL SEAL"
Maren Robinson
Notary Public, State of Illinois
My Commission Exp. 08/06/2008

cc:

| Cyrus Mehri, Esq. | Steven M. Sprenger, Esq. |
| Mehri & Skalet, PLLC | Sprenger + Lang, PLLC |
| 1250 Connecticut Avenue, NW, Suite 300 | 1400 Eye Street, N.W., Suite 500 |
| Washington, DC 20036 | Washington, DC 20005 |
| Mark S. Dichter, Esq. | |
| Morgan, Lewis & Bockius LLP | |
| 1701 Market Street | |
| Philadelphia, PA 19103-2921 | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOANNE AUGST-JOHNSON, et al. ) | |
| ) | |
| On behalf of themselves and all others similarly ) | |
| situated ) | Case No. 1: 06-cv-01142 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Judge Richard W. Roberts |
| ) | |
| ) | CLASS ACTION |
| MORGAN STANLEY & CO., INC. ) | |
| ) | |
| Defendant. ) | |

## OBJECTIONS OF JANICE GRANT TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT SETTLEMENT FAIRNESS HEARING

My name is Janice Grant. I am an African-American woman, former Morgan Stanley Financial Advisor, and a putative class member in the lawsuit *Augst-Johnson et al. v. Morgan Stanley, & Co.*, Case No. 1:06-cv-01142. I write to respectfully object to the proposed settlement in that case and to provide notice of my intent to appear, along with my counsel, at the October 11, 2007 Settlement Fairness Hearing to address the Court about the nature of my objections.

I do not believe that the proposed settlement is fair to the proposed class of women, and I believe that it will cause harm to African-American employees of Morgan Stanley. I am objecting rather than opting out of this lawsuit solely because I understand that anyone who opts out cannot object to the proposed settlement. I have grave concerns about the fairness of the proposed settlement and believe that I have an obligation to provide the Court with relevant information to help Your Honor make a fair and informed decision for the class. I believe that unless I object, the Court will lack meaningful information regarding this very important decision.

As explained below, I believe that the proposed settlement is deficient in a number of ways. Importantly, it appears that the fairness of the proposed settlement has not been adequately "tested" by the named plaintiffs and class representatives, who are not standing in the shoes of the other class members with regard to attaining relief but are receiving additional, undisclosed payments for their claims from the Settlement Fund.

1

SEP-10-2007 17:22    STOWELL AND FRIEDMAN, LTD    312 431 7984    P.04/16

Specifically, the Settlement provides that the named plaintiffs will sign general releases rather than the limited releases signed by other class members. In exchange for general releases, the named class members will receive *from the Settlement Fund* undisclosed payments above and beyond what class members may receive. Additionally, the named plaintiffs will receive additional monies for their participation in the class. While I do understand that the named plaintiffs have invested additional time and effort for the class and are likely due considerable settlements, I question whether without those additional monies, the named plaintiffs would have accepted the Settlement Fund as adequate for the absent class members.

The Settlement Agreement also does not disclose material information to the public, the Court or the class and contains terms and provisions that are unclear, ambiguous and unfairly restrict the rights of the class and other former, current and future employees at Morgan Stanley to access to federal court for resolution of grievances.

Further, the injunctive and "programmatic" relief described in the proposed settlement will not materially improve the working conditions of and opportunities available to women at Morgan Stanley and will disadvantage African-American Financial Advisors at Morgan Stanley. In particular, women and African-American Financial Advisors complain that they received fewer and less substantial account referrals from management. When Financial Advisors depart the firm, managers distribute their clients to certain Financial Advisors who remain. Women and African Americans complain that white men received the bulk of these distributions. Because Financial Advisors are paid from the commissions earned on the accounts assigned to them, women and African Americans earn lower wages because they were shorted on account distributions and the opportunity to build a business from those account distributions.

The remedy proposed is to institute a Power Ranking system which credits white male Financial Advisors for their current assets and revenue, or rewards them for the product of past discrimination. Rather than remedy it, the proposed relief is likely to cement and perpetuate discrimination against women and African-Americans and to make it much more difficult for class members and other minorities to challenge the discriminatory practices, policies and conduct of Morgan Stanley.

