

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Joanne Augst-Johnson, Nancy Reeves, Debra Shaw, Jan Tyler, Cheryl Giustiniano, Laurie Blackburn, Erna Tarantino, and Elizabeth Reinke, <br><br> On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc., <br><br> Defendant. | Case No. 1:06-cv-01142 (RWR) <br><br> CLASS ACTION |

### DECLARATION OF MARK S. DICHTER
### IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT

Pursuant to Title 28 U.S.C. §1746, I, Mark S. Dichter, hereby declare and state as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth herein and I am competent to testify thereto.

2. I am a partner in the law firm of Morgan, Lewis & Bockius LLP and one of the counsel representing Morgan Stanley & Co. Incorporated, formerly known as Morgan Stanley DW Inc., the defendant in the above-captioned action. I have been representing several of the major companies in the financial services industry for more than 20 years.

3. I have been admitted pro hac vice in this action.

## HISTORY OF THE CASE FROM DEFENDANT'S PERSPECTIVE

4. In March 2005, Cyrus Mehri contacted me to tell me that his law firm, together with the Sprenger & Lang firm, were considering asserting nationwide class claims against Morgan Stanley for gender discrimination and offered to enter into discussions concerning those claims.

5. In March 2005, we entered into a tolling agreement with Mehri & Skalet and Sprenger & Lang on behalf of their clients.

6. On April 15, 2005 we had an initial settlement negotiation meeting with Cyrus Mehri, Sandi Farrell, Steven Sprenger and Mara Thompson.

7. I, together with my partners and in-house counsel at Morgan Stanley, represented Morgan Stanley in the settlement negotiations with counsel for the putative class which resulted in the settlement which is pending before the Court for final approval. The Settlement Agreement was entered into in April of 2007. The preliminary approval hearing occurred on July 5, 2007. As a result of that hearing, the parties made slight revisions to the Settlement Agreement and the Notice to the class.

8. Pursuant to the Settlement Agreement, ten days after the Court's preliminary approval order, Morgan Stanley transferred $46 million into an interest bearing Qualified Settlement Fund account. Morgan Stanley also provided all the information requested by the claims administrator, SSI, and plaintiffs' statistical experts. We have also made key management personnel available for interviews by the Expert Industrial Psychologists, who, subject to the Court's final approval, are prepared to proceed expeditiously with their duties

under the Settlement Agreement.

9. Notices were served pursuant to the Class Action Fairness Act ("CAFA") on May 8 (original notice) and again on July 25 (revised notices due to changes in settlement agreement per Judge Roberts). CAFA provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are served with the notice …" 28 U.S.C. 1715(d). Thus, final approval may not be given until October 24, 2007.

## ONLY TWO OBJECTIONS TO THE SETTLEMENT

10. The class covered by the proposed settlement agreement covers more than 2,800 current and former females. After full notice, only two class members have filed objections to the settlement. One of those objections, by former Financial Advisor Jennifer Cropper, who worked at Morgan Stanley for more than eight years, essentially states that Morgan Stanley did not discriminate against females. The other objection, filed by a former Financial Advisor Trainee Janice Grant, who worked at Morgan Stanley for less than one year, challenges the settlement terms agreed to by the parties.

## JENNIFER CROPPER'S OBJECTION

11. Jennifer Cropper worked at Morgan Stanley from January, 1997 to October, 2005 as both a Financial Advisor Trainee and a Financial Advisor. Ms. Cropper does not challenge

3

the fairness, adequacy or reasonableness of the proposed settlement. Ms. Cropper simply states in her objection that she "neither experienced nor witnessed any form of discrimination," during her employment at Morgan Stanley and that Morgan Stanley made every possible resource available to increase, to retain, and to promote female advisors."

### JANICE GRANT'S OBJECTION

12. Janice Grant was employed by Morgan Stanley for only 11 months, from October, 2003 until September, 2004. She became a Registered Financial Advisor Trainee in February, 2004 and therefore was employed in a position covered by the settlement for only seven months. As a trainee, Ms. Grant was paid on a salary basis during her entire employment at Morgan Stanley as distinguished from the Financial Advisors, who are paid on a commission basis, not on a salary basis. Ms. Grant's earnings at Morgan Stanley were --- [redacted] in 2003 and ---- [redacted] in 2004.

13. As a trainee, Ms. Grant was not eligible for account distributions nor eligible to participate in partnerships, two of the principle issues involved in this litigation.

14. Ms. Grant voluntarily resigned from Morgan Stanley in September 2004.

### MS. GRANT'S COMPARISON OF THE SETTLEMENT AMOUNT IN THIS CASE TO THE SETTLEMENT AMOUNTS IN OTHER CASES IS MISPLACED

15. Ms. Grant, who worked in a position covered by this settlement for only seven months, challenges the settlement amount negotiated between the parties. She claims that, as compared to other settlements, the amount agreed upon here is inadequate. Her comparisons to other cases, however, are misplaced, as those cases involved very different allegations, claims,

legal theories, and facts.

16. Ms. Grant claims that 900 claimants "reportedly recovered in excess of $200 million as part of a claims resolution process in the settlement in a Merrill Lynch gender discrimination case." However, Ms. Grant provides no evidence to support this allegation, and the amounts ultimately paid in that settlement through individual settlements, mediations and arbitrations remain confidential. Furthermore, the Merrill Lynch case occurred over 12 years ago when conditions were very different for women in this industry. The Merrill Lynch case also involved significant allegations of sexual harassment which do not exist in the present case.