### The Settlement Fund Is Insufficient and Payments to Class Members and the Class Representatives Are Unfair and Not Transparent

I believe that the monetary funds available to the class are inadequate and will not make whole the victims of systemic gender discrimination at Morgan Stanley. The proposed settlement establishes a Settlement Fund of $46 million, from which payments will be made to (a) class members, including the named plaintiffs, (b) class counsel for attorneys' fees and costs, (c) administrative costs, including all costs of notice, claims processing, legal and tax advice, and the Special Master's fees and expenses, and (d) taxes. *See* Stlmt. at VIII.A., at 33. The Settlement Agreement does not set forth the amounts of fees, costs and expenses that will be paid from the Settlement Fund, or any limitations on their amount. It is therefore difficult to assess what amount will be available for relief to class members. I understand that Class Counsel has requested approximately $12 million for attorneys' fees. I do not doubt that Class Counsel expended significant time and effort in this matter. I also do not dispute that Class Counsel are entitled to be paid or have any basis to challenge the amount of their request. I only offer that *after* the $12,000,000 is paid, the *maximum* available to the class would be approximately $34 million among approximately 2,700 class members. I also understand that the $34 million will be reduced by the undisclosed payments to the named plaintiffs. On a pro rata basis, even without deduction of the undisclosed payments, class members could receive a *maximum* of only about $12,500 per person for discrimination they suffered between August 5, 2003 and June 30, 2007, a period of nearly four years. White, male Financial Advisors routinely earn annual compensation well into the six figures. Without the undisclosed payments, I do not believe that the named plaintiffs would have accepted this result for the absent class members.

This overall and pro rata value of the settlement is inadequate. In *Cremin v. Merrill Lynch* (N.D. IL), a very similar nationwide gender discrimination class action lawsuit against another retail brokerage firm filed over a decade ago, 900 claimants reportedly recovered in excess of $200 million as part of a claims resolution settlement process. Other nationwide class action discrimination lawsuits against companies like Coca-Cola and Texaco have resulted in far greater relief for fewer class members, approximately $193 million and $115 million, respectively. Even in a prior

discrimination case against Morgan Stanley, a class of 340 women in its institutional equities division recovered $54 million for gender discrimination claims, and attorneys' fees in that case did not come out of the $54 million fund. Similarly, Morgan Stanley recently settled a Fair Labor Standards Act case brought on behalf of brokers in a single state, California, for $42.5 million.

It appears that in this case, the settlement value or "market" was also driven down due to other factors. As this Court may be aware, on June 22, 2006, the same day this lawsuit was filed, another, nearly identical gender discrimination class action lawsuit was filed in the Northern District of California, *Jaffe v. Morgan Stanley*, Case No. 06-3903 (N.D. Ca.). The *Jaffe* and *Augst-Johnson* plaintiffs sought to represent the same class, a fact which under the right circumstances might advantage the class as the group that lost out on the class would be vocal opponents to anything unfair or inadequate in the case of a settlement.

Indeed, the *Jaffe* plaintiffs, who previously sought to represent the same class, would have been the most likely to scrutinize the fairness of the proposed *Augst-Johnson* settlement and challenge its unfair terms. The presence of the *Jaffe* plaintiffs meant that it was unlikely that a gender settlement would be presented to the Court without meaningful debate and participation of interested parties. However, shortly after the *Augst-Johnson* plaintiffs announced a settlement of their gender action, I believe that Morgan Stanley worked to silence the Jaffe plaintiffs and their lawyers. Shortly after the settlement of this lawsuit was announced, Morgan Stanley and the lawyers in the *Jaffe* lawsuit announced that a settlement had been reached in that case for classes of African-American and Latino Financial Advisors. At the time the Settlement was reached, the *Jaffe* lawsuit contained no class allegations of race. Instead, Morgan Stanley and the *Jaffe* plaintiffs agreed that an amendment would be filed to convert the lawsuit from a gender discrimination class action to a "race and color" discrimination class action lawsuit, which was allegedly settled by Morgan Stanley for all African-American and Latino Financial Advisors. Although one of the original *Jaffe* plaintiffs was African-American, the original lawsuit did not allege any class claims of race discrimination until the complaint was amended to add class race and color claims and one new African-

4

American plaintiff along with the Settlement.[1] It does not appear that any of the original or current plaintiffs in the *Jaffe* case are Latino; however, the lawsuit seeks to settle claims on behalf of Latino and in so doing extinguish the rights of Hispanic class members to pursue their own claims. The settlement terms have not been made public, and there will be an opportunity for a Fairness Hearing to take place in *Jaffe*; however, I wanted this Court to know this background information because I believe that the group that would have been most vocal was silenced in order to present this Settlement without much debate.