17. Ms. Grant's reference to the $54 million settlement in the case involving Morgan Stanley's Institutional Equities Division is also misplaced. I represented Morgan Stanley in that case. Of the $54 million settlement amount, the EEOC allocated $12 million to the plaintiff-intervenor (whose compensation at the time of her termination was almost $2 million a year). The employees involved in that lawsuit were employed in the Institutional Equities Division at Morgan Stanley and their average compensation is many magnitudes higher than the employees in the retail business, which is the subject of this litigation.

18. Ms. Grant's reference to the settlement of a Fair Labor Standards Act case in California also bears no relevance to this case. In the Fair Labor Standards Act case, there were no allegations of discrimination. Rather, the claims focused on Morgan Stanley's pay practices under wage and hour laws. Further, the class was almost twice as large and statute of limitations was substantially longer in that matter than in this case.

## MS. GRANT'S CLAIM THAT MORGAN STANLEY CONSPIRED WITH PLAINTIFFS' COUNSEL IN ANOTHER CASE TO "SILENCE" OPPOSITION TO THIS SETTLEMENT IS COMPLETELY WITHOUT MERIT

19.  Ms. Grants' attack on Lieff, Cabraser, Heinmann & Bernstein, Altshuler Berzon and Outten & Golden, the three law firms that represent the plaintiffs in the *Jaffe v. Morgan Stanley* case pending in California, is completely unwarranted and contrary to the facts. Those firms, are very well respected leading employment law firms representing plaintiffs and there is no basis to support the allegation that they were motivated by any improper motives in reaching a settlement of the *Jaffe* race class action.

20.  Ms. Grant's speculation that Morgan Stanley sought out the *Jaffe* plaintiff to resolve claims of race discrimination is simply untrue. Although Ms. Williams initially asserted only an individual claim of race discrimination (in addition to gender class claims), plaintiffs' counsel in the *Jaffe* case informed Morgan Stanley, months before the settlement agreement was executed in this case, that Ms. Williams intended to bring classwide allegations of race discrimination. The parties in the *Jaffe* case commenced negotiations to resolve those classwide race claims before the settlement agreement was signed in this case.

## THERE IS NO BASIS FOR THE ALLEGATIONS THAT THE NEWLY ADOPTED ACCOUNT DISTRIBUTION MODEL WILL ADVERSELY AFFECT WOMEN OR AFRICAN AMERICANS

21.  Contrary to Ms. Grant's erroneous assertions, the revised method of distributing accounts does not rely upon a Financial Advisor's assets. Nor does it rely upon length of service at Morgan Stanley. Ms. Grant is also wrong in her allegation that assets transferred from partnerships "count" as new assets or new accounts under the Power Rankings used for account distributions.

22.  Also, contrary Ms. Grant's allegations, the revised factors to be used for account

distributions were examined for adverse impact. These new factors showed no adverse impact on women or African Americans.

### THERE IS NO BASIS TO CHALLENGE THE SETTLEMENT FOR NOT INCLUDING A BAN ON ARBITRATION

23. Ms. Grant's assertion that the settlement should require Morgan Stanley to agree to no mandatory arbitration of civil rights claims is without any legal or factual support. The present case does not involve issues related to mandatory arbitration. Morgan Stanley does not presently have a mandatory arbitration policy and there is no basis for Ms. Grant's assertion that "it appears that Morgan Stanley is making a concerted effort to extinguish the claims of women and minorities for the next five years and follow the lead of certain Wall Street firms to return to mandatory arbitration and class action bans." Even if Morgan Stanley did adopt a mandatory arbitration policy, it would only do so in full compliance with the law.

### IT WOULD BE INAPPROPRIATE TO INCLUDE FINANCIAL ADVISORS WITH MANAGEMENT TITLES OR RESPONSIBILITIES IN THE SETTLEMENT CLASS

24. Ms. Grant objects to the settlement because the class does not include Financial Advisors with management titles or responsibilities like Sales Managers, Assistant Branch Managers or Financial Advisors in Charge of a Morgan Stanley office. Mary Harris Evans, a non class member, filed a similar objection. However, a conscious decision was appropriately made by Class Counsel to exclude employees who have management responsibilities from the class because among the allegations that plaintiffs have raised in this case are that managers were favored over non-management Financial Advisors with respect to certain benefits. Financial Advisors with management titles who were also Financial Advisors without a management position during some time during the class period are included as class members. The Financial

Advisors with management titles and responsibilities during the entire class period are excluded from the class in this case but are not precluded from pursuing any claims they desire to pursue outside of this case.

### THE PROGRAMMATIC RELIEF IN THE SETTLEMENT PROVIDES VERY SUBSTANTIAL BENEFITS TO PRESENT AND FUTURE FEMALE FINANCIAL ADVISORS AT MORGAN STANLEY

25.  Based on my knowledge and experience in representing Morgan Stanley and other employers in the retail financial services industry, I believe that the programmatic relief in this settlement will provide substantial benefits to the present and future female Financial Advisors and Registered Financial Advisor Trainees at Morgan Stanley and will also inure to the substantial benefit of African American, Latino and other minority Financial Advisors and Financial Advisor Trainees. It will further Morgan Stanley's commitment to attract and retain more women and minority financial advisors and help them to be as successful as possible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of October, 2007 in Washington, DC.

MARK S. DICHTER