From press reports, it appears that the programmatic relief in the new *Jaffe* class race case mirrors that set forth in the *Augst-Johnson* case, which would be disastrous for African-Americans, as explained in part below. As a result, the *Jaffe* plaintiffs and their lawyers now have little incentive to challenge this lawsuit, which is inextricably linked with their own. As a result, I believe the settlement value is artificially low in both cases and will not be tested as the named plaintiffs are not being required to accept what they bartered for the class.

Due to the terms of the Settlement Agreement, it is unclear how much of the artificially low Settlement Fund actually will be available to the class, or how a class member can reasonably expect the Fund to be distributed. As mentioned above, other than the $12 million in attorneys fees, no other information is disclosed as to the amount of fees, costs, and expenses that will be paid from the funds and not available to class members. Moreover, the Allocation Formula to allocate damages to class members is extremely confusing and does not include information necessary for class members to assess whether they should participate in the settlement or opt out. For example, class members are unlikely to know, and lack access to information that would explain, whether their earnings are more or less than two standard deviations above male mean earnings, and as such whether they are eligible or ineligible for any monetary award for the Earnings Regression Component of the formula. This formula does not consider the possibility that high performing women could have been discriminated as compared to high earnings men, nor does it appear to control for or take into account factors that

---

[1] I understand that Morgan Stanley sought out the *Jaffe* plaintiff to resolve not just her individual race discrimination claim, but class claims of race discrimination that had not been plead or filed as part of the *Jaffe* gender discrimination class action.

5

would be necessary to value earnings disparities for appropriate comparators. The Settlement provides no formula for payments to Financial Advisor Trainees, like me, who are provided no guidance as to what recovery they might receive and so cannot make an informed decision as to whether to participate in the settlement.

To me, the best test for whether a settlement is fair to the class is whether, in the absence of any "extra" awards or payments, the named plaintiffs would have settled their claims. Because of the extra payments that they will receive, it is highly unlikely that the named plaintiffs in this case were ever forced to make that decision. The named plaintiff class representatives sign different releases than the class but will be paid from the same Settlement Fund for releases of claims that "go beyond the scope of the settled class claims." (Stlmt. at VIII.D.2.) For example, four of the named plaintiffs have individual age discrimination claims. It appears that they will receive compensation for their individual age claims from the Settlement Fund established for gender discrimination claims. And I cannot determine how much they will receive. I do not know anything about the named plaintiffs' claims and do not assert that they are not due substantial payments. I only question again whether they would have accepted this outcome for the class if they were forced to live with the outcome without the additional payments. I also question why age discrimination claims would be paid from a gender Settlement Fund.

The Settlement Agreement also does not identify whether the named plaintiffs will receive any "bonus" or special consideration for their service as class representatives, or the amount of any such bonus. A bonus appears to be contemplated by consideration of an individual's "contribution to the prosecution of this action" but the weight or dollar value of the class representative's "contribution" is not disclosed. In most cases, I understand that payments to class representatives are part of the settlement agreement and disclosed to the Court and to the class. It appears as if the named plaintiffs may receive three categories of payments: funds for their gender discrimination claims, funds for their "other" claims in exchange for a general release, and some bonus for serving as a class representative. None of these are disclosed, but they could have a substantial impact on both the funds available for the unnamed class members as well as whether the settlement is fair to a class member who will not receive these additional payments.

SEP-10-2007 17:23        STOWELL AND FRIEDMAN, LTD                312 431 7984    P.09/16

*I submit the following paragraph confidentially to the Court*

REDACTED

7

### The Injunctive and Programmatic Relief Is Inadequate and Discriminatory

I believe that the injunctive and programmatic relief set forth in the settlement is grossly inadequate for a number of reasons and will harm not only women, but African-Americans who also are and have been historically subjected to systemic race discrimination by Morgan Stanley.

When I worked at Morgan Stanley, there were very few African-American Financial Advisors and the turnover of African-American Financial Advisors was extremely high and appeared to be substantially higher than that of Financial Advisors who were not African-American. In addition, the few tenured African-American Financial Advisors appeared to have far fewer assets, production from those assets, and compensation than other Financial Advisors. As an initial matter, there is no indication that any of the programmatic relief has been tested to determine whether it will have a disparate impact on African-Americans. I understand that no such "backtesting" for race has been performed. This failure to backtest for race is inexcusable given the Firm's knowledge of its failings with regard to African-Americans. No changes should be implemented as part of any settlement unless they are backtested for race.

I am compelled to object to the settlement and put the Court, and Morgan Stanley, on notice of the deficiencies of the programmatic relief in the settlement because of the impact of a court-ordered and approved consent decree. Good faith on the part of Morgan Stanley will likely be presumed, albeit unfairly given that the Firm is well aware of the shortcomings of the settlement. Employees will likely be unable to challenge the discriminatory impact of any policies or programs that result from the consent decree.

Much of the "Programmatic Relief" described in the agreement has been proven ineffective, lacks any real enforcement mechanism, or is actually harmful to women and to African-Americans. The most notable examples of the settlement's shortcomings are the provisions that deal with the distribution of accounts to brokers at Morgan Stanley. Again, it does not appear that the account distribution changes, or any of the settlement's terms, were studied to determine whether they had a disparate impact on African-Americans or other minorities at Morgan Stanley. I believe that backtesting the Power Ranking would reveal a statistically significant disparate impact on African-Americans.

I understand that the proposed "Power Rankings" for account distributions rely heavily on factors such as a Financial Advisor's asset base, revenue on those assets, and length of service at Morgan Stanley to determine ranking to receive lucrative account distributions. Because of preferential and discriminatory distributions of accounts and inclusion in partnerships, white male Financial Advisors have substantially larger books of business and thus assets and revenue generated by those assets. In addition due to higher rates of attrition for women and for African-Americans, their length of service is considerably lower. Reliance on tainted factors that are the product of discrimination is improper and will only serve to perpetuate, and even widen, the existing disparities. The Power Rankings that are part of the settlement will ensure that in future account distributions, African-Americans will be sent to the back of the line, women to the middle, and white men to the front. As a result, these rankings will institutionalize and perpetuate or widen existing disparities.

Although the Settlement indicates that account distributions will be reviewed one year after implementation of the new Power Rankings, there is no reason for a discriminatory system to be in place for one year. African-Americans will unquestionably be harmed by this system for a full year. Moreover, even if class counsel and the Industrial Psychologists test for race after one year and determine that the Power Ranking is unfair, there is no guarantee the policy will be changed. Class Counsel does not represent African-Americans, and the Industrial Psychologists have not been tasked to study race and propose reforms on that basis. Most importantly, even if they were to propose reforms based on race, the Settlement agreement does not require Morgan Stanley to concede to any changes to its policies. If Morgan Stanley does not agree to changes, "no changes will be made to the Power Ranking criteria." (Stlmt at D.2.d., p. 22).

There are many other shortcomings in the programmatic proposals contained in the Settlement, which I am happy to address at the Settlement Fairness Hearing. For example, the Settlement makes no meaningful attempt to address the issue of partnerships, or teams of brokers. Morgan Stanley is well aware that partnerships operate to the huge disadvantage of women and African-Americans, who are nearly excluded from favorable partnerships. Partnerships are the wave of the future in the retail

9

brokerage business and may make irrelevant the account distribution policy, as they permit the transfer of millions of dollars of assets, accounts and opportunities, largely from white men to white men. The Settlement Agreement expressly codifies the discriminatory practice of allowing assets transferred through partnerships to "count" under the Power Rankings.

Neither Class Counsel, the Industrial Psychologists, nor the Diversity Monitor have any authority to implement meaningful reforms. None of these groups or individuals have access or the right to present any issues or proposals to Morgan Stanley's Board of Directors, or to executives at the parent company.

The Settlement Agreement limits prosecution of enforcement of the settlement terms to Lead Class Counsel or Morgan Stanley, and expressly precludes "third parties" from attempting to enforce any terms of the agreement. (Stlmt., at X.A.) This agreement was negotiated on behalf of a nationwide class of current and former Morgan Stanley employees and seeks to impose policies that will continue to affect Morgan Stanley employees for a period of at least five years. Parties affected by the settlement should plainly have standing to seek to enforce, or challenge if necessary, its terms and should not be barred from doing so by agreement of the parties. In addition, Section X.B. seeks to limit enforcement of the Settlement to private mediations and arbitration. It is this Court that will decide whether the terms of the Settlement are fair, and only after a public hearing. Due to the important issues at stake in this case, which affect thousands of employees, disputes regarding the enforcement of an agreement that should be governed and resolved by this Court, and not in a private arbitration proceeding.

Finally, one of the most meaningful reforms brought about by litigation in the 1990s against Wall Street firms was the end to mandatory arbitration in front of the NASD of any and all claims by employees of Wall Street firms. Most employees of retail brokerage firms now have the right to pursue their civil rights claims in the courts of this country with full due process rights. It appears that Morgan Stanley is making a concerted effort to extinguish the claims of women and minorities for the next five years and follow the lead of certain Wall Street firms to return to mandatory arbitration and class action bans. I believe that the settlement should require Morgan Stanley to agree to no mandatory arbitration of civil rights claims for at least the duration of any consent

decree in this case. Employees' access to courts has been the disinfectant of sunlight that has led to improvements on Wall Street. That progress will be lost if the right to pursue one's civil rights in a court of law are lost.

### The Class Definition Is Unfairly Restrictive

I understand the class consists of Financial Advisors and Registered Financial Advisor Trainees at Morgan Stanley, but does not include Financial Advisors with management titles or responsibilities, like Sales Managers, Assistant Branch Managers, or Financial Advisors "In Charge" of a Morgan Stanley office. This definition is too narrow, as most of these "assistant" manager positions are held by Morgan Stanley employees who continue to manage a retail brokerage book of business for Morgan Stanley, and thus act as Financial Advisors in addition to performing managerial duties. I know of at least one current Assistant Branch Manager who was and is subjected to discrimination in her role as a Financial Advisor but was not provided notice of this class and is apparently not a class member eligible to participate in the relief. Any class should include such "producing" managers, but the funds available for relief must also increase to include the damages these producing managers suffered as a result of Morgan Stanley's systemic gender discrimination.

### Notice to Class Members and Time Frame to Opt-Out, Object or File A Claim

I am concerned that class members who are former employees may not have received notice of the proposed settlement and of their rights in a timely fashion. It may be necessary to take additional steps to ensure that former employees whose addresses changed have received notice and to extend the time period for class members to opt out, object, and or file a claim. I initially did not receive notice of this lawsuit, which I acknowledge may be due to my recent change of address. After reading press reports and learning of the settlement, I contacted Class Counsel and received notice a few days after August 28, 2007, when notice was mailed. Particularly given the Labor Day holiday and the fact that many people choose to take vacation around this time frame, I believe that other class members, in particular former employees, may not have received notice or may not have received notice in a timely fashion. Given the length of the notice and the

11

SEP-10-2007 17:24        STOWELL AND FRIEDMAN, LTD              312 431 7984    P.14/16

important issues involved, it is important that class members have adequate time to review and consider the materials and their options, consult with an attorney if they so choose, and draft and submit opt-out notices, objections, or the fairly-extensive claims forms.

### Conclusion

I understand that the Court has an important duty and appreciate the opportunity to be heard at the Settlement Fairness Hearing. I am represented by Stowell & Friedman, Ltd. in my race discrimination claims, and I request that to have my counsel present to appear and address the Court at the Settlement Fairness Hearing in order to assist the Court.

I do not doubt the good intentions or hard work of the named plaintiffs or Class Counsel in this case. By filing these objections, I in no way intend to cast aspersions on other women who brought this lawsuit, as I understand they made a difficult and courageous decision to lend their names and efforts to this action. I also acknowledge that I do not have all of the facts that bear on this matter. However, I felt that the facts of which I was aware were important and that I had a duty to raise them with the Court. I will respect any decision reached by the Court.

*AUGST-JOHNSON, ET AL. V. MORGAN STANLEY & CO.*, No. 1:06-cv-01142
<u>OBJECTIONS OF JANICE GRANT TO THE PROPOSED SETTLEMENT</u>

Signed on September 7, 2007 by:

*/s/ Janice Grant*
Janice Grant

Streamwood, Illinois 60107

On this date of September 7th, 2007, Janice Grant personally appeared before me, executed this document, and satisfactorily proved to be the signer.

*/s/ Maren Robinson*

"OFFICIAL SEAL"
Maren Robinson
Notary Public, State of Illinois
My Commission Exp. 08/06/2008

SEP-10-2007 17:25       STOWELL AND FRIEDMAN, LTD           312 431 7984    P.16/16



Volume: 58 Number: 33
August 14, 2007

## Morgan Stanley to Settle Suit Alleging Race and Sex Bias

SAN FRANCISCO--Morgan Stanley & Co. Inc. has agreed to settle a proposed class action lawsuit alleging that the financial services firm systemically discriminates against African American, Latino, and female financial advisers and financial adviser trainees, plaintiffs and the company announced Aug. 2 (*Jaffe v. Morgan Stanley & Co.*, N.D. Cal., No. 3:06-cv-03903, *joint stipulation filed 8/2/07*).

Named plaintiffs Daisy Jaffe, Denise Williams, and Margaret Benay Curtis-Bauer alleged that Morgan Stanley delegates all authority to distribute accounts, leads, referral, partnership opportunities, walk-ins, call-ins, and other business opportunities to its "virtually all-white male" branch managers.

Plaintiffs claim that because so many of a financial adviser's or broker's accounts are developed through this process, "an unlawful adverse impact on women and minorities" is created when those leads are distributed disproportionately among white, male financial advisers.

The proposed class action filed in June 2006 alleges that Morgan Stanley's Global Wealth Management Group, which manages the company's retail financial services firm, discriminates on the basis of sex, race, and/or color in violation of Title VII of the 1964 Civil Rights Act.

Some 1,200 men and women employed at Morgan Stanley since Oct. 12, 2002, are covered by the settlement.

Morgan Stanley in a statement said it "is committed to the success of our Financial Advisors, regardless of race or color, and we view this settlement as a positive step forward." A representative declined comment beyond the joint statement.

Settlement was reached before the class was certified, reflecting "a certain commitment internally at Morgan Stanley," said plaintiffs' lead counsel Kelly Dermody of Lieff, Cabraser, Heimann & Bernstein in San Francisco.

"It's a very substantial settlement, and it's going to do a lot of good" for African American, Latino, and female brokers at Morgan Stanley, Dermody told BNA Aug. 3.

The five-year settlement includes comprehensive injunctive relief regarding recruiting and hiring, account distribution policies, partnership arrangements, promotions, retention, diversity training, and complaint processing, among other things, the parties said in the statement.

The agreement also provides for the appointment of an independent diversity monitor, and it establishes a significant class monetary settlement fund, the statement said.

The Morgan Stanley lawsuit is similar to others involving the financial services industry, including a proposed class action filed in the Northern District of California alleging that Smith Barney systemically discriminates against female brokers.

Plaintiffs' motion for class certification in the Smith Barney case is due Sept. 13 (*Amochaev v. Citigroup Global Markets Inc.*, N.D. Cal., No. 3:05-cv-01298, *order modifying certification schedule 7/30/07*). The parties and counsel "have reached substantive agreements on the monetary terms of the settlement and agree that a brief extension" is warranted, according to the court order modifying the schedule.

Dermody said Lieff Cabraser has "a number of very active investigations" into the financial services industry.

Copyright 2007, The Bureau of National Affairs, Inc., Washington, D.C.

Contact Customer Relations at customercare@bna.com
Contact the Webmaster at webmaster@bna.com
1801 S. Bell Street, Arlington, VA 22202 - Phone, 1-800-372-1033

Copyright © 2007 The Bureau of National Affairs, Inc. All Rights Reserved.
Copyright FAQs   Internal Privacy Policy   License Terms
Disclaimer   Reprint Permissions   BNA Accessibility Statement